# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

Case No.

KATY JOHNSON,

      Plaintiff,

vs.

TUCKER MAX,

      Defendant.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C §§ 1441 and 1446, Defendant Tucker Max hereby files this Notice of Removal and states in support as follows:

1.     Tucker Max is an original defendant in a civil action filed in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 03-CA-004867.

2.     This Notice of Removal is filed in the United States District Court for the Southern District of Florida, West Palm Beach Division, within the time allowed by law for removal of civil actions.

3.     The United States District Court for the Southern District of Florida, West Palm Beach Division, is the district and division embracing the place where the state court action is pending.

4.     A copy of this Notice of Removal is being contemporaneously filed with the Clerk of the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida as required by 28 U.S.C. §§ 1446(d).



5.      The pleadings attached hereto as Composite Exhibit A constitute all of the process and pleadings received by Defendant in this action as required by 28 U.S.C. §§ 1446(a).  These pleadings include:  (a) Complaint for Injunctive Relief and Damages; (b) Plaintiff's Emergency Motion for Temporary Injunction with Supporting Memorandum of Law; (c) Affidavit of Plaintiff Katy Johnson; (d) Affidavit of Kathleen B. Johnson; (e) Temporary Injunction; (f) Plaintiff's Notice of Posting Bond; (g) Summons; (h) Defendant's Motion for Extension of Time to Respond to Complaint; and (i) Plaintiff's Notice of Taking Deposition.

6.      As set forth below, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.  Therefore, this action is removable pursuant to 28 U.S.C. § 1441(a).

7.      Additionally, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because a necessary element of two of Plaintiff's claims involves a substantial federal question under the First Amendment to the U.S. Constitution.  Further, federal question jurisdiction is proper because Plaintiff has artfully pled a state law claim for "unauthorized Website linking" that is completely preempted by the federal Copyright Act, 17 U.S.C. § 301(a).  Therefore, this action is removable pursuant to 28 U.S.C. § 1441(b).

### Nature of the Action

A.      Factual Background

8.      Plaintiff Katy Johnson is, *inter alia*, the former Miss Vermont 1999 and Miss Vermont USA 2001.  Plaintiff maintains a Website that details her personal and professional accomplishments, publishes a "character education" comic strip, markets for sale a book she

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

claims to have written, and offers for sale other related merchandise. *See* Exhibit A, Complaint ¶¶ 7-9.

9.     In her Website, Plaintiff depicts herself as a "role model for wholesome family values," including the values of temperance, responsibility, and abstinence from sex and alcohol. As part and parcel of her promotional activities, Plaintiff holds herself out as a personal embodiment of these virtues. *See* Exhibit A, Affidavit of Kathleen Johnson and Exhibit B, excerpts from http://www.katyjohnson.com (hereinafter "Plaintiff's Website").

10.     In her Website, Plaintiff claims to have appeared in a number of well-known beauty pageants, including the Miss USA Pageant and the Miss America Pageant.  In fact, Plaintiff claims to have earned the following titles as a beauty pageant contestant:  Miss Vermont USA 2001; 1st Inductee in Who's Who in Pageants 2000; Miss Vermont 1999; Miss Oktoberfest 1998; Miss Florida USA 1st Runner Up 1998; Miss United States Teen 1997; Florida Homecoming Queen 1996; Miss Teenage America Finalist 1995; Miss Florida Teen USA Photogenic Winner 1995; Miss Florida Teen USA 1st Runner Up 1995; and Florida Cinderella Teen 1994.  Plaintiff also writes as a columnist for several periodicals, including Pageantry Magazine. *See* Exhibit B.

11.     Plaintiff, in conjunction with her mother and business manager, Kathleen Johnson, operates a general partnership designed to capitalize on the name and reputation Plaintiff seeks to promote. *See* Exhibit A, Affidavit of Kathleen Johnson.  Plaintiff's résumé indicates that Plaintiff has successfully capitalized on her name and reputation through appearances in at least nine (9) motion pictures, twelve (12) television programs, and six (6) theatrical performances, including lead actress roles in *Little Red Riding Hood*, *Oliver* and *Alice in Wonderland*. *See* Exhibit B.  Additionally, Plaintiff claims to have appeared in television

3

commercials promoting Scope® mouthwash, Crest® toothpaste, MCI® telephone services, and the World Wrestling Federation® (the "WWF"). The WWF commercial was allegedly aired during the Superbowl® and rated in February 2000 as the "#1 Commercial" by USA Today. *See* Exhibit B.

12.    Accordingly, based on the foregoing accolades and accomplishments, Plaintiff has centered her professional career and business on promoting her name and reputation.

13.    Defendant Tucker Max is the author of two books and maintains a popular website detailing many of his life experiences.

14.    Defendant met Plaintiff two (2) years ago. Immediately, Plaintiff and Defendant became romantically involved with one another, but their relationship was ill fated and lasted only a short time. Thereafter, Defendant learned about Plaintiff's Website in which Plaintiff commercially and publicly promotes herself as a pillar of conventional morality and sexual abstinence. Because Defendant believed that Plaintiff's conduct and behavior during their romantic relationship stood in stark contradiction to the image of herself that Plaintiff is promoting publicly, Defendant authored a true_autobiographical account of his relationship with Plaintiff, which he entitled the "Miss Vermont Story." Defendant posted the "Miss Vermont Story" on his website, http://www.tuckermax.com ("Defendant's Website"). Prior to posting the "Miss Vermont Story" on his Website, however, Defendant sent Plaintiff a copy, and asked Plaintiff if she had any comment about it. Plaintiff did not respond to Defendant's request. Nonetheless, Plaintiff subsequently brought this lawsuit.

B.    Procedural Background

15.    Plaintiff filed her Complaint in state court on May 6, 2003, along with an emergency motion for a temporary injunction (with supporting affidavits) and a motion to seal

4

the case.  Plaintiff asserts three (3) claims in the Complaint:  Count I - Unauthorized Use of Name or Likeness in Violation of Fla. Stat. § 540.08; Count II - Common Law Invasion of Privacy; and Count III - Common Law Battery.  Plaintiff seeks monetary damages under each count, and wide-ranging temporary and permanent injunctive relief under the first two counts. *See* Exhibit A, Complaint.

16.    The day after the Complaint was filed, the state court judge issued a temporary injunction on an *ex parte* basis, without holding a hearing, and without any notice or service of process on Defendant.  The *ex parte* injunction forbids Defendant from (a) using the name "Katy Johnson," "Katy," "Johnson," or the title "Miss Vermont" in any periodicals or books or on Defendant's Website; (b) disclosing any stories, facts or information, <u>notwithstanding their truth</u>, about any intimate or sexual act engaged in by Plaintiff; and (c) providing any link to Plaintiff's Website from Defendant's Website.  *See* Exhibit A, Temporary Injunction.

17.    Defendant was finally served with the Complaint and a copy of the *ex parte* injunction   after it had already been issued – on or about May 9, 2003.

18.    This controversy has already received widespread attention in the national (and international) media, including:  *The New York Times, Associated Press, Aberdeen American News, Atlanta Journal-Constitution, Austin American Statesman, Barre-Montpelier Times, Bedford Times, Belleville News-Democrat, Billings Gazette, Biloxi Sun-Herald, Boston Globe, Calgary Sun, Canada.com, Canoe News, Canton Repository, Centre Daily Times, Chicago Sun-Times, Columbus Ledger-Enquirer, Concord Monitor, Dayton Daily News, Duluth News Tribune, Fort Wayne Journal-Gazette, Fort Wayne News-Sentinel, Grand Forks Herald, International Herald Tribune, Kansas City Star, Lakeland Ledger, Macon Telegraph, Naples Daily News, News Journal, Newsday, Newsweek, Palm Beach Post, Penn Live, Raleigh News,*

5

*Richmond Times-Dispatch, Rocky Mount Telegram, Sarasota Herald-Tribune, South Florida Sun-Sentinel, St. Petersburg Times, The Tallahassee Democrat, Times Daily, New Orleans Times-Picayune, Toronto Sun, Tuscaloosa News, United Press International, Washington Times, Wilmington Morning Star, WKMG, WPBF,* and *WTEV. See* Exhibit C (samples of news stories).

19.     To illustrate the nature of some of this media attention, *The New York Times* article of June 2, 2003, entitled "Internet Battle Raises Questions about Privacy and the First Amendment," quotes prominent legal scholars who have characterized the state court's *ex parte* injunction in this case as a prior restraint on speech "essentially unknown in American law," as "clearly a suppression of free speech," and as "kooky." *See* Exhibit C.

### Diversity Jurisdiction

A.     Diversity of Citizenship

20.     For purposes of diversity jurisdiction, a natural person is a citizen of the state in which he or she is domiciled. *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984).

21.     Plaintiff's Complaint <u>alleges</u> complete diversity of citizenship between the parties. More specifically, Plaintiff alleges that she is domiciled in, and therefore a citizen of, the State of Florida, and that Defendant is domiciled in, and therefore a citizen of, the State of Illinois. *See* Exhibit A, Complaint, ¶¶ 5,6.

22.     While Defendant was formerly domiciled in Illinois, Defendant recently (but prior to the filing of this lawsuit) changed his domicile from Illinois to Texas. Notwithstanding this change, there is no dispute that Plaintiff and Defendant are domiciled in different states. Thus, there is no doubt that complete diversity of citizenship exists between the parties.

6

B.     Amount in Controversy

23.     For removal based upon diversity jurisdiction, Defendant must show by a preponderance of the evidence that the amount in controversy exceeds the sum or value of $75,000. *Williams v. Best Buy Company, Inc.*, 269 F.2d 1316, 1319 (11th Cir. 2001). To do so, Defendant must show only that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 288 (1937); 14A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3702 at 19. As has been stated in this Circuit, "[t]here is no question but that this is a test of liberality, and it has been treated as such by this Court." *Burns v. Anderson*, 502 F.2d 970, 971 (5th Cir. 1974).[1]

24.     Moreover, in the event that the Complaint does not specify the value of the remedies that Plaintiff seeks, the Court "may consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal" in determining the amount in controversy. *Williams*, 269 F.2d at 1319.

25.     Where a defendant asserts that the amount in controversy is satisfied, the Eleventh Circuit has stated that he should be afforded an opportunity to submit evidence in support of his assertion prior to any decision to remand. *Id.* at 1321.

26.     In this case, it is clear from the Complaint that the object of the litigation includes both monetary damages and injunctive relief. *See* Exhibit A, Complaint. As discussed herein, the value of the damages and the injunctive relief sought by Plaintiff in this action clearly place the amount in controversy in excess of $75,000.

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

(i)     Value of Damages Requested

27.     Plaintiff's Complaint alleges damages "in excess of $15,000.00," the jurisdictional minimum for Florida circuit court. *See* Exhibit A, Complaint, ¶ 2. Unfortunately, Plaintiff's allegation, standing alone, is not particularly helpful one way or another in determining the amount in controversy, as the damages at issue theoretically could or could not exceed $75,000 based on this bare allegation. Clearly, though, Plaintiff's allegation does not preclude a finding that Plaintiff seeks damages in excess of $75,000.

28.     In *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1210 (M.D. Fla. 2002), the defendant successfully removed a state court action for violation of Fla. Stat. § 540.08, the statute asserted in Count 1 of Plaintiff's Complaint here, on the basis of diversity jurisdiction. The facts of the case concerned the defendant video company's film, *Girls Gone Wild*, depicting the plaintiff exposing herself in public places. Footage of the plaintiff was also used in television commercials promoting the film. *Id.* While the published opinion does not discuss the issue of the amount in controversy, it is clear that the Court found it to be satisfied by the nature of the claim presented.

29.     Judgments and settlements recently obtained in analogous cases are also illustrative of the amount in controversy typically raised by these claims. For example, in a 1999 case under Fla. Stat. § 540.08, a Miami-Dade County jury awarded $264,000 in compensatory and punitive damages. *See* Exhibit D (jury verdict report regarding *Wagner v. Sun Int'l Hotels, Ltd.*, No. 95-19988 CA 30 (Fla. Cir. Ct. 1999). In that case, the plaintiff was a model whose photograph appeared in marketing brochures used to promote a hotel in the Bahamas. The damages award was based on the use of his photograph by the hotel beyond the time period permitted in a contract between the parties.

8

30.     By comparison, the allegations asserted against Defendant in the instant case are considerably more explosive than simply using a photograph beyond a specified time in a contract.  Instead, in Count I of the Complaint, Defendant is accused of trading upon Plaintiff's name through an essay that recounts, in detail, Defendant's sexual relations with Plaintiff.  This is an emotionally charged allegation.  Moreover, although no dollar amount is placed on the claim in the Complaint, Plaintiff specifically alleges that Defendant's actions have "caused <u>great harm</u> to [Plaintiff's] person, career <u>and business</u>, and continue[] to be the source of <u>great</u> embarrassment and harm."  *See* Complaint, ¶ 14 (emphasis added).  Plaintiff further alleges under Count I that the "great harm, embarrassment and other damages" she is suffering "grow[] exponentially" each day.  *See* Complaint, ¶¶ 23, 24.

31     Other misappropriation of name or likeness claims have been filed in this Circuit or have been removed to districts within this Court with no challenge as to whether such a claim meets the jurisdictional threshold.  *See, e.g., Valentine v. C.B.S., Inc.*, 698 F.2d 430 (11th Cir. 1983) (claim that use of plaintiff's name on a record violated section 540.08); *Rawls v. Conde Nast Publications, Inc.*, 446 F.2d 313 (5th Cir. 1971) (claim arising in the Middle District of Florida that use of photographs of plaintiff's home in Vogue magazine violated common law right of privacy); *Epic Metals Corp. v. Condec, Inc.*, 867 F. Supp. 1009 (M.D. Fla. 1994) (claim that use of plaintiff's photograph in advertising brochure for flooring company violated section 540.08); *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145 (S.D. Fla. 1990) (claim that publisher used plaintiff's name in Playboy magazine violated section 540.08); *National Football League v. Alley, Inc.*, 624 F. Supp. 6 (S.D. Fla. 1983) (claim that display of plaintiff's likeness in television program at a bar violated section 540.08).

9

32.     Moreover, plaintiffs in unauthorized use of name cases have in fact claimed and won jury verdicts for millions of dollars in compensatory and punitive damages.  For example, in *Cape Publications, Inc. v. Bridges*, 423 So. 2d 426 (Fla. 5th DCA 1982), the plaintiff sought and obtained a jury award for $1 million in compensatory damages and $9 million in punitive damages based on the defendants' publication of a photograph of the plaintiff covering herself solely with a dishtowel.  The jury verdict was reversed where the District Court of Appeal found a legitimate public interest in publishing the photograph.  There is no doubt, however, that the amount in controversy in that case was millions of dollars.  In *Rawls*, even though the only photographs published were those of the plaintiff's home, the plaintiff claimed $1,000 in compensatory damages and $1 million in punitive damages. *Rawls*, 446 F.2d 313.

33.     Also, in *Cason v. Baskin*, 20 So. 2d 243 (Fla. 1944), *on appeal after remand*, 159 Fla. 31, 30 So. 2d 635 (1947), the plaintiff claimed that she was entitled to $100,000 in compensatory damages based on the defendant's description of her in Marjorie Kinnan Rawlings' novel *Cross Creek* without the plaintiff's consent. *Id.* at 245.  The plaintiff also claimed that she was entitled "to a share in the proceeds of the sale of the book." *Id.* at 254.  The value of the sum of $100,000 in 1944 clearly exceeds the $75,000 amount applicable today.

34.     In cases outside of Florida, plaintiffs also have sought and have recovered millions on appropriation of likeness claims.  According to a survey conducted by the Libel Defense Resource Center of ten cases in which misappropriation claims were made, awards ranged from $2,500 to $24.5 million.  The average of the awards was $3,583,966.75; the median was $175,000.  For all ten cases in the survey (including defense wins), the awards averaged $2,867,173.40 and the median recovery was $175,000. *See also, LDRC 2001 Report on Trials and Damages*, 2001 LDRC Bulletin No. 1 (Feb. 2001).

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

35.     Likewise, claims for damage to reputation are highly subjective and in many cases have resulted in judgments in excess of $1 million. *See, e.g., Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230 (11th Cir. 1999) (reviewing jury award of $10 million compensatory damage award), *cert. denied*, 528 U.S. 1198 (2000).

36.     The amount of publicity that has ensued from this lawsuit and Plaintiff's counsel's own press release concerning it[2] are also relevant to the amount in controversy.  As disingenuous as it is to file a lawsuit and then to seek damages based on the publicity generated by the lawsuit, that is precisely what Plaintiff is claiming here.  *See* Exhibit A, Affidavit of Kathleen Johnson, ¶ 8 ("I believe that … any publicity [Defendant] receives from … this lawsuit to promote his Website, books and merchandise, and further embarrass me, my daughter and my family").

37.     A reasonable reading of the Complaint therefore suggests that the gist of Plaintiff's claim is that Defendant's actions in posting the "Miss Vermont Story" on the Internet have inflicted great embarrassment and that they either have caused, or if not enjoined will cause, the ruin of Plaintiff's career, business and reputation.  Based on the facts concerning her career, business and reputation described above, it is relatively easy to objectively conclude that the value of these present or prospective injuries is greater than $75,000.  The jurisdictional minimum is therefore satisfied merely by the damages sought under Count I.

38.     Damages under the other counts must also be considered, however, as it is well settled that the jurisdictional amount may be satisfied by the aggregation of all claims a single plaintiff has against a defendant.  *See, e.g., Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971) (citing cases).  As with claims for unauthorized use of name or likeness, invasion of privacy

---

[2]     Despite having already filed a motion to seal all the pleadings in the case on the grounds that news of the litigation would harm his client's "privacy," Plaintiff's counsel issued a press release, on his law firm's letterhead, the day after the temporary injunction was entered, touting his *ex parte* "victory."  *See* Exhibit E.

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

claims also frequently implicate damages in excess of the jurisdictional amount.  Indeed, in *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974), the former Fifth Circuit had no trouble in concluding that the then-existing jurisdictional minimum was met (even when a lesser amount was actually returned by the jury) in an invasion of privacy case brought by tenants who discovered that their bedroom and bathroom contained two-way mirrors and that they had been watched through them by their landlord during their first three months of marriage.  Another analogous, yet more recent case is *McCarty v. Bankers Ins. Co.*, Case No. 4:96-CV-420-SPM (N.D. Fla. 2000).  There, the defendant published facts relating to plaintiff's theretofore undisclosed homosexuality.  The case settled for over two (2) million dollars.  *See* Exhibit D.

39.     Additionally, in *Simmons v. Varner*, Case No. 90-20638-CA-T (Fla. Cir. Ct. 1994), bail bondsmen entered the wrong house.  The plaintiff brought suit alleging, *inter alia*, assault, battery, and invasion of privacy, and was awarded $751,000 in damages.  *See* Exhibit D.  Also, in *Fleming v. Gadsen County Times*, Case No. 83-320-CA (Fla. Cir. Ct. 1988), plaintiff was erroneously linked to a criminal investigation by a newspaper publication.  Plaintiff sued for libel and invasion of privacy.  A jury returned a verdict for $1,627,500, including more than $800,000 in compensatory damages.  *See* Exhibit D.

40.     Accordingly, it is clear from the foregoing cases that even invasion of privacy claims based on facts substantially less attention-grabbing than those pled under Count II of Plaintiff's Complaint place damages of more than $75,000 in controversy.

41.     Additionally, with respect to Count III, actions for battery also typically result in damages awards in excess of $75,000.  For example, in *Beilinson v. Elias*, Case No. 00-28436-CA-04 (Fla. Cir. Ct. 2002), which concerned a fight during a basketball game where plaintiff

12

suffered a "fracture," a verdict of $156,590 was rendered, which included $75,000 in compensatory damages for pain and suffering <u>alone</u>. *See* Exhibit D.

42.     By contrast here, although the battery claim is quite lacking in detail, Plaintiff alleges damages under Count III for "bodily injury" and "significant pain, suffering and other damages." *See* Complaint, ¶ 33.

43.     Additionally, a potential award of punitive damages should also be considered in determining the amount in controversy. *Bell v. Preferred Life Assur. Soc. Of Montgomery*, 320 U.S. 238 (1943); *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1264 (11th Cir. 2000). Moreover, where, as here, a defendant seeks to remove a case from a Florida state court, a potential award of punitive damages should be considered even though the plaintiff did not pray for an award of punitive damages. *Morrison*, 228 F.3d at 1265. This is because, pursuant to Fla. Stat. § 768.72, a plaintiff is initially prohibited from seeking punitive damages until the court determines that there is sufficient evidence in the record to support a claim for punitive damages. *Id.* Punitive damages, however, are specifically authorized for violations of Fla. Stat. § 540.08, as well as for invasion of privacy, and for battery – all of which are alleged by Plaintiff in this case.[3] *See* Fla. Stat. § 540.08(2).

44.     It is plain from Plaintiff's pleadings and statements to the press that it is her intention in this case to paint Defendant as a wealthy "parasitic smut peddler" who operates an "adult website," and who wantonly and maliciously led astray and twice used a former beauty queen who runs a "website for children": first for his own sexual gratification, and second to

---

[3]     Furthermore, if a plaintiff may recover attorneys' fees incurred in the litigation, the amount of those fees must also be included in determining the amount in controversy. *Morrison*, 228 F.3d at 1265. Here, Plaintiff seeks an award of attorneys' fees under each of the three counts alleged in the Complaint. However, the law applicable to each count does not provide for an award of attorneys' fees to the prevailing party, and Plaintiff alleges no contractual basis for an award of fees. Therefore, it does not appear that attorneys' fees have any impact on the amount in controversy.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

further his career and to sell books and t-shirts.   While these allegations are both base and baseless (not to mention libelous), it is reasonable to conclude that if a fact-finder were to accept Plaintiff's recitation of the facts on any of the counts individually, much less on all three counts combined, that Defendant would face significant damages, including punitive damages.   It is therefore clear that the jurisdictional minimum is present in the instant case by the damages sought by Plaintiff.

      (ii)    <u>Value of Injunctive Relief Requested</u>

     45.    The Supreme Court has held that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 345 (1977).

     46.    In this Circuit, that value is to be measured, for purposes of assessing the amount in controversy, as the value to the Plaintiff of receiving the requested injunctive relief. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216, 220 (11th Cir. 1997).   This standard is an objective one; Plaintiff's subjective impressions or assessments are not relevant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998).   Moreover, "the value of the right being protected <u>or the injury being averted</u> constitutes the amount in controversy when damages are not requested." *Kheel v. Port of New York Authority*, 457 F.2d 46, 49 (2d. Cir. 1972) (emphasis added).   Thus, claims for injunctive relief must be measured in terms of the potential damages such injunctive relief may prevent.

     47.    Here, the enormous value of the requested injunction (both temporary and permanent) to Plaintiff is evident from the pleadings and other relevant evidence of Plaintiff's career, business and reputation.   Plaintiff alleges in her Complaint that "[e]ach day Defendant is

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

permitted to continue his use of Plaintiff's name, portrait, photograph, or other likeness, Plaintiff's harm grows exponentially." *See* Exhibit A, Complaint, ¶ 24. Plaintiff further alleges that the publication of the "Miss Vermont Story" has caused her to "suffer great harm, embarrassment, and other damages," and that each day Defendant continues to disseminate the Miss Vermont Story, the harm to Plaintiff "grows exponentially." *See* Exhibit A, Complaint, ¶ 29.

48. In an affidavit filed in support of the Emergency Motion for Temporary Injunction, Plaintiff's mother and business manager testifies as follows to the value of the injunctive relief: "Each day that her name, likeness, image, reference to our website and these stories continue to be publicly displayed to the world on Defendant's website the damage to my daughter's person and career grows exponentially. There is no amount of money that can adequately remedy the continuing damage that has been done to Katy Johnson, our family and our business." *See* Exhibit A, Affidavit of Kathleen Johnson, ¶ 12.

49. Based on the foregoing legal authorities, and in view of the Plaintiff's allegations, the value to Plaintiff of the temporary and permanent injunctive relief that she seeks is appropriately measured by the income Plaintiff would expect to earn over the course of her life in her present business and based on her present reputation. This is the appropriate measure because Plaintiff seeks injunctive relief specifically to protect and preserve her career and business, and the reputation upon which her career and business are based. The value of this relief is clearly more than the jurisdictional minimum. Certainly, Plaintiff would not dispute that the life-long earning capacity of her current business is greater than $75,000.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

50.     For the foregoing reasons, the amount in controversy requirement is satisfied on the facts of this case.  Diversity of citizenship having also been established, removal of the action to this Court is proper.

51.     In the event of any challenge to the Court's diversity jurisdiction, however, Defendant hereby requests and should receive expedited discovery regarding the value of Plaintiff's claims and an evidentiary hearing in order to establish the factual basis for the foregoing conclusions.

## **Federal Question Jurisdiction**

A.     Well-Pleaded Complaint Rule

52.     Removal on the grounds of federal question jurisdiction, 28 U.S.C. § 1331, requires that a federal question be presented on the face of the plaintiff's well-pleaded complaint. *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 840-41 (1989); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (1983). A plaintiff, as the master of the complaint, may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392. A plaintiff asserting facts that invoke either federal or state jurisdiction may choose to limit the claim to one based solely upon state law to proceed in state court. *See Oklahoma Tax Comm'n*, 489 U.S. at 840-41. A federal defense raised by the defendant is insufficient to defeat the state law claim. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Franchise Tax Bd.*, 463 U.S. at 14 ("a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated, and even if both parties admit that the defense is the only question at issue in the case").

16

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

53.     The analysis, however, does not end with an examination of the complaint on its face. "On occasion, the [Supreme Court] has concluded that the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state law common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (citations omitted).   Accordingly, in the proper circumstances, a defendant may remove a case despite the complaint's clear dependence on state law.   *Id.*   There are two situations where federal jurisdiction is available even though a plaintiff has based its claim in state court on state law:  (1) when it appears that some substantial question of federal law is a necessary element of one of the well-pleaded state claims or (2) when it appears that one of plaintiff's claims is "really" one of federal law. *Franchise Tax Bd.*, 463 U.S. at 13 (quotations omitted).

B.     Substantial Federal Question

54.     The lack of a "legitimate public interest" in the offending portions of Defendant's Website, including the "Miss Vermont Story," is a necessary element of Plaintiff's claim under Count I of the Complaint.  *See* Fla. Stat. § 540.08(3).

55.     Similarly, Count II of the Complaint, Plaintiff's invasion of privacy claim based on the public disclosure of private facts (*see* Exhibit A, Complaint, ¶ 25), requires proof of the following elements:  (1) the disclosure was public; (2) private facts were disclosed; (3) the matter publicized was highly offensive to a reasonable person; and (4) the matter is not a legitimate concern to the public.  *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) (citing *Cape Publications v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) (emphasis added)).

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

56.     In this case, there is a legitimate public interest in Defendant's freedom of speech under the First Amendment to the United States Constitution that is implicated on the face of Plaintiff's claims under Counts I and II.

57.     In a case decided last year in the Middle District of Florida also involving Fla. Stat. § 540.08, the Court equated whether the challenged publication falls within the § 540.08(3) exception for publications having a "legitimate public interest" directly with whether the publication was subject to First Amendment protection. *Tyne v. Time Warner Entertainment Co.*, 204 F. Supp. 2d 1338, 1342 (M.D. Fla. 2002). In disposing of the claim on summary judgment, the Court concluded that "[it] is thus clear that the [challenged publication] is entitled to First Amendment protection, and would therefore, be excepted from liability under § 540.08." *Id.*

58.     The existence of a substantial First Amendment question in the elements of Plaintiff's claims is further supported by the fact that Plaintiff is seeking preliminary and permanent injunctive relief under these claims. Plaintiff's application for an order to restrain Defendant from publishing the "Miss Vermont Story" on his Website is a prior restraint on the freedom of expression. However, it has been long established by the Supreme Court that a "prior restraint on expression comes ... with a heavy presumption against its constitutional validity," *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971), and is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). Moreover, where, as requested here, "a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment increases." *Metropolitan Opera Ass'n, Inc. v. Local 100,* 239 F.3d 172, 176 (2d Cir. 2001). Plaintiff's claims that the "Miss Vermont Story" subjects her to public humiliation,

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

worldwide ridicule, character assassination and a ruined reputation are insufficient. *See Keefe,* 402 U.S. at 418-19 (striking state court's order enjoining distribution of pamphlets as unconstitutional and stating "[i]t is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication ....  No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court"); *Crosby v. Bradstreet Co.,* 312 F.2d 483, 485 (2d Cir. 1963) ("We are concerned with the power of a court of the United States to enjoin publication of information about a person, without regard to truth, falsity, or defamatory character of that information.   Such an injunction, enforceable through the contempt power, constitutes a prior restraint by the United States against the publication of facts which the community has a right to know."); *Konigsberg v. Time, Inc.,* 288 F. Supp. 989, 989 (S.D.N.Y. 1980) ("A court of equity will not, except in special circumstances, issue an injunctive order restraining libel or slander or otherwise restricting free speech. To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution, and to historic principles of equity.") (internal quotation marks and citation omitted); *see also American Malting Co. v. Keitel,* 209 F.2d 351, 354 (2d Cir. 1913) ("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States and was formerly the rule in England.").

59.    Accordingly, resolution of a substantial federal question under the First Amendment is necessary to Plaintiff's claims in Counts I and II of the Complaint, thereby making this case removable pursuant to 28 U.S.C. § 1441(b) under *Franchise Tax Board,* 463 U.S. at 13.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

C.   Complete Preemption Doctrine

60.   Complete preemption occurs when Congress so completely occupies a particular area that any civil complaint arising out of the area is necessarily federal in character. *Caterpillar*, 482 U.S. at 398; *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968). "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Accordingly, where the congressional intent to preempt is so powerful so as to displace entirely any state cause of action, "complaints filed in state court purporting to plead such state common law causes of action are removable to federal court under 28 U.S.C. § 1441(b)." *Id.* at 60.

61.   The same principle has been referred to as the "artful pleading" doctrine. "It is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in the complaint." *Franchise Tax Bd.*, 463 U.S. at 22. Federal question jurisdiction will be found where the plaintiff's complaint contains a federal question that is artfully pleaded as a state law claim. *Id.* at 1; *see also, Federated Dep't Stores v. Moitie*, 452 U.S. 394, 397 n.2 (1981).

D.   Copyright Act

62.   Federal copyright law was amended by the Copyright Act of 1976 to preempt state law as follows:

> On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

20

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

17 U.S.C. § 301(a).  In enacting this amendment, Congress expressly stated that section 301 is intended to prevent "the States from protecting … [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), *reprinted in 1976 U.S. Code Cong. & Ad. News* 5659, 5747.

63.     In the case of *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232-33 (4th Cir. 1993), the Fourth Circuit upheld removal by applying the complete preemption corollary to the well-pleaded complaint rule in cases raising claims preempted by section 301 of the Copyright Act.  The Court stated:

> The grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of § 301(a), compels the conclusion that Congress intended that state-law actions preempted by § 301(a) of the Copyright Act arise under federal law. Accordingly, we hold that the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule.  <u>Since claims preempted by § 301(a) arise under federal law, removal of actions raising these claims to federal district court is proper.</u>

*Id.* at 232 (emphasis added).

64.     In addition to the Fourth Circuit, the Second Circuit has also ruled that § 301 of the Copyright Act confers removal jurisdiction over state law claims under the complete preemption doctrine.  *DeCarlo v. Archie Comic Publications, Inc.*, 11 Fed. Appx. 26, 29, 2001 WL 604184, *3 (2d Cir.), *cert. denied*, 122 S. Ct. 647 (2001).  The Second and Fourth Circuits are the only Circuits to have so far addressed the issue.

65.     Numerous federal district courts have also held that § 301 permits removal.  *See Dielsi v. Faulk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996); *Patrick v. Francis*, 887 F. Supp. 481, 485 (W.D.N.Y. 1995); *Wharton v. Columbia Pictures Indus., Inc.*, 907 F. Supp. 144, 146 (D.

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

Md. 1995); *Aldridge v. The Gap, Inc.*, 866 F. Supp. 312, 314 (N.D. Tex. 1994); *Artie Fields Productions v. Channel 7 of Detroit, Inc.*, 32 U.S.P.Q.2d 1539, 1540-41 (E.D. Mich. 1994); *Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 294-95 (E.D. Tex. 1988).

66.     In *Crow v. Wainright*, 720 F.2d 1224 (11th Cir. 1983), though not a case involving removal or the issue of complete preemption, the Eleventh Circuit quoted the following passage from the legislative history of § 301 of the Copyright Act as a clear expression of congressional intent:

> The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a state that are *equivalent to copyright* and that *extend to works coming within the scope of federal copyright law*. The declaration of this principle in section 301 is intended to be stated in the clearest and most unequivocal way possible, so as to foreclose any possible misinterpretation of its unqualified intention that Congress should act preemptively, and to avoid the development of any vague borderline area as between State and Federal protection.

*Id.* at 1225 (emphasis in original; quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S. Code Cong. & Ad. News 5659, 5746). *See also, Rosciszewski*, 1 F.3d at 232.

67.     In *Crow*, the Eleventh Circuit also set forth the same two-part test for copyright preemption articulated in the complete preemption cases cited above, namely, that copyright preemption occurs when the right at issue (1) falls within the subject matter of copyright set forth in sections 102 and 103 and (2) is equivalent to one of the exclusive rights of section 106. *Crow*, 720 F.2d at 1225-26.

E.     Copyright Preemption of Plaintiff's "Website Linking" Claim

68.     Plaintiff's Complaint asserts that Defendant has violated state law by "offer[ing] a link on his adult Website to Plaintiff's children's website without Plaintiff's consent." *See* Complaint, ¶¶ 13, 19. As such, Plaintiff seeks to enforce a right that (a) falls within subject matter

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

that is protected by the Copyright Act under sections 101 and 102 and that (b) is equivalent to one of the exclusive rights provided by section 106.  *See Crow*, 720 F.2d at 1225-26.

69.     Plaintiff's Website – which consists of Plaintiff's presumably original expression – falls within the subject matter protected by the Copyright Act.  *See* 17 U.S.C. §§ 101, 102.  In fact, Plaintiff explicitly asserts a claim of copyright ownership on the home page of her Website. *See* Exhibit B.  Accordingly, the first part of the copyright preemption test is satisfied.  *See Crow*, 720 F.2d at 1225-26.

70.     Section 106 of the Copyright Act provides a copyright owner with the exclusive right to, *inter alia*, "publicly distribute" the copyrighted work.  Because Plaintiff seeks to hold Defendant liable under Count 1 of the Complaint for using his Website to "link" to Plaintiff's Website "without authorization," Plaintiff necessarily seeks to enforce against Defendant a claimed right that is equivalent to one of the exclusive rights provided by the Copyright Act   the right of public distribution.  Accordingly, the second prong of the copyright preemption test is also satisfied.

71.     The fact that Plaintiff's claim against Defendant's "Website linking" would fail as a copyright claim does not mean that preemption is not applicable.  Indeed, that is the whole point of copyright preemption – to prevent the misuse of state law to regulate conduct that is exclusively governed by federal copyright law.

72.     For the reasons and under the authorities set forth above, Plaintiff's claim in Count I based on "website linking" is therefore completely preempted by the Copyright Act. Accordingly, this Court has federal question jurisdiction over this claim under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367.  Removal is therefore proper pursuant to 28 U.S.C. § 1441(b).

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

73.     By filing this Notice of Removal, Defendant is making a limited appearance only. Defendant does not waive, and hereby expressly reserves, the right to challenge the exercise of personal jurisdiction over him in this matter.

**WHEREFORE**, Defendant Tucker Max hereby removes this civil action to the United States District Court for the Southern District of Florida, West Palm Beach Division.

Dated: June 6, 2003                          Respectfully submitted,


STROOCK & STROOCK & LAVAN LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385
Telephone: (305) 358-9900
Facsimile: (305) 789-9302
E-mail: jcarey@stroock.com


By:
John C. Carey
Florida Bar No. 0078379
Richard J. Mocker
Florida Bar No. 0563986

**Counsel for Defendant**

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by United States mail this 6th day of June, 2003, on **Michael I. Santucci, Esq.,** Law Offices of Michael I. Santucci, P.A., Counsel for Plaintiff, 500 West Cypress Creek Road, Suite 500, Fort Lauderdale, Florida 33309.

John C. Carey

25

# EXHIBIT A

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,
individually,

        Plaintiff,

vs.

TUCKER MAX,
individually,

        Defendant.
_____/

Case No. **2003CA004867AF**

COPY / ORIGINAL
RECEIVED FOR FILING

MAY - 2 2003

DOROTHY H. WILKEN
CLERK OF CIRCUIT COURT
CIRCUIT CIVIL DIVISION

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, KATY JOHNSON, individually, sues Defendant, TUCKER MAX, individually, for injunctive relief and damages and further alleges:

### Introduction

1.    Plaintiff brings this action for injunctive relief and to recover money damages and against Defendant. Defendant maintains an adult website which contains content which constitutes public disclosure of embarrassing private facts. Defendant has made use of Plaintiff's name, portrait photograph and other likeness to promote his website, books merchandise and career as an authority on "picking up" women. Defendant has committed a battery upon Plaintiff. Defendant's conduct as set forth below has caused and will continue to cause damages to Plaintiff unless enjoined.

### Jurisdiction and Venue

2.    This is an action for injunctive relief and damages in excess of $15,000.00. This Court has subject matter jurisdiction over this case pursuant to Article

V, Section 5 of the Florida Constitution, Florida Statutes, Section 26.012, and in accordance with Florida common law.

3.     This Defendant is subject to the jurisdiction of this Court pursuant to Florida's Long Arm Statute, § 48.193, Florida Statutes as certain complained of acts were committed within the State of Florida, more specifically, Palm Beach County, Florida.

4.     Venue is proper in Palm Beach County, Florida because the causes of action as set forth herein accrued in Palm Beach County, Florida.

### Parties

5.     Plaintiff, KATY JOHNSON, is a resident of Delray Beach, Florida and is otherwise *sui juris.*

6.     Defendant, TUCKER MAX, is a resident of Chicago, Illinois and is otherwise *sui juris.*

### General Allegations Applicable to All Counts

7.     Plaintiff is former Miss Vermont 1999 and Miss Vermont USA 2001.

8.     Plaintiff maintains a children's website which details her personal and professional resume as well as a character education comic strip for young girls and related book and merchandise for purchase.

9.     Plaintiff commercially exploits her name and likeness in connection with this business, and has never publicized any facts relative to her relationships, or her personal and/or intimate affairs.

10.    Defendant maintains an adult website at which details his personal biographical information and private sexual exploits with various women, as well as

2

related books and merchandise for purchase including women's panties, thongs, aprons, jackets, shirts and hats (the "Website").

11. Defendant has, and continues to clearly identify Plaintiff on said Website, and has, and continues to post on said Website Plaintiff's name, likeness, photograph in several places in the form of advertising slogans, and links to "The Miss Vermont Story," a nine (9) page narrative which purports to detail private facts relative to his alleged intimate and sexual relationship between the Plaintiff and Defendant (the "Narrative"). Said Narrative is written as if it was fact and is intended to be understood as factual.

12. Throughout Defendant's written recollection of his relationship with Plaintiff, Defendant repeatedly characterizes the Plaintiff as unintelligent, naïve and/or promiscuous.

13. Defendant uses the highlighted words "Katy," "Katy Johnson" and "Miss Vermont" in various sections of the Website as hyperlinks to attract visitors to the portion of the Website which contains the narrative. In these same sections of the Website, Defendant offers his books and merchandise for sale. On the page of the Website which contains the actual Narrative, Defendant offers his merchandise and books for sale. Defendant even offers a link on his adult Website to Plaintiff's children's website without Plaintiff's consent.

3

14.    Such characterizations, the narrative, as well as the use of Plaintiff's name, portrait, photograph and other likeness for such commercial, promotional and advertising purposes has directly and proximately caused great harm to her person, career and business, and continues to be the source of great embarrassment and harm. Such harm and embarrassment continues and escalates each day Defendant continues to make reference to Plaintiff, her likeness, her title as "Miss Vermont," the stories of Defendant's alleged intimate relationship with Plaintiff, and uses and displays portraits, photographs or images of Plaintiff.

15.    Plaintiff has never consented to Defendant's use of her name, likeness, photographic images or title "Miss Vermont." Plaintiff has neither consented to public dissemination of facts or stories about her personal and intimate life.

16.    Plaintiff has retained the undersigned firm to represent her in this matter and has agreed to pay it a reasonable fee for its legal and paralegal services.

17.    All prerequisites to filing the herein action have been satisfied or waived and all conditions precedent have been met, excused or waived.

4

## COUNT I – UNAUTHORIZED USE OF NAME AND LIKENESS UNDER § 540.08, FLA.STAT.

Plaintiff re-alleges and incorporates herein by reference all allegations made in Paragraphs 1 through 17 above as if more fully set forth herein.

18.     Defendant has, and continues to make use of Plaintiff's name, portrait, photograph and other likeness for advertising and other commercial purposes.

19.     More specifically, Defendant has, and continues to use the names "Katy," "Katy Johnson," "Miss Vermont," photographs of Plaintiff, as well as stories about Defendant's alleged intimate and sexual relationship with Plaintiff and a link to her children's website.

20.     Such references to Plaintiff and her title have been utilized as "meta-tags" or "search terms" with various major search engines through which Defendant's adult Website is promoted and advertised.

21.     Said uses of Plaintiff's name and likeness were, and are made, for advertising and other commercial purposes, including, but not limited to, promotion and advertising of Defendant's Website, merchandise, books, television appearances and career.

22.     Neither Plaintiff, nor any agent of her, has ever consented to, or authorized said uses of Plaintiff's name, portrait, photograph or other likeness, or link to her website.

23.     As a direct and proximate result of Defendant's past and continued use of Plaintiff's name, portrait, photograph and other likeness, Plaintiff has suffered great harm, embarrassment, and other damages.

24.    Each day Defendant is permitted to continue his use of Plaintiff's name, portrait, photograph, or other likeness, Plaintiff's harm grows exponentially.

WHEREFORE, Plaintiff demands entry of a temporary and permanent injunction restraining and enjoining Defendant from further use of Plaintiff's name, portrait, photograph or other likeness including any references to "Katy," "Katy Johnson," "Miss Vermont," displays of photographs of Plaintiff, and from use of any other characterization of Plaintiff in any media, including, but not limited to, Defendant's website(s), television appearances, books, advertisements, press conferences and interviews, including any such press conferences and interviews about the instant litigation.   Plaintiff further demands entry of judgment against the Defendant for compensatory damages, taxable costs as the prevailing party, attorneys' fees and all further relief which this Court deems just and proper under all of the facts and circumstances of this matter.

## COUNT II – COMMON LAW INVASION OF PRIVACY

Plaintiff re-alleges and incorporates herein by reference all allegations made in Paragraphs 1 through 17 above as if more fully set forth herein.

25.    Defendant has, and continues to publicly disseminate private facts of and concerning Plaintiff without her consent.

26.    The matter which was, and is being, publicly disseminated by Defendant is of such a character that it is offensive and objectionable to a reasonable person of ordinary sensibilities.

27.    Plaintiff has, in fact, objected to the public dissemination of these matters, and has, in fact, become offended thereby.

6

28.     As a direct and proximate result of Defendant's past and continued public dissemination of said private facts, Plaintiff's privacy has been invaded and she has suffered great harm, embarrassment, and other damages.

29.     Each day Defendant is permitted to continue his dissemination of said private facts, Plaintiff's harm grows exponentially.

WHEREFORE, Plaintiff demands entry of a temporary and permanent injunction restraining and enjoining Defendant from further dissemination of private facts, notwithstanding their truth or falsehood, including any references to "Katy," "Katy Johnson," "Miss Vermont" and any other characterization of Plaintiff in any media, including, but not limited to, Defendant's website(s), television appearances, books, advertisements, press conferences and interviews, including any such press conferences and interviews about the instant litigation. Plaintiff further demands entry of judgment against the Defendant for compensatory damages, taxable costs as the prevailing party, attorneys' fees and all further relief which this Court deems just and proper under all of the facts and circumstances of this matter.

## COUNT III – COMMON LAW BATTERY

Plaintiff re-alleges and incorporates herein by reference all allegations made in Paragraphs 1 through 17 above as if more fully set forth herein.

30.     In August of 2001, in Palm Beach County, Florida, more specifically, in front of the restaurant Max's Grille in Boca Raton, Florida, Defendant made physical contact or impact with Plaintiff.

31.     At such time, Defendant made such physical contact willingly, wantonly, and with malicious intent in order to cause harmful or offensive touching to the Plaintiff.

7

32.     At such time, Plaintiff did, in fact, sustain a harmful and offensive bodily contact from the Defendant.

33.     As a direct and proximate result of the harmful and offensive contact, the Plaintiff suffered bodily injury and sustained significant pain, suffering and other damages.

WHEREFORE, Plaintiff demands entry of judgment against the Defendant for compensatory damages, taxable costs as the prevailing party, attorneys' fees and all further relief which this Court deems just and proper under all of the facts and circumstances of this matter.

Respectfully submitted,

Law Offices of
**MICHAEL I. SANTUCCI, P.A.**
500 West Cypress Creek Road
Suite 500
Fort Lauderdale, Florida 33309
Phone: (954) 351-7474
Fax. (954) 351-7475

By: _____
Michael I. Santucci, Esq.
FBN: 0105260

8

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,            Case No.
individually,

        Plaintiff,

vs.

TUCKER MAX,
individually,

        Defendant.

_____/

## MOTION TO SEAL FILE AND TO PREVENT PUBLIC COMMENT OR DISSEMINATION OF FACTS OF OR INFORMATION CONCERNING LITIGATION

COMES NOW, Plaintiff, KATY JOHNSON, ("JOHNSON"), through her undersigned counsel, MICHAEL I. SANTUCCI, P.A., and hereby requests this Honorable Court to issue an order sealing the Clerk's file in this matter, and preventing public comment or dissemination of facts of or information concerning the instant action.

### INTRODUCTION

1.       Plaintiff has filed a complaint for injunctive relief and damages against Defendant to remedy the embarrassment and other damage which has been done to her business, career and person as a result of Defendant's use of JOHNSON's name, photograph and likeness on his adult website, and the publication of private stories about their alleged sexual affairs.

2.       On Thursday, May 01, 2003, Defendant was scheduled to appear on the television show "MTV Sex2k" to promote his website and books bearing JOHNSON's name and likeness. Without an order of this Court compelling Defendant to immediately remove all references to

JOHNSON from his website, further enjoining him from making reference to JOHNSON on the imminent television broadcast, in books and online, and/or discussing the facts of the instant action publicly, the harm she has already suffered will escalate to new heights.

3.      Plaintiff believes that the very fact of her filing the instant action to prevent further use of her name and likeness, and to prevent further dissemination of the very private intimate matters will be used by Defendant to further embarrass Plaintiff publicly, and to further promote his website, books, merchandise and career.

4.      Furthermore, publicity about this litigation could prejudice the parties and obstruct the fair administration of justice being that Plaintiff is a local resident of Palm County, Florida.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue an order sealing the Clerk's file in this matter, and preventing public comment or dissemination of facts of or information concerning this the instant action.  In the alternative, Plaintiff requests that this Honorable Court, at the very least, permit the parties to file certain pleadings such as those containing discovery or affidavits or deposition transcripts under seal.

Respectfully submitted,

Law Offices of
**MICHAEL I. SANTUCCI, P.A.**
500 West Cypress Creek Road
Suite 500
Fort Lauderdale, Florida 33309
Phone: (954) 351-7474
Fax: (954) 351-7475

By: _____
Michael I. Santucci, Esq.
FBN: 0105260

2

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that a good faith effort shall be made to serve the foregoing document on the Defendant together with initial process in this action.

Michael I. Santucci

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,                                              Case No.
individually,

        Plaintiff,

vs.

TUCKER MAX,
individually,

        Defendant.
_____/

## EMERGENCY MOTION FOR TEMPORARY INJUNCTION WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff, KATY JOHNSON, ("JOHNSON"), through her undersigned counsel, MICHAEL I. SANTUCCI, P.A., hereby requests this Honorable Court to issue a temporary injunction without notice, under Fla. R. Civ. P. 1.610, on an emergency basis, enjoining and restraining Defendant, TUCKER MAX, to refrain from certain acts more specifically described below.

### INTRODUCTION

1.    Contemporaneously herewith, Plaintiff has filed a complaint for injunctive relief and damages against Defendant to remedy the embarrassment and other damage which has been done to her business, career and person as a result of Defendant's use of JOHNSON's name, photograph and likeness on his adult website, and the publication of private stories about their alleged sexual affairs.  On Thursday, May 01, 2003, Defendant was scheduled to appear on the television show "MTV Sex2k" to promote his website and books bearing JOHNSON's name and likeness.  Without an order of this Court compelling Defendant to immediately remove all

Without an order of this Court compelling Defendant to immediately remove all references to JOHNSON from his website, and further enjoining him from making reference to JOHNSON on the imminent television broadcast, in books and online, the harm she has already suffered will escalate to new heights. Plaintiff has also alleged a cause of action against Defendant in her complaint for battery which occurred in Boca Raton, Florida in 2001.

## STATEMENT OF FACTS

1.   Plaintiff JOHNSON is a two-time winner of the Miss Delaware/Miss Delaware USA pageants, writer and cartoonist who publishes cartoon books intended to promote, and teach young girls, values such as self esteem, confidence, respect, integrity, responsibility and beauty. Her books are available through her website located at www.katyjohnson.com, and through certain pageantry magazines.[1]

2.   Defendant maintains a website which, in graphic detail, describes his claimed sexual exploits with various women (the "Website"). The Website contains a nine (9) page narrative about the details of his claimed private sexual affairs with Plaintiff.[2] In various places throughout the Website, Plaintiff's name "Katy," and "Katy Johnson," as well as her photograph and references to "Miss Vermont" are featured with links to said narrative. On the same pages as these references and on the page containing the narrative itself, Defendant offers merchandise for sale including women's panties, thong underwear, aprons, mugs, hats and other clothing bearing Defendant's name, as well as his book entitled "The Definitive Book of Pick-Up Lines" and "Belligerence and Debauchery – The Tucker Max Stories." All of said merchandise can be purchased online through Defendant's Website. On the same website, Defendant also promotes

---

[1] See Aff's of Katy Johnson, and Kathleen B. Johnson, Esq. attached as Exhibits "A" and "B" hereto.

[2] See Aff's. of Katy Johnson, Kathleen B. Johnson, Esq. attached as Exhibits "A" and "B" hereto.

his forthcoming appearance on the MTV show called "MTV Sex2K" which is scheduled to air this week, on May 1, 2003.  It is believed that Defendant's Website, and claims about JOHNSON will be referenced and cross-promoted during said broadcast.  Defendant makes further use of JOHNSON's name and likeness on his Website by providing a link to JOHNSON's website <www.katyjohnson.com> within the body of his narrative.[3]

3.     Plaintiff has never consented to or authorized Defendant to use her name and likeness for such a commercial purpose, nor did she ever authorize such private information, notwithstanding its truth or falsity, to be disclosed publicly.  Said website has been viewed, and said narrative has been read by Plaintiff's family, friends, business associates, and former classmates at Stetson University College of Law, which she recently attended.  (See Affidavit of Katy Johnson attached as Exhibit "A" hereto).[4]

4.     The section of Defendant's Website entitled "The Miss Vermont Story" at http://tuckermax.com/Stories/missvermont.htm [*a true and correct copy of which is attached to the affidavits hereto*] which purports to detail private facts relative to the relationship between the JOHNSON and Defendant and is summarized *to wit* as follows:

- Plaintiff and Defendant met at The Athletic Club of Boca Raton during the summer of 2001.

- Plaintiff and Defendant arranged for a meeting at Defendant's father's restaurant "Max's Grille" in Boca Raton.

- On the same evening, Defendant alleges Plaintiff and Defendant thereafter engaged in sexual intercourse in Plaintiff's white Ford Explorer.

---

[3] Aff's. Katy Johnson and Kathleen B. Johnson.
[4] Affidavit of Katy Johnson and Kathleen Johnson.

3

- On a subsequent occasion, Defendant invited Plaintiff to his residence in Palm Beach County where Defendant alleges Plaintiff performed oral sex in Defendant's kitchen.

- Plaintiff and Defendant "saw each other somewhat consistently over the next few weeks".

- Defendant thereafter invited Plaintiff to attend a wedding in North Carolina.

- Defendant alleges Plaintiff and Defendant engaged in sexual relations in every state en route to North Carolina, with the exception of South Carolina.

- Defendant alleges that while attending the wedding reception Plaintiff became intoxicated and "passed out" in a private room.

- Defendant further alleges that immediately prior to the conclusion of their relationship, Plaintiff performed oral sex in the bathroom of Defendant's father's restaurant "Max's Grille" in Boca Raton.

## STANDARD FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF

Fla. R. Civ. P. 1.610 provides that:

> "A temporary injunction may be granted without written or oral notice to the adverse party only if:
>
> (A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required." Id.

Although Fla. R. Civ. P. 1.610(b) requires a bond be given by the movant in an amount the court deems proper, Plaintiff urges this Honorable Court to consider the limited nature of the injunction sought, namely the mere removal of any references to "Katy," "Katy Johnson" and "Miss Vermont," as well as her image, from the Website and broadcast. Such a narrowly-

4

captions "Miss Vermont," "Katy" and "Katy Johnson" for the commercial purpose of selling his

adult books and merchandise and promoting himself as a self-proclaimed "pick-up artist". Even

the GOOGLE search engine result attached to the affidavits demonstrates how the search term

"Miss Vermont" now functions as an advertising slogan for Defendant's adult Website. A

search of this term "Miss Vermont" renders Defendant's website on the first page of results.

Young girls who are seeking for JOHNSON's website or on that pageant could therefore very

easily be misdirected to Defendant's adult website. No consent has ever been given for any such

use.

　　　Various defenses to the cause of action under § 540.08, Fla. Stat. are delineated therein.

§ 540.08, Fla. Stat. states that:

> "The provisions of this section shall not apply to:
> (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any ***bona fide news report or presentation having a current and legitimate public interest*** and where such name or likeness is not used for advertising purposes;
> (b) The use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has ***consented*** to the use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof; or
> (c) Any photograph of a person solely as a member of the public and where such person is ***not named*** or otherwise identified in or in connection with the use of such photograph." § 540.08(3), Fla. Stat. [*emphasis added*].

　　　These safe havens provided by subsection (3) of the statute simply do not apply to the

instant matter.[5] First, I it should be clear from even a precursory review of Defendant's Website

---

[5] <u>Messenger by Messenger v. Gruner + Jahr USA Pub., 1998, 994 F.Supp. 525</u>, question certified <u>175 F.3d 262</u>, certified question accepted <u>93 N.Y.2d 948, 694 N.Y.S.2d 342, 716 N.E.2d 177</u>, certified question answered <u>94 N.Y.2d 436, 706 N.Y.S.2d 52, 727 N.E.2d 549</u>, answer to certified question conformed to <u>208 F.3d 122</u>, certiorari denied <u>121 S.Ct. 57, 531 U.S. 818, 148 L.Ed.2d 25</u>(Florida statute exempting from liability publications on matters of public interest, regardless of how fictional use of plaintiff's name or likeness may be, did not bar model's

that it does not consist of bona fide news reports or any publications having current and legitimate public interest. Defendant's site consists solely of claimed stories of his own private sexual exploits with various women. This site is supplemented with advertisements and links for sale of his own merchandise and books regarding these same exploits and techniques for "picking-up" women. Furthermore, to even apply, subsection (3)(a) above requires that the name and likeness of the claimant not be used for advertising purposes. Defendant's Website contains references to "Miss Vermont" on the very same pages as his offers for sale of his books and merchandise. In the very same section of the Website which contains the nine (9) page narrative about JOHNSON, a direct, highlighted link is provided to the section of the site where Defendant's merchandise is displayed and sold.

Even if Defendant attempts to argue that JOHNSON's public status as Miss Vermont and Miss Vermont USA somehow thrusts his Website into the category of a "presentation having a current and legitimate public interest," this subsection still requires that the public interest being served be *"current"* (See § 540.03(3)(a), Fla Stat). JOHNSON is not the current Miss Vermont, or the current Miss Vermont USA.[6] She was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001.[7] Such facts do not transform Defendant's adult Website into a matter of "current and legitimate public interest." Defendant is clearly intending to pawn off of the name and title of JOHNSON for the purpose of promoting this merchandise and his books. The safe haven carved out for bona fide news reports therefore does not apply.

---

commercial misappropriation claim against magazine for its use of her photograph to illustrate letter in sexual advice column about teenage girl who had sexual intercourse with multiple partners).

[6] Aff's Katy Johnson and Kathleen B. Johnson, Exh's "A" and "B" hereto.
[7] Aff' Katy Johnson, Par. 3; Aff. Kathleen B. Johnson, Par.3 (Exh's "A" and "B" hereto).

7

The other safe havens created by the other two subsections of 540.08(3), namely subsections (b) and (c) also do not apply.  Subsection (b) requires the consent of the claimant. For example, in *Nat'l. Football League v. Alley, Inc.*, 624 F. Supp. 6 (S.D. Fla. 1983), a professional football players' *contractual consent* to appear in game telecasts constituted waiver of rights under §540.08.  *Id.*  Throughout the affidavits of Katy Johnson and Kathleen B. Johnson, they clearly testify that no consent whatsoever has ever been given to Defendant to use JOHNSON's name, image or likeness in any way, much less for such an adult commercial purpose.

Subsection (c) requires that the claimant's not be named or otherwise identified.  For example, in *Epic Metals Corp. v. CONDEC, Inc.*, 867 F. Supp. 1009 (M.D. Fla. 1994), the claim under § 540.08 was barred since the claimants head was down in the subject photograph, he was standing behind a stack of lumber, he was not named, and the claimant himself testified that no one had in fact recognized him in the photograph.  *Id.*  Quite to the contrary, KATY JOHNSON's name, title and references to her appear in various places throughout Defendant's Website.  She is by no means an unidentified, incidental person appearing on the site.  She is in fact well identified with a nine (9) page narrative which is one of the featured stories on the site. The attached affidavits indicate that many people, including JOHNSON's own mother recognized her clear head-shot photograph, and clear identification by first and last name and title "Miss Vermont."

As such, there is a likelihood the JOHNSON will prevail on the merits of her claim under § 540.08, Fla. Stat.  If the Defendant's conduct is not enjoined, additional and more significant harm will immediately follow.  It is believed that Defendant will use these references to

8

JOHNSON and facts about the herein litigation on his website in public appearances, in his books and on television to promote his products and career.

Invasion of Privacy

A cause of action exists under Florida law for the common-law tort of invasion of privacy based on commercial misappropriation of likeness, notwithstanding the statute proscribing unauthorized publication of person's name or likeness for trade, commercial, or advertising purposes. *Lane, supra.* In *Cason v. Baskin,* 20 So. 2d 243 (Fla. 1944), the supreme court recognized the tort of invasion of privacy as a distinct cause of action. *Heekin v. CBS Broadcasting, Inc.,* 789 So. 2d 355, 357 (Fla. 2nd DCA 2001). Under Florida law, the elements of common law invasion of privacy based on commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of statute. *Lane, supra.* Subsection 6 of § 540.08, Fla. Stat. specifically states that: "The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy." § 540.08(6), Fla. Stat. The elements of the tort of invasion of privacy are public disclosure, the facts disclosed to the public were private facts, and the matter made public is one which would be offensive and objectionable to a reasonable man of ordinary sensibilities. *Cape Publications, Inc. v. Hitchner,* 514 So. 2d 1136, 1137 (Fla. 5th DCA 1987) *decision quashed in part* 549 So. 2d 1374 (Fla. 1989) (citing Prosser, *Law of Torts,* § 117 (4th Ed.1971)).

Truth is not a defense against an action for invasion of privacy. *Cape Publications, Inc. v. Hitchner,* 514 So. 2d 1136, 1137 (Fla. 5th DCA 1987)(citing 9 Fla.Jur.2d Defamation or Privacy, § 147. The tort remedies the public disclosure of private facts, *even if truthful,* so long as they are private information which a reasonable person would find objectionable. *Heekin, supra,* at

9

358.  Absence of malice does not constitute a defense but may be an element in assessing damages. Id. at § 148.  The court held that neither the truth of the information published nor the absence of malicious motives in its publication is a defense to an action for invasion of privacy. *Heekin*, supra, citing *Cason*, supra at 245.  Further, in an action for invasion of privacy, the plaintiff is not required to plead or prove special damages. *Id.*  The elimination of several well-recognized defenses to libel and slander actions and the change in the burden of proof on damages make it clear that invasion of privacy is a separate cause of action from libel and slander. *Id.*  There is not even a heightened burden of any kind for public figure plaintiffs. *Heekin*, supra, at 358.

The stories, facts and claims which are contained within Defendant's nine (9) page narrative entitled "The Miss Vermont Story," relate to Defendant's claims regarding his private, intimate and sexual relationship with JOHNSON, and certainly were not anticipated by JOHNSON to be described, whether true or false, to a world-wide public audience on the internet, on television or in print media.  The fact that Defendant is disseminating such information cannot be questioned.  Again, his Website speaks for itself.  Any reasonable person would find the public dissemination of their private and intimate relationships and sexual activities to be objectionable.

Therefore, there is a likelihood the JOHNSON will prevail on the merits of her claim for common law invasion of privacy.  If the Defendant's conduct is not enjoined, additional and more significant harm will immediately follow.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter the attached proposed temporary injunction against the Defendant TUCKER MAX, his agents, servants,

employees, attorneys and those persons in active concert or participation with him who receive

actual notice of the requested injunction.  Plaintiff further requests all other relief that this Court

deems to be just and proper under all of the facts and circumstances of this matter, including,

without limitation, attorneys' fees and costs.

Dated: 5/1/03

                                         Respectfully submitted,
Law Offices of
**MICHAEL I. SANTUCCI, P.A.**
500 West Cypress Creek Road
Suite 500
Fort Lauderdale, Florida 33309
Phone: (954) 351-7474
Fax: (954) 351-7475

By: _____
              Michael I. Santucci, Esq.
              FBN: 0105260

11

## CERTIFICATE OF EFFORTS TO PUT DEFENDANT ON NOTICE UNDER RULE 1.620, FLORIDA RULES OF CIVIL PROCEDURE

I DO HEREBY CERTIFY that a good faith effort was made to locate and serve the Defendant with the herein Emergency Motion for Temporary Injunction With Supporting Memorandum of Law. The undersigned has engaged the services of former F.B.I. Regional Director, Alfred La Manna of Compass Investigations, Inc., for this purpose. We have thus far been unsuccessful in our attempts to locate Defendant at his record addresses, and believe that he is out of town in shootings for various television and media events.

It is the belief of the undersigned, as well as the Plaintiff and affiants, that notice to the Defendant should not be required as a prerequisite to injunctive relief because:

1.  Such notice will give Defendant the opportunity to further promote, (*through negative publicity*), his Website, merchandise, books and television appearance thereby escalating the harm to Plaintiff; and

2.  Time simply did not permit service of process or prior notice of any kind to Defendant as the first airing of the show "MTV Sex2k" is imminent.

5/1/03
/Date

Michael L. Santucci, Esq.

## TABLE OF AUTHORITIES

Fla. R. Civ. P. 1.610

§ 540.08, Fla. Stat.

*Cape Publications, Inc. v. Hitchner*, 514 So. 2d 1136, 1137 (Fla. 5th DCA 1987)

*Cason v. Baskin*, 20 So. 2d 243 (Fla. 1944)

*Epic Metals Corp. v. CONDEC, Inc.*, 867 F. Supp. 1009 (M.D. Fla. 1994)

*Heekin v. CBS Broadcasting. Inc.*, 789 So. 2d 355, 357 (Fla. 2nd DCA 2001)

*Lane v. MRA Holdings, LLC*, 2002 WL 31940726 (M.D. Fla. 2002)

*Messenger by Messenger v. Gruner + Jahr USA Pub.*, 994 F. Supp. 525 (S.D. N.Y. 1998)

*Nat'l. Football League v. Alley, Inc.*, 624 F. Supp. 6 (S.D. Fla. 1983)

*Nottage v. American Exp. Co.*, 452 So. 2d 1066 (Fla. 3rd DCA 1984)

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,                                    Case No.
individually,

   Plaintiff,

vs.

TUCKER MAX,
individually,

   Defendant.
_____/

STATE OF VERMONT   )
COUNTY OF CHITTENDEN  )

<u>AFFIDAVIT OF PLAINTIFF KATY JOHNSON</u>

I, Katy Johnson, do hereby affirm and declare the following facts upon penalty of

perjury:

1.   I am above the age of twenty-one (21) and am competent to testify

as the herein matters.  Unless otherwise indicated, all facts testified

to herein are based on personal knowledge.

2.   My name is Katy Johnson and I am the Plaintiff in the above

captioned matter.  I have recently attended the Stetson University

College of Law in the Summer of 2000 and the Fall of 2001.

3.   I am a two-time winner of the Miss Vermont Pageants.  I was

crowned Miss Vermont in 1999 and Miss Vermont USA in 2001.  I

commercially exploit my name, likeness, image and title in

connection with several business and public interest ventures.  I am

both a writer and cartoonist, and I publish cartoon books intended to promote, and teach young girls, values such as self-esteem, confidence, respect, integrity, responsibility and beauty.  My books are available through my website located at www.katyjohnson.com, and through certain pageantry magazines, including Pageantry Magazine for which I am a columnist.  (See Exhibit "1" hereto).

4.     I have been informed by my many of my friends, family members, business associates and former classmates that Defendant maintains a website which, in graphic detail, describes his claimed sexual exploits with various women (the "Website").  I have been told further by them that the Website contains a nine (9) page narrative about the details of his claimed private sexual affairs with me.  (See Exhibit "2" hereto).

5.     I personally viewed the website and discovered that such a website did, in fact, exist.  In various places throughout the Website, my name, "Katy" and "Katy Johnson" and references to "Miss Vermont" are featured with links to the narrative.

6.     On the same pages as these references and on the page containing the narrative itself, Defendant offers merchandise for sale including women's panties, thong underwear, aprons, mugs, hats and other clothing bearing his name, as well as his books entitled "The Definitive Book of Pick-Up Lines" and "Belligerence and Debauchery – The Tucker Max Stories."    All of this

2

merchandise can be purchased online through Defendant's Website.

7.      On the same Website, Defendant also promotes his forthcoming appearance on the MTV show called "MTV Sex2K" which is scheduled to begin airing this week, on May 2, 2003. Based upon my knowledge of, and conversations with Defendant, I believe that his Website, and claims about me will be referenced and cross-promoted during this television broadcast. I believe that he will use this, and any publicity he receives from the show, or this lawsuit to promote his Website, books and merchandise, and further embarrass me and my family.

8.      Defendant is making further use of my name and likeness on his Website by providing a link to my website <www.katyjohnson.com> within the body of his narrative. (See Exhibit "2" hereto). My website is directed to and created primarily for pre-teen girls and their families in search of wholesome family values. Now any search of my title "Miss Vermont" in the major online search engines will produce results which include Defendant TUCKER MAX's Website. (See Exhibit "3" hereto). The young girls who search the internet for my name and website will now be given the option to be directed to Defendant TUCKER MAX's adult website instead.

3

9.      I never consented to, or authorized, Defendant to use my name and likeness in any way, nor did I ever authorize such private information, notwithstanding its truth or falsity, to be disclosed publicly.

10.     I have suffered great embarrassment and harm at the hands of Defendant TUCKER MAX. Many of my family members, friends, business associates and former classmates have already read Defendant's stories. I fear that more will continue to read these stories, including my father, and associate me with TUCKER MAX and his adult audience.

11.     Each day that my name, likeness, image, reference to my website and these stories continue to be publicly displayed to the world on Defendant's Website the damage to my person and career therefore grows exponentially.

/
/
/
/
/
/
/
/
/

4

05/01/03 12:50 FAX 4036558810   Kimball Sullivan, VT
Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 54 of 148

MAY-01-2003 THU 11:57 AM LAW OFFICES          FAX NO. 954+351+7475          P. 06

FURTHER THIS AFFIANT SAYETH NAUGHT.

_____May 1, 2003_____   _Katy Johnson_____
Date                          Katy Johnson

Before me, a Notary Public in and for _Chittenden_ County, _Vermont_
personally appeared Katy Johnson known to me to be the person whose name is
subscribed to the foregoing instrument, and acknowledges to me that he/she executed
the same for the purposes and considerations therein expressed.

Given under my hand and seal of office this __1st__ day of __May__, 2003.

My commission expires: __2-10-07__    _____
                                       Notary Public

6

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,                                    Case No.
individually,

      Plaintiff,

vs.

TUCKER MAX,
individually,

      Defendant.
_____/

STATE OF FLORIDA        )
COUNTY OF PALM BEACH  )

## AFFIDAVIT OF KATHLEEN B. JOHNSON, ESQ.

I, Kathleen B. Johnson, do hereby affirm and declare the following facts upon penalty of perjury:

1.    I am above the age of twenty-one (21) and am competent to testify as the herein matters   Unless otherwise indicated, all facts testified to herein are based on personal knowledge.

2.    My name is Kathleen B. Johnson and I am the mother of the Plaintiff in the above captioned matter.  I have been a member of the Florida Bar for the past thirty (30) years, and have practiced in Palm Beach, County for many of those years.  I act as a manager and business agent to my daughter, Katy Johnson, and help to manage her business relative to her column in Pageant Magazine, and her website found at www.katyjohnson.com.

3.     My daughter Katy Johnson was crowned Miss Vermont 1999 and Miss Vermont USA 2001.   Together in a general partnership with my daughter, we commercially exploit her name, likeness, image and title in connection with several business and public interest ventures.   She is both a writer and cartoonist, and publishes cartoon books intended to promote, and teach young girls, values such as self-esteem, confidence, respect, integrity, responsibility and beauty.  Her books are available through our website located at www.katyjohnson.com, and through certain pageantry magazines including Pageantry Magazine for which she is a columnist. (See Exhibit "1" hereto).

4.     I have been informed by my many of my friends, family members, business associates and former classmates that Defendant maintains an adult website which, in graphic detail, describes his claimed sexual exploits with various women (the "Website").  I have been told further by them that the Website contains a nine (9) page narrative about the details of his claimed private sexual affairs with my daughter Katy Johnson.  (See Exhibit "2" hereto).

5.     I personally viewed the website and discovered that such a website did, in fact, exist.  In various places throughout the Website, the name, "Katy" and "Katy Johnson" and references to "Miss Vermont" are featured with links to the narrative.

7.     On the same pages as these references and on the page containing the narrative itself, Defendant offers merchandise for sale including women's panties, thong underwear, aprons, mugs, hats and other clothing bearing his name, as well as his books entitled "The Definitive Book of Pick-Up Lines" and "Belligerence and

Debauchery – The Tucker Max Stories."  All of this merchandise can be purchased online through Defendant's Website.

8.     On the same Website, Defendant also promotes his forthcoming appearance on the MTV show called "MTV SEX2K" which is scheduled to begin airing this week, on May 1, 2003 at 10PM EST.  From these promotions, and the television commercials I have viewed, I believe that his Website, and claims about my daughter will be referenced and cross-promoted during this television broadcast.  I believe that he will use this, and any publicity he receives from the show, or this lawsuit to promote his Website, books and merchandise, and further embarrass me, my daughter and my family.

9.     Defendant is making further use of my daughter's name and likeness on his Website by providing a link to our website <www.katyjohnson.com> within the body of his narrative.  (See Exhibit "2" hereto).  Our website is directed to and created primarily for pre-teen girls and their families in search of role models who teach wholesome family values.  Now any search of the title "Miss Vermont" in the major online search engines will produce results which include Defendant TUCKER MAX's Website.  (See Exhibit "3" hereto).  The young girls who search the internet for her name and website will now be given the option to be directed to Defendant TUCKER MAX's adult website instead.

10.     Neither I, nor KATY JOHNSON have ever consented to, or authorized, Defendant to use her name and likeness in any way, nor did either of us ever authorize such private information, notwithstanding its truth or falsity, to be disclosed publicly.

3

11.     KATY JOHSON has suffered great embarrassment and harm at the hands of Defendant TUCKER MAX.   Many of our family members, friends, business associates and former classmates have told us that they have already read Defendant's stories.   I fear that more will continue to read these stories and associate her with TUCKER MAX and his adult audience.   My daughter's relationships with the Miss Vermont and Miss Vermont USA pageants and Pageantry Magazine are now in immediate jeopardy.

12.     Each day that her name, likeness, image, reference to our website and these stories continue to be publicly displayed to the world on Defendant's Website the damage to my daughter's person and career grows exponentially.   There is no amount of money that can adequately remedy the continuing damage that has been done to KATY JOHNSON, our family and our business.

/

/

/

/

/

/

/

/

/

/

/

4

FURTHER THIS AFFIANT SAYETH NAUGHT

4/30/03
Date

Kathleen Johnson

Before me, a Notary Public in and for Palm Beach County, Florida, personally appeared Kathleen Johnson known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledges to me that he/she executed the same for the purposes and considerations therein expressed.

Given under my hand and seal of office this 30th day of April, 2003.

My commission expires: 9-16-05

Notary Public

OFFICIAL NOTARY SEAL
JANE A REAVES
COMMISSION NUMBER
DD053282
MY COMMISSION EXPIRES
SEPT 18,2005

5

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

KATY JOHNSON,
individually,

        Plaintiff,

vs.

TUCKER MAX,
individually,

        Defendant.

_____/

Case No. 2003 CA 004867 AF

FILED 03 MAY -6 AM 9: 05

## TEMPORARY INJUNCTION

    Plaintiff's Emergency Motion for Temporary Injunction was thoroughly reviewed by this Court and has otherwise been advised in the premises.

    IT IS ORDERED AND ADJUDGED as follows: This Court hereby enters a temporary injunction restraining and enjoining action against Defendant TUCKER MAX, an individual, as well as his servants, employees, attorneys, related entities, and those persons in active concert or participation with him who receive actual notice of this temporary injunction from:

    1.    Making any use of Plaintiff's name, portrait, photograph or other likeness for any advertising or other commercial purpose. This injunction shall apply, without limitation, to any use or inclusion by Defendant of, or reference to, the name "Katy Johnson," "Katy," "Johnson" or title "Miss Vermont" in any periodicals or books, and on his website located at www.tuckermax.com, or at any other website, owned, maintained or controlled, directly or indirectly, by Defendant;

2.    Disclosing any stories, facts or information, notwithstanding its truth, about any ~~intimate or sexual act engaged in by Plaintiff~~

3.    Providing any link to Plaintiff's website located at www.katyjohnson.com, from any website owned, maintained or controlled, directly or indirectly, by Defendant including, without limitation, the website located at www.tuckermax.com; and from

4.    Making any public statements, whether written or oral, about the subject matter of this litigation.

It is hereby further ORDERED AND ADJUDGED that the Plaintiff shall post a bond in the amount of $ _10,000_ for any potential damages to the Defendant that may result if it is ultimately decided that injunctive relief is not warranted under the facts and circumstances of this case.

ORDERED at Palm Beach County, Florida on May _6th_, 2003.


_Diana Lewis_
Circuit Court Judge


PALM BEACH COUNTY - STATE OF FLORIDA
I HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY OF RECORD IN MY OFFICE
THIS _6_ DAY OF _May_ 20 _03_
DOROTHY H. WILKEN
CLERK CIRCUIT COURT
BY _Carey A. Fox_ DC

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

Case No. 03-CA-004867

KATY JOHNSON,

     Plaintiff,

vs.

TUCKER MAX,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR EXTENSION OF TIME
## TO RESPOND TO COMPLAINT

Pursuant to Rule 1.090 of the Florida Rules of Civil Procedure, Defendant Tucker Max respecfully moves the Court for entry of an Order extending the time to respond to the Complaint filed by Plaintiff Katy Johnson, and in support states:

1     Plaintiff filed her Complaint and moved for an *ex parte* temporary injunction on May 6, 2003.

2.     Plaintiff served her Complaint on Defendant on May 8 or 9, 2003.

3.     Due to the recency of undersigned counsel's engagement herein, and due to the press of other matters, Defendant and his undersigned counsel require an extension of time of approximately ten days within which to respond to the Complaint.

4.     Prior to filing this motion, undersigned counsel contacted counsel for Plaintiff and requested his consent to an extension of time to respond to the Complaint. Plaintiff's counsel, however, refused to consent to any extension unless Defendant agreed to numerous conditions relating to the relief that Plaintiff seeks in this action. Undersigned counsel, however, cannot

agree to these additional demands, in light of the fact that the undersigned have only recently been engaged, need additional time to investigate the factual and legal background of the lawsuit, and need an opportunity to speak further with the Defendant.

5.      For the foregoing reasons, Defendant Tucker Max respectfully requests an extension of ten days within which to serve and file his response to the Complaint.

6.      This motion is being filed in good faith and not for any dilatory purpose. Moreover, Plaintiff will not be prejudiced by the brief extension of time requested herein.

7.      By filing this motion, Defendant is making a limited appearance only. Defendant does not waive, and hereby expressly reserves, the right to contest the jurisdiction of the Court over him in this matter.

WHEREFORE, Defendant Tucker Max respectfully requests that the Court enter an Order granting a ten-day extension of time within which Defendant shall serve and file his response to Plaintiff's Complaint, through and including June 9, 2003.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By:
John C. Carey
Florida Bar No. 0078379
Richard J. Mocker
Florida Bar No. 0563986

**Counsel for Defendant**

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by facsimile and United States mail this 28th day of May, 2003, on **Michael I. Santucci, Esq.,** Law Offices of Michael I. Santucci, P.A., Counsel for Plaintiff, 500 West Cypress Creek Road, Suite 500, Fort Lauderdale, Florida 33309.

John C. Carey

ss1-30105570v1

3

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., MIAMI, FL 33131-2385
TEL 305-358-9900 FAX 305-789-9302 WWW.STROOCK.COM

# EXHIBIT B



Page 1 of 1





ommunications
munications Major
NCE
s Comic Strip

*Magazine*
n Intern

person for Values
eptionist
iy - National Org.

voman & Writer

     **ORGANIZATION**
     **Member of MENSA**
     **Screen Actors Guild**
     **Student Florida**
List     **Bar Association**
     **Delta Delta Delta**
       **Sorority Officer**
or     **Westminister Headmaster's**
       **Council**

BOCA RATON, FL 33432 E-MAIL PAGEANT CITY@AOL.COM



STARRLETTES

- & Work
- Pageants
- Film & TV

- Home Page
- Katy's Resume
- The STARRS
- Book Look
- Pageantry Magazine
- Tissue Issues
- Character Cartoons
- Betsy the Cow
- Think Link
- What's Hot & Not!
- Miss USA Pages
- Katy's Portfolio

## Theater & Commercials

**THEATER**
Starpower Natl. Drama Winner 1995

| | | |
|---|---|---|
| The Boyfriend | Maisie | Westminister Acdmy. |
| Dreams of Hollywood & Broadway | Lead Role | Jan McArt Theater |
| The Wonderful World of Free to Be | Lead Role | Delray Bch. Playhouse |
| Alice in Wonderland | Title Role | Little Palm Theater |
| Oliver | Title Role | Dance Arts Studio |
| Little Red Riding Hood | Title Role | Little Palm Theater |

**COMMERCIALS**

| | | |
|---|---|---|
| Scope Commercial | Principal | National |
| Crest Commercial | Principal | National |
| 2 MCI Commercials | Principal | National |
| WWF "Beauty Pageant" Superbowl Commercial | Principal | #1 Commercial by USA Today, Feb. 2000 |

*Regional and Local list available upon request*

**PRINT**
Full Page in GQ Magazine, June 2001, page 52
Cover model for two international magazines
Experienced in print, runway, catalogue, fashion
*Regional and local list available upon request*

COPYRIGHT 200_ STARRLETTES ALL RIGHTS RESERVED WORLDWIDE. CONTACT STARRLETTES 125 CRAWFORD BLVD BOCA RATON, FL 33432 E-MAIL PAGEANT CITY@AOL.COM



**STARRLETTES**

★ School & Work
★ Pageants
★ Theater & Commercials

- Home Page
- Katy's Resume
- The STARRS
- Book Look
- Pageantry Magazine
- Tissue Issues
- Character Cartoons
- Betsy the Cow
- Think Link
- What's Hot & Not
- Miss USA Pages
- Katy's Portfolio

## Film & TV

**FILM CREDITS**

| | |
|---|---|
| Boy in the Golden Kimono III | Lead |
| Boy in the Golden Kimono IV | Lead |
| Boy in the Golden Kimono V | Lead |
| Karate Warrior I | Lead |
| Karate Warrior II | Lead |
| Karate Warrior III | Lead |
| Karate Warrior IV | Lead |
| Karate Warrior V | Lead |
| Karate Warrior VI | Lead |

**TELEVISION**

| | |
|---|---|
| Survivor IV | Semi-Finalist |
| Survivor II: The Outback | Semi-Finalist out |
| Miss USA Pageant 2001 | Miss Vermont USA |
| Behind the Scenes at Miss America | Miss Vermont Am. |
| Up Close and Personal | Miss Vermont Am. |
| Miss America Pageant 1999 | Miss Vermont Am. |
| Kid's T.V. | News Anchor |
| Teens Summit Up | Student Panelist |
| Home Shopping Network | Television Hostes |
| ESPN College Football Awards | Television Hostes |
| Boy in the Golden Kimono TV Series | Lead |
| Discrimination | Sandy |

COPYRIGHT 2002 STARRLETTES ALL RIGHTS RESERVED WORLDWIDE. CONTACT STARRLETTES 125 CRAWFORD BLVD BOCA RATON, FL 33432 E-MAIL PAGEANT CITY@AOL.COM



**School & Work**
**Film & TV**
**Theater & Commercials**

Home Page

Katy's Resume

The STARRS

Book Look

Pageantry Magazine

Tissue Issues

Character Cartoons

Betsy the Cow

Think Link

What's Hot & Not!

Miss USA Pages

Katy's Portfolio



# *Pageants*

**Miss Vermont USA 2001**
**1st Inductee into Who's Who in Pageants 2000**
**Miss Vermont 1999**
**Miss Oktoberfest 1998**
**Miss Florida USA 1st Runner Up 1998**
**Miss United States Teen 1997**
**Florida Homecoming Queen 1996**
**Miss Teenage America Finalist 1995**
**Miss Florida Teen USA Photogenic Winner 1995**
**Miss Florida Teen USA 1st Runner Up 1995**
**Florida Cinderella Teen 1994**

COPYRIGHT 2001 STARRLETTES ALL RIGHTS RESERVED WORLDWIDE. CONTACT STARRLETTES 125 CRAWFORD BLVD BOCA RATON, FL 33432 E-MAIL PAGEANT CITY@AOL.COM

# EXHIBIT C

# The New York Times

Copyright © 2003 The New York Times

MONDAY, JUNE 2, 2003

Printed in

# Internet Battle Raises Questions About Privacy and the First Amendment

**By ADAM LIPTAK**

The beauty queen and the cad both have eb sites.

Katy Johnson, who was Miss Vermont in 99 and again in 2001, uses her site to romote what she calls her "platform of haracter education."

"She is founder of Say Nay Today and e Sobriety Society," the site says, "and er article 'ABC's of Abstinence' was feared in Teen magazine."

Tucker Max's site promotes something ke the opposite of character education. It ontains a form through which women can pply for a date with him, pictures of his ormer girlfriends and reports on what Mr. fax calls his "belligerence and debauchry."

Until a Florida judge issued an unusual rder last month, Mr. Max's site was also conained a long account of his relationship ith Ms. Johnson, whom he portrayed, ccording to court papers, as vapid, proiscuous and an unlikely candidate for iembership in the Sobriety Society.

The order, issued by Judge Diana Lews of Circuit Court in West Palm Beach, orbids Mr. Max to write about Ms. Johnn. It has alarmed experts in First mendment law, who say that such orders iblishing future publication, prior reraints, are essentially unknown in Amern law. Moreover, they say, claims like

Ms. Johnson's, for invasion of privacy, have almost never been considered enough to justify prior restraints.

Ms. Johnson's lawsuit also highlights some shifting legal distinctions in the Internet era, between private matters and public ones and between speech and property.

Judge Lewis ruled on May 6, before Mr. Max was notified of the suit and without holding a hearing. She told Mr. Max that he could not use "Katy" on his site. Nor could he use Ms. Johnson's last name, full name or the words "Miss Vermont."

The judge also prohibited Mr. Max from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual acts engaged in by" Ms. Johnson. The prohibition is not limited to his Web site. Finally, Judge Lewis ordered Mr. Max to sever the virtual remains of his relationship with Ms. Johnson. He is no longer allowed to link to her Web site.

The page of Mr. Max's site that used to contain his rambling memoir now has only a reference to the court order.

Ms. Johnson did not respond to telephone and e-mail messages seeking comment. In her lawsuit, Ms. Johnson maintained that Mr. Max had invaded her privacy by publishing accurate information about her and had used her name and picture for commercial purposes.

Her lawyer, Michael I. Santucci of Fort

contained on Tucker Max's Web site."

Mr. Santucci did not respond to an e-mail message asking whether his issuing a news release was at odds with his request to seal the court file on privacy grounds.

John C. Carey, a lawyer at Stroock & Stroock & Lavan in Miami, recently agreed to represent Mr. Max. Mr. Carey said he would soon ask Judge Lewis to withdraw her order and dismiss the case.

"Katy Johnson holds herself out publicly, for her own commercial gain, as a champion of abstinence and a woman of virtue," Mr. Carey said. "The public has a legitimate interest in knowing whether or not her own behavior is consistent with the virtuous image that she publicly seeks to promote."

Through his lawyer and his publicity agent, Mr. Max declined to be interviewed.

Ms. Johnson's site is www.katyjohnson .com. Mr. Max's is www.tuckermax.com. Both Mr. Johnson and Mr. Max sell T-shirts and the books they have written on their sites. Ms. Johnson's book is "True Beauty: A Sunny Face Means a Happy Heart." Mr. Max's is "The Definitive Book of Pick-Up Lines."

That the sites are also used to make money should make to achieve in whether Mr. Max may be forbidden to write about them, Ms. Johnson, said Gregg D. Thomas, an expert in First Amendment law at Holland & Knight in Tampa, Fla.

Katy Johnson, who says her Web site promotes "character education," has taken legal action against another site.

Lauderdale, declined to be interviewed. He has asked Judge Lewis to seal the court file in the case, a request on which she has not yet ruled, and to prohibit Mr. Max from talking about the suit, a request she has rejected.

Mr. Santucci did provide a copy of a news release he issued after the order was issued.

"This victory should send a clear message to all parasitic smut peddlers who live off the good names of others," he said in the release, which also noted that Ms. Johnson "emphatically denies the story

"This is clearly a suppression of free speech," Mr. Thomas said of Judge Lewis's order.

Prior restraints based on invasion of privacy are unusual.

"It has happened perishingly rarely," said Diane L. Zimmerman, a law professor at New York University and an expert in First Amendment and privacy law. "When it has happened it has generated enormous controversy."

Professor Zimmerman noted the example of "Titicut Follies," a documentary about patients in a mental hospital that was banned on privacy grounds in 1969 by Massachusetts's highest court. A judge lifted the ban in 1991.

The prohibition on linking to Ms. Johnson's site is "kooky," said Susan P. Crawford, who teaches Internet law at Cardozo School of Law at Yeshiva University.

"To block an ability to link," Professor Crawford said, "is in effect to say her site is her own private property."

While a prior restraint may not be warranted, legal experts said, Ms. Johnson's invasion-of-privacy claim, so long as it seeks only money, may be justified.

But that, too, raises difficult issues, Professor Zimmerman said.

"If you're telling people they can't talk about something like this," she said of Mr. Max's memoir, "you're also telling them they can't talk about their own lives."



**EXTRA EXTRA...SAVE BIG ON GROCERI**

HOME | NEWS | MONEY | SPORTS | ENTERTAINMENT | FEATURES | SCURRILOUS

NEWS

# Miss Vermont won't kiss and tell

BY ART GOLAB RED STREAK

A former Miss Vermont has sued a Chicago Web site operator who wrote in detail about their former romantic relationship on his Internet site.

Katy Johnson, 24, a two-time Miss Vermont, claims she played Beauty to Tucker Max's Beast in a lawsuit filed Monday in Florida. The suit alleges the 27-year-old Max is commercially exploiting her name and image for profit by revealing "embarrassing private facts" about their relationship.

"You cannot use someone's name and likeness in the state of Florida for a commercial purpose without their consent," said Johnson's attorney, Michael Santucci.

The suit asks that Max's "The Miss Vermont Story," be taken off his Web site.

Max, a University of Chicago and Duke University Law School graduate, posts stories about his drunken party revels on his site. many of them describing the girls he has picked up and dated over the last few years.

Max also uses the site to promote his book, "The Definitive Book of Pickup Lines," as well as T-shirts and other items.

On his "Tucker Max Date Application" web page, he lists as his life goals: "To be a celebrity that gets paid to get drunk, act like an ***hole, and get drunk some more."

The online date application and other exploits drew the attention of MTV, which featured him in a segment of its currently running "Sex2K" special.

Johnson, who lives in Delray Beach, Fla., but went to college in Vermont, operates her own Web site, which features cartoon characters preaching sexual abstinence to children.

Her site also promotes a book, this one aimed at young women competing in beauty pageants: "True Beauty: A Sunny Face Means a Happy Heart," and sells T-shirts on her site with pageant themes.

Johnson was Miss Vermont USA 2001 and Miss Vermont America 1999.

"The case is farcical," said Max, reached in Austin, Texas, where he moved earlier this week to take a job in a bar.

SUBSCRIBE ONLINE TODAY
Have Red Streak delivered to your home
for only $1
SIGN UP

RED STREAK PERSONALS



Meet someone special at the Red Streak Personals

ONLINE MAITRE D'

Select a category, input the restaurant's name or type of cuisine, click Search.

○ Name
○ Cuisine
SEARCH

EVENTS CALENDAR

Comedy
Dance
Festivals
Film Buffs
For Kids




Gral
Stre
par
thi
incl
W
He

SEARCH

ADVERTISING



**RedStreak Media Kit**
Download the pdf

"She has absolutely no case and when the facts get before the judge, the judge will see this."

Until recently, Max lived in the Halsted-Armitage area and is a veteran of the bar scene there.

He wrote his pick-up lines book while a law student at Duke. After graduating, he gave up law after being fired from a $2,400-a-week internship at a California law firm for drunken behavior at a company charity auction.

An e-mail he circulated about the incident became infamous among law students, and Max then began compiling other stories on the web.

**Visit our online partners:**
Daily Southtown    Pioneer Press    Suburban Chicago Newspapers    Post-Tribune
Star Newspapers    Jerusalem Post    Daily Telegraph

Copyright 2003, Digital Chicago Inc.
Terms of use & Privacy policy



EXTRA EXTRA...SAVE BIG ON GROCERI

HOME | NEWS | MONEY | SPORTS | ENTERTAINMENT | FEATURES | SCURRILOUS

NEWS

# Judge gags online lover boy

*May 8, 2003*

### BY ART GOLAB RED STREAK

A Florida judge has ordered a self-proclaimed expert on picking up women to stop spilling details of his romantic relationship with a former Miss Vermont on his Web site.

The judge issued a temporary injunction against former Chicagoan Tucker Max, in response to a suit filed by two-time Miss Vermont Katy Johnson, which alleged Max was exploiting her name for commercial gain.

Max maintains a Web site where he posts tales of his drunken adventures and supposed sexual exploits. The "Miss Vermont story" purports to describe having sex with Johnson on the first date. He also uses the site to promote a book he wrote on pickup lines, as well as other merchandise.

The injunction orders Max to remove all references to Johnson from his site, and from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual act engaged in by the plaintiff." It also requires Max to post a $10,000 bond to cover Johnson's potential damages.

"I can't really comment on the specifics of the case until I've had a chance to review it," Max said. The "Miss Vermont story," however, remained on his site Wednesday night.

Johnson's attorney, Michael Santucci, described the ruling as a victory that "should send a clear message to all parasitic smut peddlers who live off the good name of others." He said Johnson "emphatically denies" the story on Max's site.

First Amendment expert and University of Minnesota law professor Jane Kirtley said such injunctions are unusual in pure free speech cases, but the fact that Max conducts some business on his site clouds the issue.

Judge gags online lover boy

Romantic antics with Miss Vermont cannot be posted on Web site

Katy Johnson

SUBSCRIBE ONLINE TODAY
Have Red Streak delivered to your home for only $1
SIGN UP

RED STREAK PERSONALS



Meet someone special at the **Red Streak Personals**

ONLINE MAITRE D'

Select a category, input the restaurant's name or type of cuisine, click Search.

⃝ **Name**
⃝ **Cuisine**


SEARCH

EVENTS CALENDAR

Comedy
Dance
Festivals
Film Buffs
For Kids

Gra
Stre
par
the
incl
W
He

**SEARCH**

Cla
P

Or ς

**ADVERTISING**



**RedStreak Media Kit**
Download the pdf

**Visit our online partners:**

Daily Southtown      Pioneer Press      Suburban Chicago Newspapers      Post-Tribune
Star Newspapers      Jerusalem Post      Daily Telegraph

Copyright 2003, Digital Chicago Inc.
Terms of use & Privacy policy

Beware toxic ex-boyfriend and venom he can spew





Home | News | Sports | Business | Entertainment | Classifieds

Columnists | Autos | Homes | Careers | Lifestyles | Ebert | Search

mobile | email edition | printer friendly | email article

## PAIGE WISER

# Beware toxic ex-boyfriend and venom he can spew

*May 15, 2003*

**BY PAIGE WISER SUN-TIMES COLUMNIST**

Advertisement

Be alarmed. More men are kissing and telling-- for profit, and for fun

Last week, the Sun-Times' Art Golab reported that a former Chicagoan had been sued by a Miss Vermont, no less. It seems that Tucker Max, 27, has a Web site where he dishes on all the ladies he's loved before. He even posts photos of his ex-girlfriends.



most

WHERE THE WORLD'S LEADING AIRLINES BRING YOU THE MOST LOW FARES

"I put the page up originally to settle a bet," he writes. "I kept the page up because it is entertaining and a great vehicle for personal publicity, something I admittedly crave."

And yet Miss Vermont objected to the published tales of their sexcapades, particularly since she preaches abstinence on her own Web site. Let's see: an unfortunate run-in with Tucker Max, then a renewed commitment to abstinence. Could the two have been related?

It's just the latest local outbreak of a nationwide plague. Tomorrow, the '60s-era romp "Down With Love" opens in movie theaters. Ewan McGregor plays Catcher Block, a name that sounds suspiciously like Tucker Max. He is a magazine writer determined to seduce the feminist character played by Renee Zellweger, to make her (gasp) fall in love with him, and then (double gasp) to expose her as a typical, weak-willed woman. That's entertainment, my friends.

In the publishing world, Rick Marin scored a hit with his memoir, *Cad:*



*Confessions of a Toxic Bachelor.* The plot: Kiss, tell, kiss, tell, kiss, tell. Then he swears he's reformed. In New York, there were actually women he'd dated who were disappointed they didn't rate a mention.

And it may be the beginning of a new men-reveal-all genre. Also out this year: *Things My Girlfriend and I Have Argued About,* by Mil Millington.

On the celebrity front, the psychologically delicate Mariah Carey is dealing with two blabbermouth exes. Gossips are reporting that Eminem saved all the long, gushy voicemails she left on her machine, and is planning to write a rap song around them. He told Rolling Stone, "I just don't like her as a person. ... She doesn't really have it all together."

And singer Luis Miguel is reportedly trying to get publicity for his new album by telling all about Carey in another magazine. He was one of the lucky witnesses to her 2001 breakdown.

Even Jennifer Lopez is feeling the wrath of a man scorned. Her first husband, Cuban waiter Ojani Noa, agreed to an interview for the U.K. documentary "Behind the Behind." He went on record to say, "I still can't understand how a woman could be so loving, caring and seemingly devoted to our future life together, then turn so cold."

Then he told producers that she liked to shop a lot.

How low can men go? Since when is dishing on women their new favorite sport? Is this their way of showing affection--that they never quite got over us? Don't they know that if they just ignore us, we'd like them more?

None of this is illegal, but it should be. At the least, it's not very nice. I think we can all agree that searching for your true love is humiliating enough without the fear that your ex will write a book about you.

If men keep this up, women may have no choice but to retaliate. If there is no kissing, after all, there's no telling.

Once upon a time, the Greek women of Troy withheld sex from their husbands in order to end a war. This was a noble goal. And I'm guessing there are plenty of people out there who would sacrifice sex for world peace.

But let's be realistic. We'd settle for getting men to shut up, wouldn't we?





**Subscribe today and get Chicago magazine for only $1 per issue!**

News | Sports | Business | Entertainment | Lifestyles | Classifieds

Visit our online partners:

Daily Southtown    Pioneer Press    Suburban Chicago Newspapers    Post-Tribune
Star Newspapers    Jerusalem Post    Daily Telegraph

Copyright 2003, Digital Chicago Inc.



# UNITED PRESS INTERNATIONAL

## Joe Bob's Week in Review

By Joe Bob Briggs
From the Life & Mind Desk
Published 5/9/2003 11:57 AM
View printer-friendly version

Steve Wynn, the casino mogul, paid $23.5 million for a Renoir painting called "In the Roses (M Leon Clapisson)" at Sotheby's in New York, then followed that up the next night by spending $ million at Christie's on an 1895 self-portrait by Cezanne. Wynn is legally blind, but lives in Las where nothing is what it appears to be anyway.

The Pennsylvania legislature passed a tough "prom law" that requires one adult chaperone for minors at proms and other school-sponsored events at hotels, banquet halls and any facility th alcohol. The only problem is: there aren't that many adult employees at any of the schools. Bu there are LOTS of older guys who would volunteer.

The two astronauts and one cosmonaut tending the space station came back home in a Soyu; that strayed 275 miles off target and fell so fast and hard that all three men had to crawl aroun hands and knees for 90 minutes after landing, and were not expected to be fully recuperated f weeks. Describing the descent, which subjected them to eight times the force of gravity and ca tongues to roll back in their mouths, they said, "Did you see 'Eraserhead'?"

President Bush swooped down onto the deck of the USS Abraham Lincoln, making a tailhook his S-3B Viking jet, then made a speech about triumphing in Iraq -- prompting 85-year-old Sen Byrd, D-W Va . to speak of a "desk-bound president who assumes the garb of a warrior," usin carrier as "an advertising backdrop for a presidential political slogan," contrasting the Bush sp "the simple dignity" of Lincoln's Gettysburg Address. Bush's reply: the joy stick looked really co

The University of California at Berkeley, that bastion of multiculturalism, announced that stude China, Taiwan, Singapore and Hong Kong would be banned from attending the summer sessi SARS paranoia. Apparently Japan is not part of the freeze-out, but check that sushi anyway.

Wal-Mart removed Maxim, Stuff and FHM from its shelves nationwide, even though all three m magazines have no actual nudity. Wal-Mart cited "pressure from Christian groups," who have ; known aversion to bikinis and supermodels, as we know from their boycott of the annual Sport Illustrated swimsuit issue. The cleavage on Cosmo, on the other hand, somehow gets a free ri because it's directed at cleavage-emulators, not cleavage-droolers.

The first all-nude airline flight took off from Miami and landed a couple hours later in Cancun, t Castaways Travel Agency of Houston, which specializes in clothing-optional getaways. This gi whole new meaning to the instruction "Stow your laptops."

In other body-baring news, Joseph Gottschalk of San Antonio was warned by police for the 20 after citizens complained about his habit of bicycling through Southside Lions Park clad only ir Legally he's within his rights, because the thong covers up everything that needs to be covere barely -- but it just looks PAINFUL.

Katy Johnson, the former Miss Vermont, filed suit in West Palm Beach, Fla., against Tucker M

runs a Web site devoted to the secrets of picking up women. Apparently Katy is featured prom one of his success stories, which she says in her lawsuit involves "embarrassing private facts" relationship. Katy is a spokeswoman for sexual abstinence, and asks that the part of Max's sit "The Miss Vermont Story" be banned. Of course, NOBODY will read it now. Just say no, Katy.

Minnesotans are outraged that South Dakotans are attempting to buy the statues of Paul Buny Babe the Blue Ox that stand in Brainerd. Considering the subject, couldn't he have a leg in ea

The Hempstock Festival, held every year at a farm in Starks, Maine, to celebrate marijuana ar being disbanded due to the legal fees of constantly battling the town over the granting of perm cool, though.

The remains of 25 bodies were unearthed during the construction of a Wal-Mart in Honolulu. V officials are continuing, indicating that they failed to watch "Poltergeist."

The largest class action suit against the government in history opened in Washington, with 30 American Indians claiming that the Interior Department mismanaged their trust fund for more t century and owes them $137 billion. The government admits it can't find all the money that sh gone to the Indians from oil, gas, timber and mining royalties, but told District Court Judge Roy Lamberth that if he would give them five more years, they could find it. It will take them that lor every Department of the Interior employee think real hard about, "OK, where did I go yesterda day before? The day

before that?    "

The New York City Council convened a special committee to study the legality of seceding fror of New York, raising the issue of what the 51st state would be called. New New York? Redund New York? Already the name of a city. How about just Apple? That would put it right after Alas right before Arizona, both of which would dwarf it in size and put it in the proper perspective.

Exploding caskets in Sweden are endangering crematorium workers, according to the church Kyrkans Tidning. Theories about the causes of the explosions -- which occur when the body is include pacemakers, silicone implants, and items left in the casket by family members such as ammunition cartridges and fireworks. From now on anyone who wants to be buried with his gr launcher will have to be shipped to Denmark for service.

(Joe Bob Briggs writes several columns for UPI. Contact him at joebob@upi.com or through h joebobbriggs.com. Snail mail: P.O. Box 2002, Dallas, Texas 75221.)

Copyright © 2001-2003 United Press International

View printer-friendly version

Copyright © 2001-2003, by United Press International. All rights reserved. This material may not b
rebroadcast, rewritten, redistributed, resold or manipulat

TBO.com Keyword:

TBO.COM   WFLA   The Tampa Tribune

# THE TAMPA TRIBUNE
### ONLINE EDITION
Powered by TBO.com

**Welcome**

Send us your feedback
• Subscribe to the Tribune
• Advertise with us

**Student Loan Consolidation** - If you have $10,000 or more in student loan debt and have started student loan repayment or are in your grace period, you may qualify for the Federal Student Consolidation Loan. Consolidation can save you up to 52% a month and could possibly lower your interest rate to 2.25%.   **For more information please click here**

▶ Find unbeatab on great cars. C

Tuesday, June 3

📄 Printer friendly version
✉️ Email this to a friend

A new career r
The Tampa and TBO

Click here this week

Sponsor

**Contents**

Breaking News
Nation/World - Front Section
Metro
Sports
MoneySense
Baylife
• Judy Hill
• Book Reviews
• Faith
• Flavor
• History & Heritage
• Prime Time
• Science & Technology
• Travel
• TV
• The Rail
Friday Extra
Opinion
Births
Obituaries
Classified
Recent Editions
Archive
Contact Us
The Tampa Tribune Home Page

**Column:**

BAYLIFE > Revelle



**JILL M REVELLE**
The Quartertiser
jrevelle@tampatrib.com

**Related:**
▶ More Columns
▶ Email Jill Revelle

# Is There Any Worth To Fame Purchased At Any Price?

### JILL REVELLE

Published: Feb 21, 2003

Whenever I speak to groups of students, one of the question-and-answer favorites is "Have you ever met anybody famous?"

They never seem impressed at the list that includes aging Broadway actors, B-movie moguls, low-ranking Missouri politicians and "that rubber-band-ball kid who was on David Letterman."

But now, I can tell them I've met Tucker Max.

(Insert blank stares from the crowd and crickets chirping sound effect here.)

If you've never heard of him, you're not alone. Like with most cult pop personalities, his fans are fierce but far from mainstream.

According to the Internet - because we can believe everything we read there - the Legend of Tucker Max started with a bet between law school friends. (Yes, this guy managed to graduate from law school.) A female friend dared the relationship-challenged Max to post a site asking women to fill out an application in hopes of landing a date with him. If he did, she would perform at a strip club's amateur night.

Charming.

Apparently, the Full Monty payoff hasn't yet been made. But the site remains active at www.tuckermax.com and draws thousands of hits per day with its stories of stupid things that Tucker does while drunk, pictures of and rude remarks about his ex-girlfriends, general self-glorifying rambling and, of course, the "date application" that started the whole thing.

He claims his mother cried the first time she saw it.

**4SaleBuy Classified**
Tampa Ba Estate, Ca Boats Sav Money, Bu
http://www.4sa

**Tampa Ne Home Sea**
iNest's gu new home home buil buyer reba program.
www.iNest.com

**Tampa Fl Hotels**
Point-Trav Compare From Lead Sites. Find Prices!
www.point-travel.com/tam

**Valrico Fl Estate**
Find your Home in F All USA R keep it sin
www.allusarea

**Communities**
- Pasco County
- Northeast Tampa
- N.W. Hillsborough
- South Tampa
- Central Tampa
- Brandon
- Plant City
- Pinellas County
- Hernando County
- Highlands County
- Community News Main Page

**TBO.com Channels**

News
Weather
Things to Do
Sports
Traffic
Classified
Real Estate
Employment
Autos
Relocation
Multimedia Reports
Information on Demand
Health
Shopping
Consumer
Education
Money
Travel
Games
TBO.com Home Page

**1995**

Yellow Pages
White Pages
Email Search
Maps and Directions
Financial
Local Web Site & Marketplace Directory
TV Listings
Tribune Archive
Contact Us

## In The Flesh

When I first learned of the site, I thought it might make great column fodder: a 27-year-old Chicago guy gaining national attention for a dating Web site. Learning that MTV is planning a special on him sealed the deal.

I e-mailed the address on the site, and he was on my phone the next day telling me that as luck would have it, he was to be in Tampa the very next weekend for the Sant' Yago Illuminated Knight Parade and that, judging by my picture in the paper, he would be willing to meet in person.

Which is how I ended up spending 2 1/2 hours of Valentine's Day afternoon getting to know the real Tucker Max.

A self-described ``media whore," he has decided that any publicity is good publicity when your entire goal is to get famous by any means necessary.

He already has published ``The Definitive Book of Pick-up Lines" and claims to be working on a novel that will set the world of modern fiction on its ear. He also says he has been approached by producers wanting to create a reality television series around him and his friends.

Think ``Sex and the City" meets ``Jackass."

He bragged about throwing up on the MTV film crew that had followed him around the week before.

He talked about how much he loves kids and can't wait to be a dad.

He detailed his history of infidelity.

He extolled the virtues of marriage.

He talked about all kinds of things and, as long as Tucker Max was the center of conversation, he was happy.

Eventually, talk turned to ``the other Web site."

## Good Taste Failing

Thanks to Tucker bragging on his message board that I was going to do an article on him, the word got out last week that this column was in the works. What resulted were several e- mails from concerned parties begging me to reconsider lending legitimacy to the sort of guy who would foster a site such as www.tardblog.com as a side project.

The content is even worse than the name: a compilation of stories written by a special education teacher and produced online by Mr. Max poking fun at the day-to-day experiences of developmentally disabled students.

Tucker's defense is that the teacher is just blowing off work-related steam - choosing to laugh at the foibles rather than cry at the stress her job entails. And if the results are amusing, why not share them with the masses?

I'm not convinced, but if you think stuff like that is funny, that's your hang-up.

So why did I decide to write about him? It's not to further his cause - he doesn't need me for that. He already has hordes of people hooked on the essence of Tuckerism, and he's willing to do whatever stupid, tasteless, borderline illegal thing it takes to make himself famous.

**Sponsor**

**4SaleBuy Classified**
Tampa Ba
Estate, Ca
Boats Sav
Money, Bu
http://www.4s

**Tampa Ne Home Sea**
iNest's gui
new home
home buil
buyer reba
program.
www.iNest.cor

**Valrico Fl Estate**
Find your
Home in F
All USA R
keep it sim
www.ailusares

**Tampa Pl Personals**
Join Tamp
Network fr
browse the
of ads-Affi
TampaDatingN

Or infamous, as the case may be.

I wrote about him because I wanted you to hear it here first: If he has his way, his name will be all over the place.

You will wonder what all the fuss is about.

And having met Tucker Max, I can tell you it's much ado about nothing.

*Jill M. Revelle, who hopes to meet some REALLY famous people someday, can be reached at (813) 885-6852.*

---

**Subscribe to the Tribune and get two weeks free**
**Place a Classified Ad Online**
**Subscribe to TBO.com Insider - Bucs Edition**

▶ Return to Top

Breaking News | Nation/World | Metro | Sports | Business | Baylife
Friday Extra | Classified | Recent Editions | Archive | Home

*TBO.com IS Tampa Bay Online*
© 2003, Media General Inc. All rights reserved
Member agreement and privacy statement

**TBO.com | THE TAMPA TRIBUNE | WFLA.com**
**HERNANDO TODAY | HIGHLANDS TODAY | WEATHERCENTER | FLORIDAINFO**



**Rent DVDs Online**
*Click to try Netflix for FREE*

Home | News | Sports | Business | Entertainment | Classifieds

Columnists | Autos | Homes | Careers | Lifestyles | Ebert | Search

mobile | email edition | printer friendly | email article

## NEWS ARCHIVE

**News**
Today's news
Archive
Census
Commentary
Editorials
Education
Elections
Lottery
Obituaries
Politics
Religion
Special sections
Weather
Weather cam
War on Terror
War in Iraq

**Columnists**
Andrade
Brown
Falsani
Greeley
Higgins
Jackson
Kupcinet
Laney
Martire
Mitchell
Neal
Novak
Ontiveros
O'Rourke
O'Sullivan
Pickett
Quick Takes
Richards
Roeper
Roeser
Sneed
Steinberg
Steyn
Sweet
Washington
Will
Wiser
Other Views



# 'Ladies man' kisses, tells on Web; beauty queen sues

*May 7, 2003*

**BY ART GOLAB Staff Reporter**

A former Miss Vermont is suing a Chicago Web site operator for kissing and telling.

Katy Johnson, 24, a two-time Miss Vermont, claims Tucker Max wrote in detail about their romantic relationship on his Internet site. In a lawsuit filed in Florida on Monday, Johnson alleges that Max, 27, is commercially exploiting her name and image for profit by revealing "embarrassing private facts" about their relationship.



The suit asks that Max's "The Miss Vermont Story" be taken off his Web site.

The site tells how he and Johnson supposedly had sex on their first date in the back seat of her Ford Explorer; how she got drunk at a wedding reception; how she wrote a Dear John note to him on the back of a bullet-tattered gun range target.

"You cannot use someone's name and likeness in the state of Florida for a commercial purpose without their consent," said Johnson's attorney, Michael Santucci.

Max, a graduate of the University of Chicago and Duke University Law School, regularly posts stories of his drunken revelry on his Web site, many of them describing the girls he has picked up and dated over the last few years.

Max also uses the site to promote his book, *The Definitive Book of Pickup Lines,* T-shirts and other items.

On his "Tucker Max Date Application" Web page, he lists as his life goals: "To be a celebrity that gets paid to get drunk, act like an a------, and get drunk some more." Max's online date application and other exploits drew the attention of MTV, which featured him in a segment of its "Sex2K" special.

Johnson, who lives in Delray Beach, Fla., but went to college in Vermont, operates her own Web site featuring cartoon characters preaching sexual abstinence to children. One of the characters advises, "Stay away from boys who treat you like toys."

Her Web site also promotes a book aimed at young women competing in beauty pageants: *True Beauty: A Sunny Face Means a Happy Heart,* and sells T-shirts on her site with pageant themes.

Johnson was Miss Vermont USA 2001 and Miss Vermont America 1999.

"The case is farcical," said Max, reached in Austin, Texas, where he moved earlier this week to take a job in a bar.

"She has absolutely no case, and when the facts get before the judge, the judge will see this."

Until recently Max lived in the Halsted-Armitage area and is a veteran of the bar scene there.

Max wrote his pickup-lines book while a law student at Duke. He graduated but gave up law after he was fired from a $2,400-a-week internship at a California law firm for drunken behavior at a company charity auction. An e-mail he circulated about the incident became infamous among law students and Max began compiling other stories on the Web.

Contributing: *AP*





News | Sports | Business | Entertainment | Lifestyles | Classifieds

Visit our online partners:

Daily Southtown     Pioneer Press     Suburban Chicago Newspapers     Post-Tribune
Star Newspapers     Jerusalem Post     Daily Telegraph

Copyright 2003. Digital Chicago Inc.

**Sun-Sentinel** ● **.com**

HOME ¦ NEWS ¦ SPORTS ¦ ENTERTAINMENT ¦ CLASSIFIED ¦ BUS

SOUTH FLORIDA'S LATEST NEWS
▸ Jobs ▸ Cars ▸ Homes ▸ Shopping ▸ Home Delivery  SEARCH

**LOCAL NEWS**
**INSIDE NEWS**
Nation/World
South Florida
Cuba
State legislature
Obituaries
Traffic
Lottery results
Education
Columnists
Photo/video galleries
Consumer news
Condo Law
News quiz
News by e-mail

**COMMUNITY INFO**
Property Records
Immigration
Multicultural Directory
Next Generation

**CHANNELS**

**CLASSIFIED**
Careers
Homes
Apartments
Cars
Personals
Place an ad

**NEWS**
South Florida
Nation/World
Cuba
Columns
Education
Lotto
Obituaries

**WEATHER**
Hurricane
Web cam

**SPORTS**
Dolphins
Marlins
Heat
Panthers
High school
College
Golf
Outdoors

**BUSINESS**
Local stocks

**ENTERTAINMENT**
Movies
Restaurants
Festivals
Music
TV
Stage
Attractions
Nightlife
Contests

**SHOPPING**

## Palm Beach County news briefs

Posted May 7 2003

Boca Raton

### Burn scheduled today


ADVERTISEMENT
let opportunity find you.
careerbuilder.com
The smarter way to find a better job.
ADVERTISEMENT

in Yamato Scrub area

Fire Rescue will help the county Department of Environmental Resource Management conduct a controlled burn in the Yamato Scrub natural area today.

It will begin about 11 a.m. and last until sunset.

The area of the burn is east of Congress Avenue, south of Clint Moore Road and west of Interstate 95. Anyone who is sensitive to smoke or has breathing problems should avoid the area or stay indoors, officials said.

Lantana

### Mailbox bomb explodes;

### woman uninjured

A resident west of Lantana found an acid bomb in her mailbox Monday but wasn't injured.

The woman, 60, told sheriff's deputies that she went out to check her mailbox on Monday morning and noticed a 12-ounce water bottle inside.

When she grabbed the bottle to throw it away, it exploded and formed a black cloud of smoke, according to police reports.

County firefighters and members of the sheriff's bomb squad responded to the area of Boyd Lane and confirmed the item was an acid bomb.

☑ Email st
🖷 Print sto

**MORE H**

Palm Beach
$52.8 millic

Proposed b
Palm Beach

Tennis cent
renovated i

Residents a
addition at

Seniors to
funded hea

Shopping Guide
Advertisers
Newspaper ads
Furniture Row

**EDITORIALS/LETTERS**
Chan Lowe cartoons

**THE EDGE**
Multimedia games and
graphics.

**HEALTH**

**TRAVEL**

**FEATURES/LIFESTYLE**
Food
Home & Garden
Books

**COMMUNITY**
Calendar

**TRAFFIC**
Broward/Dade
Palm Beach
Maps
Directions

**CORRECTIONS**

**OTHER SERVICES**
Archives
Customer service
News by e-mail

Deputies are investigating.

West Boynton

**Vehicle burglaries**

**under investigation**

Sheriff's deputies are investigating a series of vehicle burglaries over the weekend at two subdivisions west of Boynton Beach.

At least five vehicles were broken into in the Tartan Lakes subdivision off Military Trail south of Gateway Boulevard, according to police reports.

Thieves also targeted three vehicles and a boat inside the Colors at Rainbow Lakes subdivision off Gateway Boulevard east of Jog Road.

All the vehicles were unlocked, according to reports.

Delray Beach

**Site barred from using**

**Miss Vermont likeness**

An attorney for a Delray Beach woman who was Miss Vermont said he secured an injunction Tuesday that prohibits a Chicago man from using her name or likeness on his Web site.

Katy Johnson, Miss Vermont 1999 and Miss Vermont USA 2001, filed the lawsuit Monday against Tucker Max, alleging Max was invading her privacy by using her likeness and writing about her. Her attorney, Michael Santucci, said that he obtained an injunction from Palm Beach County Circuit Judge Diana Lewis and that Tucker now is prohibited from using Johnson's name or photographs on his Web site.

Santucci said Johnson denied the story Max has written about her on his Web site.

**I-95 update**

The Florida Department of Transportation reports the following on Interstate 95:

Two lanes of I-95 in each direction will be closed from 9 p.m. until 6 a.m. from just south of Linton Boulevard to just north of Atlantic Avenue.

Linton Boulevard from Congress Avenue to the interchange, the I-95 southbound on- and off-ramps, the I-95 northbound on-ramp and the I-95 northbound off-ramp to westbound Linton Boulevard will be closed through the end of May.

Sun-Sentinel: Palm Beach County news

The ramp from westbound Atlantic Avenue to southbound I-95 remains closed.

Single-lane closures may be in effect on Lake Ida Road, Atlantic Avenue and El Rio Road between 7 a.m. and 7 p.m.

One lane of I-95 will be closed in each direction from just north of Atlantic Avenue to just north of Gateway Boulevard from 8 p.m. until 6 a.m.

Two lanes of I-95 will be closed in each direction from just north of Gateway Boulevard to just south of Sixth Avenue South from 8 p.m. until 6 a.m.

The I-95 southbound ramp to Southern Boulevard remains closed through July.

Two lanes of I-95 southbound will be closed from PGA Boulevard north to the county line from 7 p.m. until 6 a.m.

Call 561-802-4409 weekdays during business hours for more information.

*Copyright © 2003, South Florida Sun-Sentinel*

**Sun-Sentinel.com**   Questions or comments? | Paid archives | Start a newspaper subscription | How to advertise | Privac
Copyright 2003, Sun-Sentinel Co. & South Florida Interactive, Inc.





**Rent DVDs Online**
*Click to try Netflix for FREE*

Home | News | Sports | Business | Entertainment | Classifieds

Columnists | Autos | Homes | Careers | Lifestyles | Ebert | Search

mobile | email edition | printer friendly | email article

**News**
Today's news
Archive
Census
Commentary
Editorials
Education
Elections
Lottery
Obituaries
Politics
Religion
Special sections
Weather
Weather cam
War on Terror
War in Iraq

**Columnists**
Andrade
Brown
Falsani
Greeley
Higgins
Jackson
Kupcinet
Laney
Martire
Mitchell
Neal
Novak
Ontiveros
O'Rourke
O'Sullivan
Pickett
Quick Takes
Richards
Roeper
Roeser
Sneed
Steinberg
Steyn
Sweet
Washington
Will
Wiser
Other Views



## NEWS ARCHIVE

# Judge orders beauty queen story off Web site

*May 8, 2003*

**BY ART GOLAB Staff Reporter**

A Florida judge has ordered a self-proclaimed expert on picking up women to stop spilling details of his relationship with a former Miss Vermont on his Web site.

The judge issued a temporary injunction against former Chicagoan Tucker Max, in response to a suit filed by two-time Miss Vermont Katy Johnson, which alleged Max was exploiting her name for commercial gain.



WHERE THE WORLD'S LEADING AIRLINES BRING YOU THE MOST LOW FARES





Max maintains a Web site where he posts tales of his drunken adventures and supposed sexual exploits. One of them, "The Miss Vermont Story," purports to describe having sex with Johnson on their first date. He also uses the site to promote a book he wrote on pickup lines, as well as other merchandise.

The injunction orders Max to remove all references to Johnson from his site, and from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual act engaged in by the plaintiff." It also requires Max to post a $10,000 bond to cover Johnson's potential damages.

"I can't really comment on the specifics of the case until I've had a chance to review it," said Max, who now lives in Austin, Texas. Meanwhile, the "Miss Vermont" story remained up on his site by Wednesday night.

Johnson's attorney, Michael Santucci, described the ruling as a victory that

"should send a clear message to all parasitic smut peddlers who live off the good name of others." He also stated that Johnson, who promotes sexual abstinence to young beauty pageant contestants on her own Web site, "emphatically denies" the story on Max's site.

First Amendment expert and University of Minnesota law professor Jane Kirtley said such injunctions are unusual in pure free speech cases, but the fact that Max conducts some business on his site clouds the issue.



News | Sports | Business | Entertainment | Lifestyles | Classifieds

Visit our online partners:

Daily Southtown    Pioneer Press    Suburban Chicago Newspapers    Post-Tribune
Star Newspapers    Jerusalem Post    Daily Telegraph

Copyright 2003. Digital Chicago Inc.



# NEWS
## PalmBeachPost.com



Local Garage Sales                         Guide to Apartment Rentals

Jobs | Shopping | Autos | Classifieds | Travel | Subscribe | Past 7 Days | Archives | Contact Us



---

**Win a Disney Getaway**
Enter for a trip for four to Orlando

⌕✉ EMAIL THIS PAGE    ⌕🖨 PRINT THIS PAGE    ⌕☆ MOST POPULAR PAGES
SUBSCRIBE TO PALM BEACH POST

**Tuesday, May 13**

NEW ONLINE
MarketBrowser
Crime & Live
Scanners
Summer Camp Guide
Crosswords & Comics
Home Design Center
Receive E-mail Alerts
TODAY'S PAPER
Front Page (PDF)
Main News
• Politics
Local News
Business
Sports
Opinion/Letters
Accent
Columnists
Obituaries
Movie Listings
Classifieds
• Personals
• Autos
• Homes
• Jobs
Photography
The Day in Photos
Don Wright Cartoon
Quick Headlines

WEEKLY
A&E
Entertainment
Food & Dining
Good Life
Neighborhood Post
Notables
TGIF
Travel
Real Estate Wknd
• Locator Directory

SERVICES

NIE







# Ex-Miss America entrant sues

*By Bill Douthat, Palm Beach Post Staff Writer*
Tuesday, May 6, 2003

A former Miss America contestant who promoted sexual abstinence as a Delray Beach teenager is suing over a Web site that portrays her as promiscuous.

Katy Johnson, 24, is asking a judge to ban the "The Miss Vermont Story" that tells of alleged sexual exploits between her and Tucker Max of Chicago.

Max, 27, a Duke University law school graduate who published *The Definite Book of Pick-up Lines*, describes his alleged liaisons with Johnson and other women on his Web site. He's using his stories about Johnson and others to promote his dating service on television and in books, the lawsuit said.

"He's pawning off Katy's good name to make a profit for himself," said her attorney, Michael Santucci of Fort Lauderdale. Santucci filed the lawsuit Monday in Palm Beach County Circuit Court and requested the case be sealed from public view. A judge has not yet ruled on the request.

Johnson, who grew up in Delray Beach, was out of state and not available for comment, he said.

The lawsuit says Max's Web site carries a photo of Johnson and posts a link to her own "Pageant City" Web site that offers advice, manuals and merchandise for teens wanting to enter beauty contests.

One of her tips: Stay away from boys who treat you like toys.

• KidsPost
Place a Classified
Search Archives
Subscribe
Advertise
Announcements
2003 Internships
Purchase a Photo
Conduct Research
Plan Your Vacation
Events Calendar
Contests & Games
Page Reproductions
Order Shady Palms

SEARCH FOR NEWS
Enter Keyword:
[Go!]

The
Click
Rates

Johnson competed in the 1999 Miss America Pageant as Miss Vermont since she was a college senior in that state.

When she was 16, Johnson and a friend started a Say Nay Today pledge card distributed to church and youth groups. The card promised that a teen would abstain from sexual involvement until marriage.

On his Web site, Max claimed he met Johnson at The Athletic Club in Boca Raton in 2001 and invited her to dinner at Max's Grille, which he said was owned by his family.

Santucci declined to discuss Johnson's relationship with Max. The lawsuit says she suffered a "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille.

The lawsuit claims the Web site story posted by Max is an illegal use of her name and photo and invasion of privacy.

bill_douthat@pbpost.com

Copyright © 2003, The Palm Beach Post. All rights reserved.
By using PalmBeachPost.com, you accept the terms of our visitor agreement. Please read it.
**Contact PalmBeachPost.com | Advertise with The Post**



LEGAL

FEATURES

PROFILES

SOFTWARE

BOOKS

SITEGEIST

WHAT'S ON
MY HARD DRIVE

WEBMASTER
NEWSLETTER

TOP WEBMASTER
LINKS

CHATROOM

LINKS

PRESS RELEASES

MAG ARCHIVES

## Pickup "Expert" Told To Yank Beauty Queen Story From Site
>> *Charles Farrar*

**CHICAGO** - A former Chicago resident who touts himself an expert on picking up women has been ordered to pull stories of his exploits, real or alleged, with a former Miss Vermont from his Website by a Florida judge.

The temporary injunction against Tucker Max should send a clear message to all parasitic smut peddlers who live off the good name of others," said Michael Santucci, attorney for Katy Johnson, to the *Chicago Sun-Times*.

Max's Website is described as featuring stories of his "drunken adventures and supposed exploits," including a story in which he claims to have had sex with Johnson on their first date. Johnson, through her attorney, has denied the story.

Max told the *Sun-Times* only that he couldn't "really comment on the specifics of the case until I've had a chance to review it." Now living in Texas, Max was also ordered to post a $10,000 bond to cover Johnson's potential damages, the paper said.



### Broadband Pay-Per-View Updated Daily

Surfers get FREE hardcore previews and FREE rentals each month for life.

Since 1996, Dreamzotic offers Webmasters highest per-per-view payouts ...

Join us TODAY>>

### Don't Leave Your Content Unprotected

Securely distribute your videos over the Net - even over peer-to-peer networks. Your content is unlocked to paying customers ONLY...

Protect your content >>

::AVN Online::



SEARCH:

All Departments

**ALL ISSUES**

Trouble Navigating?
Click Here

FREE SUBSCRIPTION



Contact | Privacy Policy | Copyright | Site Map
©1999-2002, Teddy Communications Inc. All rights reserved.

::AVN Online::

This is G o o g l e's cache of http://www.msnbc.com/news/911554.asp.
G o o g l e's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
To link to or bookmark this page, use the following url: http://www.google.com/search?
q=cache:0LeXMi79PBYJ:www.msnbc.com/news/911554.asp+%22tucker+max%22+vermont&hl=en&ie=UTF-8

*Google is not affiliated with the authors of this page nor responsible for its content.*

These search terms have been highlighted: **tucker max vermont**



MSN Home  |  My MSN  |  Hotmail  |  Search  |  Shopping  |  Money  |  People & Chat

**MSNBC News**

**Newsweek**

▸ Home Page  ▸ Cover Story  ▸ Archives  ▸ Feedback  ▸ Index

**Periscope**

News
Business
Sports
Tech · Science
Living
Travel
Health
TV News
Opinions
Weather · Local
Shop@MSNBC
MSN.com

QwestDex
Find a Local Business

# E-mail: Before Clicking 'Send'...

**Some 45 states now have laws against cyberstalking**

NEWSWEEK

May 19 issue — If you flame, you might get burned. Angry about his wife's affair, Profirios Liapis sent 17 menacing e-mails to the other man, Plato Tzouzalis. Tzouzalis, a 38-year-old biochemist, says he was afraid to look at his computer screen. "I was terrorized," he says. "I would think, 'What kind of e-mail will I get today?'"

● E-MAIL THIS                    ● COMPLETE STORY

ADVERTISING ON MSNBC

**RESOURCE GUIDE**
● Get Life Insurance
● eDiets Diet Center

Newswe
● The Co
  Game
● Conven
● Money:

• Yellow Pages
• Loan Center
• expedia.com
• Shopping

**SPONSORS**

• Justice:
  Program

**Newswe**

• Journal:
  Seeks I
• Q&A: S
  Iraq, Isr
• Q&A: C
  Making
• Iraq: Tr
  Down in





AN ILLINOIS COURT found Liapis guilty of e-mail harassment last month, the first conviction under the state's anti-cyberstalking law. Liapis, a 42-year-old waiter, faces up to three years behind bars. He plans to appeal the verdict. Some 45 states now have laws against cyberstalking. Several forbid direct threats, but the Arizona statute requires only that a victim be "seriously alarmed" or "annoyed." Last week, in a civil action aimed at Internet messages, a Florida judge ordered **Tucker Max** to stop posting details of his relationship with Katy Johnson, a former Miss **Vermont**. Johnson had sued, claiming Max was revealing "embarrassing private facts."

There was plenty of embarrassment in the Illinois case as well. Tzouzalis says the affair happened some 14 years ago when Liapis and his wife were separated. When Liapis finally learned of it two years ago, he became angry and—in his e-mail messages—threatened to expose Tzouzalis, who had subsequently married, for having an ongoing affair. Liapis's lawyer contends his client was not threatening Tzouzalis but was simply trying to stop him from destroying another marriage. "The gist of his messages was 'Don't ruin other people's lives. I'm going to expose you'." But jurors decided that not all is fair in love and war.

—*Dirk Johnson and Hilary Shenfeld*

# Periscope

— **NEXT** The Man of Virtues Has a Vice

**1 of 11**

1. The Man of Virtues Has a Vice
2. Conventional Wisdom
3. Al Qaeda: Getting Warmer

4. Military: The Attacker's Defense

5. Ratings: Not Mother's Day

6. Food: Pizza Problems

7. Science: Fountain Of Youth

8. Books: How Sweet It Is to Be Loved by You

9. Yoga: Tantric Tunes

10. Baseball: A New Jersey

11. Concerts: A Blueprint for Busts

*© 2003 Newsweek, Inc.*

Periscope | National News | World News | Business & Money | Tech & Science
Health & Lifestyle | Entertainment | Opinion | Tip Sheet | Feedback
Archives| International Editions| Subscriber Services | About Newsweek

MSNBC READER'S TOP 10

Would you recommend this story to other readers?

not at all   **1** - **2** - **3** - **4** - **5** - **6** - **7**   highly

ɕ BACK TO TOP ↥

 NBC.com        Get MSN 8        MSNBC is optimized for        • MSNBC Terms,
                   2 Months FREE!    • Microsoft Internet Explorer    Conditions and
                                     • Windows Media Player            Privacy © 2003

Cover | News | Business | Sports | Local News | Health | Technology & Science | Living | Travel
TV News | Opinions | Weather | Comics

InfoCenter | Newsletters | Search | Help | News Tools | Jobs | Write Us | Terms & Conditions | Privacy

**MSN - More Useful Everyday**

**MSN Home   |   My MSN   |   Hotmail   |   Search   |   Shopping   |   Money   |   People & Chat**

© 2003 Microsoft Corporation. All rights reserved. Terms of Use  Advertise  TRUSTe Approved Privacy Statement  GetNetWise

MSN Home   |   My MSN   |   Hotmail   |   Search   |   Shopping   |   Money   |   People & Chat



**msn**

**MAKE YOUR VOICE HEARD**

**Newsweek**

MSNBC News



**Newsweek**

▶ Home Page   ▶ Cover Story   ▶ Archives   ▶ Feedback   ▶ Index

**Periscope**

News
Business
Sports
Tech • Science
Living
Travel
Health
TV News
Opinions
Weather • Local
Shop@MSNBC
MSN.com

QwestDex
online yellow pages
Find a Local Business

# E-mail: Before Clicking 'Send'...

### Some 45 states now have laws against cyberstalking

NEWSWEEK

May 19 issue — If you flame, you might get burned. Angry about his wife's affair, Profirios Liapis sent 17 menacing e-mails to the other man, Plato Tzouzalis. Tzouzalis, a 38-year-old biochemist, says he was afraid to look at his computer screen. "I was terrorized," he says. "I would think, 'What kind of e-mail will I get today?'"

● E-MAIL THIS ✉         ● COMPLETE STORY ⮑

**ADVERTISING ON MSNBC**

**RESOURCE GUIDE**

- Get Life Insurance
- eDiets Diet Center
- Yellow Pages
- Get A Loan
- expedia.com
- Shopping

Look on 2nd page....→

**SPONSORS**

fund
best
for

Nev

Advertise

Newswe
- The Co
  Game
- Conven
- Money:

4. Clinton: Want Me Back?

5. Missiles: Return to Sender

6. Prince William: The Not-So-Juicy Story

7. History: The Other Bus Boycott

8. Ireland: Into the Drink

9. Television: Down to The Wire

10. Fast Chat: A Life in the Closet

11. Books: Donald Rumsfeld's Poetic License

*© 2003 Newsweek, Inc.*

Periscope | National News | World News | Business & Money | Tech & Science
Health & Lifestyle | Entertainment | Opinion | Tip Sheet | Feedback
Archives| International Editions| Subscriber Services | About Newsweek

**MSNBC READERS' TOP 10**

Would you recommend this story to other readers?

not at all   **1   -   2   -   3   -   4   -   5   -   6   -   7**   highly

**© BACK TO TOP**

 

MSNBC is optimized for
• Microsoft Internet Explorer
• Windows Media Player

• **MSNBC Terms,
Conditions and
Privacy © 2003**

Cover | News | Business | Sports | Local News | Health | Technology & Science | Living | Travel
TV News | Opinions | Weather | Comics

InfoCenter | Newsletters | Search | Help | News Tools | Jobs | Write Us | Terms & Conditions | Privacy

**MSN - More Useful Everyday**

**MSN Home   |   My MSN   |   Hotmail   |   Search   |   Shopping   |   Money   |   People & Chat**

©2003 Microsoft Corporation. All rights reserved. Terms of Use  Advertise  Truste Approved Privacy Statement  GetNetWise

/011554.asp

The Times Argus Online || Former Miss Vermont wins suit







**THE BARRE** **MONTPELIER**

# TIMES ARGUS

ESTABLISHED 1897

Monday, June 2, 2003

**SEARCH**
Search the site

**NEWS**
Top Stories
Central Vermont
State/Regional
Sports
High School Sports
Obituaries
Business
Weather
Calendar

**FEATURES**
Weddings
Photo Gallery
Talk of the Town
Sunday Magazine
The Teeds
Local Columnists
Arts
Reviews
Outdoors
Crossword

**OPINION**
Editorial
Letters
Submit a Letter

**CLASSIFIEDS**
All Classifieds
Jobs
Auto
Real Estate Rentals
Real Estate for Sale
Current Advertisers
Personals

**THE WIRE**
Top Stories
National
World
National Business
National Sports

**SERVICES**
Contact Us
Subscribe
Purchase a Photo
About Us

## Former Miss Vermont wins suit

June 2, 2003

'Smut peddler' can't post info about beauty queen on Web site

By Adam Liptak

NEW YORK TIMES

The beauty queen and the cad both have Web sites.

Katy Johnson, who was Miss Vermont in 1999 and again in 2001, uses her site to promote what she calls her "platform of character education."

"She is founder of Say Nay Today and the Sobriety Society," the site says, "and her article 'ABC's of Abstinence' was featured in Teen magazine."

Tucker Max's site promotes something like the opposite of character education. It contains a form through which women can apply for a date with him, pictures of his former girlfriends and reports on what Mr. Max calls his "belligerence and debauchery."

Until a Florida judge issued an unusual order last month, Max's site also contained a long account of his relationship with Johnson, whom he portrayed, according to court papers, as vapid, promiscuous and an unlikely candidate for membership in the Sobriety Society.

The order, entered by Judge Diana Lewis of Circuit Court in West Palm Beach, forbids Max to write about Johnson. It has alarmed experts in First Amendment law, who say that such orders prohibiting future publication, prior restraints, are essentially unknown in American law. Moreover, they say, claims like Johnson's, for invasion of privacy, have almost never been considered enough to justify prior restraints.

Johnson's lawsuit also highlights some shifting legal distinctions in the

Internet era, between private matters and public ones and between speech and property.

Judge Lewis ruled on May 6, before Max was notified of the suit and without holding a hearing. She told Max that he could not use "Katy" on his site. Nor could he use Johnson's last name, full name or the words "Miss Vermont."

The judge also prohibited Max from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual acts engaged in by" Johnson. That prohibition is not limited to his Web site.

Finally, Judge Lewis ordered Max to sever the virtual remains of his relationship with Johnson. He is no longer allowed to link to her Web site.

The page of Max's site that used to contain his rambling memoir now has only a reference to the court order.

Advertisement

Johnson did not respond to telephone and e-mail messages seeking comment. In her lawsuit, Johnson maintained that Max had invaded her privacy by publishing accurate information about her and had used her name and picture for commercial purposes.

Her lawyer, Michael I. Santucci of Fort Lauderdale, declined to be interviewed. He has asked Judge Lewis to seal the court file in the case, a request on which she has not yet ruled, and to prohibit Max from talking about the suit, a request she has rejected. Santucci did provide a copy of a news release he issued after the order was issued.

"This victory should send a clear message to all parasitic smut peddlers who live off the good names of others," he said in the release, which also noted that Johnson "emphatically denies the story contained on Tucker Max's Web site."

Mr. Santucci did not respond to an e-mail message asking whether his issuing a news release was at odds with his request to seal the court file on privacy grounds.

John C. Carey, a lawyer at Stroock & Stroock & Lavan in Miami, recently agreed to represent Max. Carey said he would soon ask Judge Lewis to withdraw her order and dismiss the case.

"Katy Johnson holds herself out publicly, for her own commercial gain, as a champion of abstinence and a woman of virtue," Carey said. "The public has a legitimate interest in knowing whether or not her own behavior is consistent with the virtuous image that she publicly seeks to promote."

Through his lawyer and his publicity agent, Max declined to be

interviewed.

Johnson's site is www.katyjohnson .com. Max's is www.tuckermax.com.

Both Johnson and Max sell T-shirts and the books they have written on their sites. Johnson's book is "True Beauty: A Sunny Face Means a Happy Heart." Max's is "The Definitive Book of Pick-Up Lines."

That the sites are also used to make money should make no difference in whether Max may be forbidden to write about Johnson, said Gregg D. Thomas, an expert in First Amendment law at Holland & Knight in Tampa, Fla.

"This is clearly a suppression of free speech," Thomas said of Judge Lewis's order.

Prior restraints based on invasion of privacy are unusual. "It has happened perishingly rarely," said Diane L. Zimmerman, a law professor at New York University and an expert in First Amendment and privacy law. "When it has happened it has generated enormous controversy."

Professor Zimmerman noted the example of "Titicut Follies," a documentary about patients in a mental hospital that was banned on privacy grounds in 1969 by Massachusetts's highest court. A judge lifted the ban in 1991.

The prohibition on linking to Johnson s site is "kooky," said Susan P. Crawford, who teaches Internet law at Cardozo School of Law at Yeshiva University.

"To block the ability to link," Professor Crawford said, "is in effect to say her site is her own private property."

While a prior restraint may not be warranted, legal experts said, Johnson's invasion-of-privacy claim, so long as it seeks only money, may be justified.

But that, too, raises difficult issues, Professor Zimmerman said. "If you're telling people they can't talk about something like this," she said of Max's memoir, "you're also telling them they can't talk about their own lives."

**Back**





Case 9:03-cv-80515-DTKFP Document 1 Entered on FLSD Docket 06/09/2003 Page 104 of 148



Contact Us

Copyright © 2003 Rutland Herald and Barre-Montpelier Times Argus

Copyright 2003 The New York Times Company
The New York Times

June 2, 2003, Monday, Late Edition - Final

SECTION: Section A; Page 13; Column 1; National Desk

LENGTH: 939 words

HEADLINE: Internet Battle Raises Questions About Privacy and the First Amendment

BYLINE: By ADAM LIPTAK

BODY:

The beauty queen and the cad both have Web sites.

Katy Johnson, who was Miss Vermont in 1999 and again in 2001, uses her site to promote what she calls her "platform of character education."

"She is founder of Say Nay Today and the Sobriety Society," the site says, "and her article 'ABC's of Abstinence' was featured in Teen magazine."

Tucker Max's site promotes something like the opposite of character education. It contains a form through which women can apply for a date with him, pictures of his former girlfriends and reports on what Mr. Max calls his "belligerence and debauchery."

Until a Florida judge issued an unusual order last month, Mr. Max's site also contained a long account of his relationship with Ms. Johnson, whom he portrayed, according to court papers, as vapid, promiscuous and an unlikely candidate for membership in the Sobriety Society.

The order, entered by Judge Diana Lewis of Circuit Court in West Palm Beach, forbids Mr. Max to write about Ms. Johnson. It has alarmed experts in First Amendment law, who say that such orders prohibiting future publication, prior restraints, are essentially unknown in American law. Moreover, they say, claims like Ms. Johnson's, for invasion of privacy, have almost never been considered enough to justify prior restraints.

Ms. Johnson's lawsuit also highlights some shifting legal distinctions in the Internet era, between private matters and public ones and between speech and property.

Judge Lewis ruled on May 6, before Mr. Max was notified of the suit and without holding a hearing. She told Mr. Max that he could not use "Katy" on his site. Nor could he use Ms. Johnson's last name, full name or the words "Miss Vermont."

The judge also prohibited Mr. Max from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual acts engaged in by" Ms. Johnson. That prohibition is not limited to his Web site. Finally, Judge Lewis ordered Mr. Max to sever the virtual remains of his relationship with Ms. Johnson. He is no longer allowed to link to her Web site.

The page of Mr. Max's site that used to contain his rambling memoir now has only a reference to the court order.

Ms. Johnson did not respond to telephone and e-mail messages seeking comment. In her lawsuit, Ms. Johnson maintained that Mr. Max had invaded her privacy by publishing accurate information about her and had used her name and picture for commercial purposes.

The New York Times, June 2, 2003

Her lawyer, Michael I. Santucci of Fort Lauderdale, declined to be interviewed. He has asked Judge Lewis to seal the court file in the case, a request on which she has not yet ruled, and to prohibit Mr. Max from talking about the suit, a request she has rejected.

Mr. Santucci did provide a copy of a news release he issued after the order was issued.

"This victory should send a clear message to all parasitic smut peddlers who live off the good names of others," he said in the release, which also noted that Ms. Johnson "emphatically denies the story contained on Tucker Max's Web site."

Mr. Santucci did not respond to an e-mail message asking whether his issuing a news release was at odds with his request to seal the court file on privacy grounds.

John C. Carey, a lawyer at Stroock & Stroock & Lavan in Miami, recently agreed to represent Mr. Max. Mr. Carey said he would soon ask Judge Lewis to withdraw her order and dismiss the case.

"Katy Johnson holds herself out publicly, for her own commercial gain, as a champion of abstinence and a woman of virtue," Mr. Carey said. "The public has a legitimate interest in knowing whether or not her own behavior is consistent with the virtuous image that she publicly seeks to promote."

Through his lawyer and his publicity agent, Mr. Max declined to be interviewed.

Ms. Johnson's site is www.katyjohnson.com. Mr. Max's is www.tuckermax.com. Both Ms. Johnson and Mr. Max sell T-shirts and the books they have written on their sites. Ms. Johnson's book is "True Beauty: A Sunny Face Means a Happy Heart." Mr. Max's is "The Definitive Book of Pick-Up Lines."

That the sites are also used to make money should make no difference in whether Mr. Max may be forbidden to write about Ms. Johnson, said Gregg D. Thomas, an expert in First Amendment law at Holland & Knight in Tampa, Fla.

"This is clearly a suppression of free speech," Mr. Thomas said of Judge Lewis's order

Prior restraints based on invasion of privacy are unusual.

"It has happened perishingly rarely," said Diane L. Zimmerman, a law professor at New York University and an expert in First Amendment and privacy law. "When it has happened it has generated enormous controversy."

Professor Zimmerman noted the example of "Titicut Follies," a documentary about patients in a mental hospital that was banned on privacy grounds in 1969 by Massachusetts's highest court. A judge lifted the ban in 1991.

The prohibition on linking to Ms. Johnson's site is "kooky," said Susan P. Crawford, who teaches Internet law at Cardozo School of Law at Yeshiva University.

"To block the ability to link," Professor Crawford said, "is in effect to say her site is her own private property."

While a prior restraint may not be warranted, legal experts said, Ms. Johnson's invasion-of-privacy claim, so long as it seeks only money, may be justified.

But that, too, raises difficult issues, Professor Zimmerman said.

"If you're telling people they can't talk about something like this," she said of Mr. Max's memoir, "you're also telling them they can't talk about their own lives."

http://www.nytimes.com

GRAPHIC: Photo: Katy Johnson, who says her Web site promotes "character education," has taken legal action against another site.

LOAD-DATE: June 2, 2003

5/19/03 NEWSWEEK 11                                                          Page 1
5/19/03 Newsweek 11
2003 WL 8639024
**(Publication page references are not available for this document.)**

Newsweek
Copyright (C) 2003 Newsweek Inc. All Rights Reserved.

Monday, May 19, 2003

Periscope

Before Clicking 'Send'...
Dirk Johnson and Hilary Shenfeld


If you flame, you might get burned. Angry about his wife's affair,
Profirios Liapis sent 17 menacing e-mails to the other man, Plato
Tzouzalis. Tzouzalis, a 38-year-old biochemist, says he was afraid to
look at his computer screen. "I was terrorized," he says. "I would
think, 'What kind of e-mail will I get today?"' An Illinois court found
Liapis guilty of e-mail harassment last month, the first conviction
under the state's anti-cyberstalking law. Liapis, a 42-year-old waiter,
faces up to three years behind bars. He plans to appeal the verdict.
Some 45 states now have laws against cyberstalking. Several forbid
direct threats, but the Arizona statute requires only that a victim be
"seriously alarmed" or "annoyed." Last week, in a civil action aimed at
Internet messages, a Florida judge ordered Tucker Max to stop posting
details of his relationship with Katy Johnson, a former Miss Vermont.
Johnson had sued, claiming Max was revealing "embarrassing private
facts."


There was plenty of embarrassment in the Illinois case as well.
Tzouzalis says the affair happened some 14 years ago when Liapis and his
wife were separated. When Liapis finally learned of it two years ago, he
became angry and--in his e-mail messages--threatened to expose
Tzouzalis, who had subsequently married, for having an ongoing affair.
Liapis's lawyer contends his client was not threatening Tzouzalis but
was simply trying to stop him from destroying another marriage. "The
gist of his messages was 'Don't ruin other people's lives. I'm going to
expose you'." But jurors decided that not all is fair in love and war.


. Dirk Johnson and Hilary Shenfeld


---- INDEX REFERENCES ----

NEWS SUBJECT:      English language content (ENGL)


REGION:            United States; United States; North American Countries (US USA
NAMZ)


Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/19/03 NEWSWEEK 11
5/19/03 Newsweek 11
2003 WL 8639024
**(Publication page references are not available for this document.)**

Word Count: 265

5/19/03 NEWSWEEK 11

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/15/03 CHISUN 46                                                    Page 1
5/15/03 Chi. Sun-Times 46
2003 WL 9552668
**(Publication page references are not available for this document.)**

Chicago Sun-Times
Copyright The Chicago Sun-Times, Inc.

Thursday, May 15, 2003

Features

PLANET PAIGE

Beware toxic ex-boyfriend and venom he can spew
Paige Wiser

   Be alarmed. More men are kissing and telling--for profit, and for
fun.


   Last week, the Sun-Times' Art Golab reported that a former
Chicagoan had been sued by a Miss Vermont, no less. It seems that
Tucker Max, 27, has a Web site where he dishes on all the ladies
he's loved before. He even posts photos of his ex-girlfriends.


   "I put the page up originally to settle a bet," he writes. "I
kept the page up because it is entertaining and a great vehicle for
personal publicity, something I admittedly crave."


   And yet Miss Vermont objected to the published tales of their
sexcapades, particularly since she preaches abstinence on her own
Web site. Let's see: an unfortunate run-in with Tucker Max, then a
renewed commitment to abstinence. Could the two have been related?


   It's just the latest local outbreak of a nationwide plague.
Tomorrow, the '60s-era romp "Down With Love" opens in movie
theaters. Ewan McGregor plays Catcher Block, a name that sounds
suspiciously like Tucker Max. He is a magazine writer determined to
seduce the feminist character played by Renee Zellweger, to make her
(gasp) fall in love with him, and then (double gasp) to expose her
as a typical, weak-willed woman. That's entertainment, my friends.


   In the publishing world, Rick Marin scored a hit with his memoir,
Cad: Confessions of a Toxic Bachelor. The plot: Kiss, tell, kiss,
tell, kiss, tell. Then he swears he's reformed. In New York, there
were actually women he'd dated who were disappointed they didn't
rate a mention.


   And it may be the beginning of a new men-reveal-all genre. Also

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/15/03 CHISUN 46
5/15/03 Chi. Sun-Times 46
2003 WL 9552668
**(Publication page references are not available for this document.)**

Page 2

out this year: Things My Girlfriend and I Have Argued About, by Mil
Millington.

   On the celebrity front, the psychologically delicate Mariah Carey
is dealing with two blabbermouth exes. Gossips are reporting that
Eminem saved all the long, gushy voicemails she left on her machine,
and is planning to write a rap song around them. He told Rolling
Stone, "I just don't like her as a person. ... She doesn't really
have it all together."

   And singer Luis Miguel is reportedly trying to get publicity for
his new album by telling all about Carey in another magazine. He was
one of the lucky witnesses to her 2001 breakdown.

   Even Jennifer Lopez is feeling the wrath of a man scorned. Her
first husband, Cuban waiter Ojani Noa, agreed to an interview for
the U.K. documentary "Behind the Behind." He went on record to say,
"I still can't understand how a woman could be so loving, caring and
seemingly devoted to our future life together, then turn so cold."

   Then he told producers that she liked to shop a lot.

   How low can men go? Since when is dishing on women their new
favorite sport? Is this their way of showing affection--that they
never quite got over us? Don't they know that if they just ignore
us, we'd like them more?

   None of this is illegal, but it should be. At the least, it's not
very nice. I think we can all agree that searching for your true
love is humiliating enough without the fear that your ex will write
a book about you.

   . If men keep this up, women may have no choice but to retaliate.
If there is no kissing, after all, there's no telling.

   Once upon a time, the Greek women of Troy withheld sex from their
husbands in order to end a war. This was a noble goal. And I'm
guessing there are plenty of people out there who would sacrifice
sex for world peace.

   But let's be realistic. We'd settle for getting men to shut up,
wouldn't we?

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/15/03 CHISUN 46                                                      **Page 3**
5/15/03 Chi. Sun-Times 46
2003 WL 9552668
**(Publication page references are not available for this document.)**

---- INDEX REFERENCES ----

KEY WORDS:          LIFESTYLES


NEWS SUBJECT:       Lifestyle; Lifestyle; English language content;
Political/General News (LIF GLIFE ENGL GCAT)


REGION:             United States; United States; North American Countries (US USA
NAMZ)


Word Count: 608

5/15/03 CHISUN 46

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Copyright 2003 Palm Beach Newspapers, Inc.
Palm Beach Post (Florida)

May 8, 2003 Thursday  FINAL EDITION

SECTION: LOCAL,

Pg. 2B

LENGTH: 211 words

HEADLINE: COURTS

BODY:

WEST PALM BEACH - A judge has ordered a dating service promoter to remove from his Web site any references to his alleged relationship with a Delray Beach woman. Former Miss America contestant Katy Johnson is suing the businessman, Tucker Max of Chicago, for posting a story about his dates with Johnson.

Johnson denies the story, said her attorney, Michael Santucci of Fort Lauderdale. Palm Beach County Judge Diana Lewis on Tuesday ordered Max to remove any stories suggesting any intimate relations with Johnson, a former Miss Vermont.

WEST PALM BEACH - A six-person jury Wednesday began deliberations in a multimillion dollar lawsuit filed by sugar-cane cutters who claim they were cheated out of pay by the Sugar Cane Growers Cooperative of Florida in the late 1980s. Attorneys for the cutters argued in a 12-day trial before Palm Beach Circuit Judge Karen Miller that the Caribbean workers were contracted to work at a rate of $5.30 per ton of harvested cane but were paid much less. The cooperative's attorney claims the contract guaranteed $5.30 per hour, not per ton. The cooperative said the workers understood the pay rate notwithstanding a Department of Labor job offer indicating workers were expected to cut eight tons of cane a day.

NOTES: METRO REPORT

TYPE: BRIEF

LOAD-DATE: May 13, 2003

5/8/03 CHISUN 4                                                                                    Page 1
5/8/03 Chi. Sun-Times 4
2003 WL 9551810
**(Publication page references are not available for this document.)**

Chicago Sun-Times
Copyright The Chicago Sun-Times, Inc.

Thursday, **May 8, 2003**

News

Judge orders beauty queen story off Web site ; Two-time Miss Vermont says her
name exploited
Art Golab

   A Florida judge has ordered a self-proclaimed expert on picking
up women to stop spilling details of his relationship with a former
Miss Vermont on his Web site.

   The judge issued a temporary injunction against former Chicagoan
Tucker Max, in response to a suit filed by two-time Miss Vermont
Katy Johnson, which alleged Max was exploiting her name for
commercial gain.

   Max maintains a Web site where he posts tales of his drunken
adventures and supposed sexual exploits. One of them, "The Miss
Vermont Story," purports to describe having sex with Johnson on
their first date. He also uses the site to promote a book he wrote
on pickup lines, as well as other merchandise.

   The injunction orders Max to remove all references to Johnson
from his site, and from "disclosing any stories, facts or
information, notwithstanding its truth, about any intimate or sexual
act engaged in by the plaintiff." It also requires Max to post a
$10,000 bond to cover Johnson's potential damages.

   "I can't really comment on the specifics of the case until I've
had a chance to review it," said Max, who now lives in Austin,
Texas. Meanwhile, the "Miss Vermont" story remained up on his site
by Wednesday night.

   Johnson's attorney, Michael Santucci, described the ruling as a
victory that "should send a clear message to all parasitic smut
peddlers who live off the good name of others." He also stated that
Johnson, who promotes sexual abstinence to young beauty pageant
contestants on her own Web site, "emphatically denies" the story on
Max's site.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/8/03 CHISUN 4                                                      Page 2
5/8/03 Chi. Sun-Times 4
2003 WL 9551810
**(Publication page references are not available for this document.)**

  First Amendment expert and University of Minnesota law professor
Jane Kirtley said such injunctions are unusual in pure free speech
cases, but the fact that Max conducts some business on his site
clouds the issue.


          ---- INDEX REFERENCES ----


KEY WORDS:          LEGAL


NEWS SUBJECT:     English language content; Corporate/Industrial News; Lawsuits;
General News; Legal/Judicial (ENGL CCAT LWS GEN C12)


REGION:           United States - Vermont; Northeast U.S.; United States; North
American Countries; Vermont; North America; United States (USVT USE USA NAMZ VT
NME US)


Word Count: 293

5/8/03 CHISUN 4

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/7/03 CHISUN 1                                                    Page 1
5/7/03 Chi. Sun-Times 1
2003 WL 9551650
(Publication page references are not available for this document.)

                          Chicago Sun-Times
                Copyright The Chicago Sun-Times, Inc.

                      Wednesday, May 7, 2003

                               News

        Chicago 'ladies man' kisses, tells on Web; beauty queen files suit
                              Art Golab


    A former Miss Vermont is suing a Chicago Web site operator for
kissing and telling.


   Katy Johnson, 24, a two-time Miss Vermont, claims Tucker Max
wrote in detail about their romantic relationship on his Internet
site. In a lawsuit filed in Florida on Monday, Johnson alleges that
Max, 27, is commercially exploiting her name and image for profit by
revealing "embarrassing private facts" about their relationship.


   The suit asks that Max's "The Miss Vermont Story" be taken off
his Web site.


   The site tells how he and Johnson supposedly had sex on their
first date in the back seat of her Ford Explorer; how she got drunk
at a wedding reception; how she wrote a Dear John note to him on the
back of a bullet-tattered gun range target.


   "You cannot use someone's name and likeness in the state of
Florida for a commercial purpose without their consent," said
Johnson's attorney, Michael Santucci.


   Max, a graduate of the University of Chicago and Duke University
Law School, regularly posts stories of his drunken revelry on his
Web site, many of them describing the girls he has picked up and
dated over the last few years.


   Max also uses the site to promote his book, The Definitive Book
of Pickup Lines, T-shirts and other items.


   On his "Tucker Max Date Application" Web page, he lists as his
life goals: "To be a celebrity that gets paid to get drunk, act like
an a------, and get drunk some more." Max's online date application
and other exploits drew the attention of MTV, which featured him in

                  Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/7/03 CHISUN 1
5/7/03 Chi. Sun-Times 1
2003 WL 9551650
**(Publication page references are not available for this document.)**

a segment of its "Sex2K" special.

   Johnson, who lives in Delray Beach, Fla., but went to college in
Vermont, operates her own Web site featuring cartoon characters
preaching sexual abstinence to children. One of the characters
advises, "Stay away from boys who treat you like toys."

   Her Web site also promotes a book aimed at young women competing
in beauty pageants: True Beauty: A Sunny Face Means a Happy Heart,
and sells T-shirts on her site with pageant themes.

   Johnson was Miss Vermont USA 2001 and Miss Vermont America 1999.

   "The case is farcical," said Max, reached in Austin, Texas, where
he moved earlier this week to take a job in a bar.

   "She has absolutely no case, and when the facts get before the
judge, the judge will see this."

   Until recently Max lived in the Halsted-Armitage area and is a
veteran of the bar scene there.

   Max wrote his pickup-lines book while a law student at Duke. He
graduated but gave up law after he was fired from a $2,400-a-week
internship at a California law firm for drunken behavior at a
company charity auction. An e-mail he circulated about the incident
became infamous among law students, and Max began compiling other
stories on the Web.

   Contributing: AP


 TABULAR OR GRAPHIC MATERIAL SET FORTH IN THIS DOCUMENT IS NOT DISPLAYABLE


 Katy Johnson, 24, says a U. of C. grad is exploiting her image by revealing
details of their relationship.

                    ---- INDEX REFERENCES ----

 NAMED PERSON:      JOHNSON, KATY; MAX, TUCKER

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5/7/03 CHISUN 1                                                          Page 3
5/7/03 Chi. Sun-Times 1
2003 WL 9551650
**(Publication page references are not available for this document.)**

KEY WORDS:            LEGAL


NEWS SUBJECT:        English language content; Page-One Story; Content Types;
Front-Page Stories (ENGL NPAG NCAT PAG)


REGION:              United States - Illinois; Midwest U.S.; United States; North
American Countries; Illinois; North America; United States; United States -
Florida; Florida; Southern U.S. (USIL USC USA NAMZ IL NME US USFL FL USS)


Word Count: 471

5/7/03 CHISUN 1

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Copyright 2003 The Miami Herald

All Rights Reserved
The Miami Herald

May 7, 2003 Wednesday FL EDITION

SECTION: B; Pg. 3

LENGTH: 271 words

HEADLINE: Former Miss Vermont sues over website with her likeness

DATELINE: WEST PALM BEACH

BODY:

(AP) -- A two-time former Miss Vermont has filed suit against the operator of a website, alleging the man is commercially exploiting her name by disclosing "embarrassing private facts" about their relationship.

Katy Johnson, 24, of Delray Beach filed the suit in Palm Beach County Circuit Court on Monday.

The suit alleges that Tucker Max, 27, of Chicago, uses Johnson's 'name, portrait, photograph and other likeness to promote his website, books, merchandise and career as an authority on 'picking up' women."

Johnson, who promoted sexual abstinence as a teenager, is asking that "The Miss Vermont Story" be banned from appearing on Max's website.

"You cannot use someone's name and likeness in the state of Florida for a commercial purpose without their consent," said Johnson's attorney, Michael Santucci, whose offices are in Fort Lauderdale. He said Johnson did not given Max permission to use her name or likeness.

Max, whose website was recently profiled on an MTV reality show, could not be reached for comment.

The suit also alleges Johnson suffered "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille, a Boca Raton restaurant that is owned by Max's family.

Max's website contains a section that talks about an alleged relationship he had with Johnson after they met at a Boca Raton gym, and details a visit to the restaurant.

Johnson was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001. She entered those pageants because she was attending college in Vermont.

Santucci said he has asked the lawsuit be sealed to protect his client's privacy.

LOAD-DATE: May 7, 2003

Copyright 2003 Sun-Sentinel Company
Sun-Sentinel (Fort Lauderdale, FL)

May 7, 2003 Wednesday Palm Beach Edition

SECTION: LOCAL; Pg. 3B

LENGTH: 108 words

HEADLINE: SITE BARRED FROM USING BEAUTY QUEEN'S LIKENESS

BYLINE: STAFF REPORTS

BODY:

An attorney for a Delray Beach woman who was Miss Vermont said he secured an injunction Tuesday that prohibits a Chicago man from using her name or likeness on his Web site.

Katy Johnson, Miss Vermont 1999 and Miss Vermont USA 2001, filed the lawsuit Monday against Tucker Max, alleging Max was invading her privacy by using her likeness and writing about her. Her attorney, Michael Santucci, said he obtained an injunction from Palm Beach County Circuit Judge Diana Lewis and that Tucker is barred from using Johnson's name or photographs on his Web site.

Santucci said Johnson denied the story Max has written about her on his Web site.

LOAD-DATE: May 7, 2003

The Associated Press State & Local Wire

The materials in the AP file were compiled by The Associated Press.  These materials may not be republished without the express written consent of The Associated Press.

May 6, 2003, Tuesday, BC cycle

SECTION: State and Regional

LENGTH: 267 words

HEADLINE: Former Miss Vermont sues over Web site portrayal

DATELINE: WEST PALM BEACH, Fla.

BODY:

A two-time former Miss Vermont has filed suit against the operator of a Web site, alleging the man is commercially exploiting her name by disclosing "embarrassing private facts" about their relationship.

Katy Johnson, 24, of Delray Beach filed the suit in Palm Beach County Circuit Court on Monday.

The suit alleges that Tucker Max, 27, of Chicago uses Johnson's "name, portrait, photograph and other likeness to promote his Web site, books, merchandise and career as an authority on 'picking up' women."

Johnson, who promoted sexual abstinence as a teenager, is asking that "The Miss Vermont Story" be banned from appearing on Max's Web site.

"You cannot use someone's name and likeness in the state of Florida for a commercial purpose without their consent," said Johnson's attorney, Michael Santucci of Fort Lauderdale. He said Johnson did not given Max permission to use her name or likeness.

Max, whose Web site was recently profiled on an MTV reality show, could not be reached for comment.

The suit also alleges Johnson suffered a "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille, a Boca Raton restaurant owned by Max's family.

Max's Web site contains a section that talks about an alleged relationship he had with Johnson after they met at a Boca Raton gym, and does detail a visit to the restaurant.

Johnson was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001. She entered those pageants because she was attending college in Vermont.

Santucci said he has asked the lawsuit be sealed to protect his client's privacy.

LOAD-DATE: May 7, 2003

Copyright 2003 Palm Beach Newspapers, Inc.
Palm Beach Post (Florida)

May 6, 2003 Tuesday  SOUTH EDITION

SECTION: LOCAL,

Pg. 1B

LENGTH: 344 words

HEADLINE: FORMER MISS AMERICA ENTRANT SUES OVER WEB SITE

BYLINE: By BILL DOUTHAT Palm Beach Post Staff Writer

BODY:

A former Miss America contestant who promoted sexual abstinence as a Delray Beach teenager is suing over a Web site that portrays her as promiscuous.

Katy Johnson, 24, is asking a judge to ban the "The Miss Vermont Story" that tells of alleged sexual exploits between her and Tucker Max of Chicago.

Max, 27, a Duke University law school graduate who published The Definite Book of Pick-up Lines, describes his alleged liaisons with Johnson and other women on his Web site. He's using his stories about Johnson and others to promote his dating service on television and in books, the lawsuit said.

"He's pawning off Katy's good name to make a profit for himself," said her attorney, Michael Santucci of Fort Lauderdale. Santucci filed the lawsuit Monday in Palm Beach County Circuit Court and requested the case be sealed from public view. A judge has not yet ruled on the request.

Johnson, who grew up in Delray Beach, was out of state and not available for comment, he said.

The lawsuit says Max's Web site carries a photo of Johnson and posts a link to her own "Pageant City" Web site that offers advice, manuals and merchandise for teens wanting to enter beauty contests.

One of her tips: Stay away from boys who treat you like toys.

Johnson competed in the 1999 Miss America Pageant as Miss Vermont since she was a college senior in that state.

When she was 16, Johnson and a friend started a Say Nay Today pledge card distributed to church and youth groups. The card promised that a teen would abstain from sexual involvement until marriage.

On his Web site, Max claimed he met Johnson at The Athletic Club in Boca Raton in 2001 and invited her to dinner at Max's Grille, which he said was owned by his family.

Santucci declined to discuss Johnson's relationship with Max. The lawsuit says she suffered a "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille.

The lawsuit claims the Web site story posted by Max is an illegal use of her name and photo and invasion of privacy.

bill_douthat£pbpost.com

NOTES: Ran all editions.

GRAPHIC: PHOTO (C); Katy Johnson (mug)

Copyright 2003 Sun-Sentinel Company
Sun-Sentinel (Fort Lauderdale, FL)

May 6, 2003 Tuesday Palm Beach Edition

SECTION: LOCAL; Pg. 2B

LENGTH: 276 words

HEADLINE: DELRAY WOMAN SUES OVER WEB SITE DATA

BYLINE: Peter Franceschina Staff Writer

BODY:

A former Miss Vermont beauty pageant winner from Delray Beach filed a lawsuit Monday asking a judge to order a Chicago man to remove any mention and photographs of her from his Web site, alleging he is commercially exploiting her name.

Katy Johnson, who runs a cartoon Web site for children and was crowned Miss Vermont 1999 and Miss Vermont USA in 2001, alleges in her suit that the Web site run by Tucker Max "constitutes public disclosure of embarrassing private facts."

The suit says Max is using Johnson's "name, portrait, photograph and other likeness to promote his Web site, books, merchandise and career as an authority on 'picking up' women."

Max, who recently appeared on an MTV reality program, could not be reached for comment late Monday.

"What this lawsuit is about is that you cannot use someone's name and likeness in the state of Florida for a commercial purpose without their consent," said Johnson's attorney, Michael Santucci of Fort Lauderdale. He said Johnson did not given Max permission to use her name or likeness.

Santucci asked a judge to seal the case to prevent publicity.

The lawsuit alleges that Max is invading Johnson's privacy by disseminating "offensive and objectionable" information about her. Max's Web site contains a section that talks about an alleged relationship he had with Johnson after they met in Boca Raton.

The information about Johnson on the Web site has "caused great harm to her person, career and business, and continues to be the source of great embarrassment and harm," according to the suit.

Peter Franceschina can be reached at pfranceschina£sun-sentinel.com or 561-832-2894.

LOAD-DATE: May 6, 2003

Copyright 2003 The Tribune Co. Publishes The Tampa Tribune

Tampa Tribune (Florida)

February 21, 2003, Friday,  FINAL EDITION

SECTION: BAYLIFE,

Pg. 2

LENGTH: 732 words

HEADLINE: Is There Any Worth To Fame Purchased At Any Price?

BYLINE: JILL M. REVELLE, jrevelle£tampatrib.com; Jill M. Revelle, who hopes to meet some REALLY famous people someday, can be reached at (813) 885-6852.

BODY:

   Whenever I speak to groups of students, one of the question-and-answer favorites is "Have you ever met anybody famous?"

   They never seem impressed at the list that includes aging Broadway actors, B-movie moguls, low-ranking Missouri politicians and "that rubber-band-ball kid who was on David Letterman."

   But now, I can tell them I've met Tucker Max.

   (Insert blank stares from the crowd and crickets chirping sound effect here.)

   If you've never heard of him, you're not alone. Like with most cult pop personalities, his fans are fierce but far from mainstream.

   According to the Internet - because we can believe everything we read there - the Legend of Tucker Max started with a bet between law school friends. (Yes, this guy managed to graduate from law school.) A female friend dared the relationship-challenged Max to post a site asking women to fill out an application in hopes of landing a date with him. If he did, she would perform at a strip club's amateur night.

   Charming.

   Apparently, the Full Monty payoff hasn't yet been made. But the site remains active at www.tuckermax.comand draws thousands of hits per day with its stories of stupid things that Tucker does while drunk, pictures of and rude remarks about his ex-girlfriends, general self-glorifying rambling and, of course, the "date application" that started the whole thing.

   He claims his mother cried the first time she saw it.


In The Flesh

   When I first learned of the site, I thought it might make great column fodder: a 27-year-old Chicago guy gaining national attention for a dating Web site. Learning that MTV is planning a special on him sealed the deal.

   I e-mailed the address on the site, and he was on my phone the next day telling me that as luck would have it, he was to be in Tampa the very next weekend for the Sant' Yago Illuminated Knight Parade and that, judging by my picture in the paper, he would be willing to meet in person.

Tampa Tribune (Florida) February 21, 2003, Friday, FINAL EDITION

Which is how I ended up spending 2 1/2 hours of Valentine's Day afternoon getting to know the real Tucker Max.

A self-described "media whore," he has decided that any publicity is good publicity when your entire goal is to get famous by any means necessary.

He already has published "The Definitive Book of Pick-up Lines" and claims to be working on a novel that will set the world of modern fiction on its ear. He also says he has been approached by producers wanting to create a reality television series around him and his friends.

Think "Sex and the City" meets "Jackass."

He bragged about throwing up on the MTV film crew that had followed him around the week before.

He talked about how much he loves kids and can't wait to be a dad.

He detailed his history of infidelity.

He extolled the virtues of marriage.

He talked about all kinds of things and, as long as Tucker Max was the center of conversation, he was happy.

Eventually, talk turned to "the other Web site."


Good Taste Failing

Thanks to Tucker bragging on his message board that I was going to do an article on him, the word got out last week that this column was in the works. What resulted were several e-mails from concerned parties begging me to reconsider lending legitimacy to the sort of guy who would foster a site such as www.tardblog.comas a side project.

The content is even worse than the name: a compilation of stories written by a special education teacher and produced online by Mr. Max poking fun at the day-to-day experiences of developmentally disabled students.

Tucker's defense is that the teacher is just blowing off work-related steam - choosing to laugh at the foibles rather than cry at the stress her job entails. And if the results are amusing, why not share them with the masses?

I'm not convinced, but if you think stuff like that is funny, that's your hang-up.

So why did I decide to write about him? It's not to further his cause - he doesn't need me for that. He already has hordes of people hooked on the essence of Tuckerism, and he's willing to do whatever stupid, tasteless, borderline illegal thing it takes to make himself famous.

Or infamous, as the case may be.

I wrote about him because I wanted you to hear it here first: If he has his way, his name will be all over the place.

You will wonder what all the fuss is about.

And having met Tucker Max, I can tell you it's much ado about nothing.

NOTES: THE QUARTERLIFER

LOAD-DATE: February 22, 2003

Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 125 of 148

# Jaff's Trumpet

« BIG Alex | Main | Street Ka »

## April 15, 2003

### Tucker Max

This guys site has been doing the rounds on the web for a while now, MTV have just picked up on his

success, and he is being aired in the States next month. I am sure we will see more of him soon. I like his site:

http://www.tuckermax.com/

I have a liking for this type of internet tripe. I suppose it is the Internet equivalent of You've been framed.

and another one,

http://maddox.xmission.com/

Posted by Jaffs at April 15, 2003 09:17 PM | TrackBack

## Comments

## Post a comment

Name:

[                    ]

Remember personal info?

○ Yes   ◉ No

Email Address:

[                    ]

URL:

[                    ]

Comments:



# MUNSONED.COM
The single best source on being munsoned.

Home &ts | People | Things | Contact

**munsoned** (v) - To be up a creek without a paddle.  To have the whole world in the palm of your hands and to blow it.

[Search] ▢
**Navigation**
**Home**
**Submit**
**Contact**
**Munson Ratings**
**Email Munsoned**
**Search Amazon** ·new
**Text Message** ·new
**How to Text**
**FAQ's**

**Affiliates**

**Bet Today...**



**Buy Ringtones...**



Largest selection of ringtones and graphics

**Donate Today...**



Hi
Donate to Keep Munsoned Truckin'!

Click to Give
fully refundable

amazon honor system
Learn more

**Why Donate?**

# Tucker Max

He had a degree from University of Chicago, got into law school at top-tiered Duke, and landed a coveted summer associate position at Fenwick & West -- one of SF's premere law firms that pays law students $2,400/week to attend a glorified summer camp and $125k per year to star if they get an offer. What did he do? He blew it all and got himself fired 4 weeks into his first summer 'cause he couldn't hold his liquor (or vomit). He then set up a web site to brag about it, thereby ensuring he will never work in the business again, ever. He is now soliciting dates over the internet and boasting about doing "absolutely nothing." Hope he gets used to it. A true Munson. You will do Roy Munson a grave disservice if you do not put him in ;-).
www.tuckermax.com

Submitted by: Blaine Fletcher
From: Illinois

**Buy items related to Tucker Max at Amazon...**

Relevant Links...

Click to Suggest a link to add

---

## Comments

Add a comment and share your thoughts about this munson.

**Comment from: Brad Anon**
Uh, Max a Munson? TM could have pursued a career in law but chose not to do so because he hated it. Most lawyers appreciate his web site and his warped sense of humor. In the meantime, he has a wildly successful website, a popular book of pick-up lines, an James-Bond-esque sex life, and is now about to start appearing on MTV! Does not sound like a Munson to me...

**Comment from: Brian Anon**
Sure, he'll be successful. Very...until his 15 minutes are up. This is a classic Munson.

**Comment from: K Richard**
This guy is a total LOSER. He has a whole site dedicated to making fun of children with disabilities. I'm surprised that little tidbit wasn't mentioned. His career in television will never even begin if the parents of those children and other outraged people have any say whatsoever. If that jerk EVEN gets on MTV, I am going to boycott that whole network.

**Comment from: John Anon**
I met the guy. He couldn't hack it, and made up rationalizations afterwards. Presuming that he didn't go to law school on a free ride, yes, he blew it. He didn't like being a lawyer? I agree, corporate law is boring. So try something else instead. Only a moron would waste $60,000 + in tuition by burning all of his bridges. I guess it was his daddy's money and he just didn't care.

**Comment from: Bond James**
Are you sure this guy's going to have a show on MTV?? I just did a search of his name on MTV's web site and came up with nada. Zippo. He's probably going to be on an episode of

"Dismissed" or something. Hardly the stuff celebrity is made of. Besides, how does having a show on MTV save him from Munsonhood? He isn't gonna get paid dick for the show and it is rare to go from reality TV to true celebrity. I predict his best future is a slap fight with Joe Millionaire, hehe.

**Fight Spam!**

**Comment from: David Mozealous**
What's with the whole Anon family having something to say about tucker max?

**Comment from: Tracy Picton**
The guy's a total loser. He'll get his 15 min,and then he'll be washed up. Definitely Munson. He's a rich, lazy 28-yr. old white kid who thinks he's brilliant, charming and good looking enough to change the literary and entertainment world. Unlikely at best, laughable at worst. He cannot make a go of life in the real world, so he attempts to appeal to those who have to, and those who are too young to know better. His arrogance is surpassed only by his insecurity, if that makes sense. All of this grabbing for fame will only end up hurting him emotionally in the long run. Very sad. He should be pitied.

**Comment from: Brodie Voss**
This guy is trying to get his 15 minutes any way possible and he's proud of it. Personally, I think he is just another frat boy who happens to know some html. 15...14....13....

**Comment from: Susan Jameson**
Tucker Max is the biggest ass I have ever met in my entire life. He claims to be some huge bad ass and when I met him he kept asking me to say his name (which I am sure isn't really Tucker Max) like some kind of freak. He talked about himself in the third person and considers himself to be so cool because of a few people who admire him on an internet message board. Yeah, those are definitely ways to prove yourself. He then called me an ugly whore after I wouldn't go home with him. Uh, yeah that makes sense. Anyway, he's an idiot.

**Comment from: Tucker Sux**
I've suffered through every one of the posts on his message board. Looks to me like it's a frat boy club, with a few mindless women that want to get some free drinks, and subsequently there is a slew of geeks that all trip over themselves to kiss his ass in hopes they, too, can get laid. On one hand, you have to give the guy credit, even being king of the geeks is king of something. On the other hand, everyone on the board is a raging alcholic with major self esteem issues. I've even heard (from a close TM source) that tucker thinks almost everyone on the board is a "tard" but is afraid to call them out because he likes his fan club too much. Sad that he needs the approval of faceless morons on the internet to give him some sense of self worth. This site screams INSECURITY!

**Comment from: Tracey B**
Man, that guy is a TOTAL loser. Tucker Max thinks he is an expert on getting dates? OH YEA! WHATEVER! Is it a coincidence that his only dates are dumb bimbos? I think not. Any girl with brains would not go for a excessively egotistic jerk like him. He uses his book thing as a ploy to defend himself against those that think he's full of shit. The truth of the matter is clearly evident: he used his daddy's money to publish some idiotic book to prove his own insecurities.

**Comment from: Tom Jackson**
He didn't pursue a law career because he hated it and thought it was incredibly boring. I feel sorry for any person who is doing a job that he or she hates simply because it pays well. He had a full scholarship to Duke, so he didn't waste any of "Daddy's money." He also published the book without help from his parents. The two people who suggested that are stupid and don't know what they are talking about. He will be featured on MTV's show "Sex2k" on May 1, 2003.

**Comment from: Anne Smithers**
the dude's a wanker and stale as yesterdays news .... why give him the attention he so badly craves ...my bet is he reads here every two days to check he still exists as a legend in his own mind ...loser material plus

**Comment from: whata loser**
More comments on Tucker Please. He loves it.

**Comment from:** john west

You people are a bunch of dimwitted crack addled imbeciles who obviously have a serious jealousy issue. I am not a tucker fan. I just call it like i see it. You say he is a loser? If the definition of a loser is having people want to be like you, sign me up. The guy has women fawning over him. And i dont know of a guy out there that wouldnt enjoy that. The guy does nothing more than host a forum for a bunch of people to talk about him and other subjects. Obviously he has succeeded. Not only that, but he has also succeeded in making social rejects like yourselves talk about him. So what if he laughs at tards? Go to www.tardblog.com and if you dont laugh at any of the stories, there is something wrong with your brain. Its not like the tards really care. All they know is that they can be taken care of for life and never have to work a day as long as they live. Normal people dream about an opportunity like that. Tards are born into it. As far as his selection of women, the ones i have seen on his website are incredibly hot. Tucker Max does exceedingly well for a guy with hands the size of an 11 year old. Any girl with half a brain wouldnt sleep with him? HA! I have seen a couple of women that have slept with tucker post some intelligent stuff on his message board. Which is not what i can say for 98% of the crap on this site. And everybody seems to think Mr.Max is a loser. Well, if the definition of loser is to have girls come over to my house wearing my designer t shirt and thong, then just tell me where to sign up. Girls want him, and men want to be him. I am definitely not pro-tucker. I happen to admire some of the stuff he does, and I am definitely a fan of his writing style. The guy truly has a gift for writing. My point is this: Stop drinking your haterade and just go back to being couriers, copy room guys, and secretaries. Just because you dont have the intestinal fortitude to hack it on a stupid message board is no reason to call a guy a loser. John West stuttering_john@hotmail.com Also my name on the tucker max board is mr_kittles.

**Comment from:** Not Given

I'm a post-op tranny who once got it up the ass from this joker. He's a switch-hitter if I've ever met one. The whole thing is a front. Oh yeah, and it's true what they say about small hands.

**Comment from:** Turtle Galapagos

Don't be hating on Tucker. He came up with something original, and you didn't. The Tardblog is funny because it is true. You can't beat the humor of real life. Too many people are hung up on existing whereas folks like Tucker try to live.

**Comment from:** ShutThe FuckUp

Christ you people are stupid.

**Comment from:** Not a damn Anon tucker

if u people maybe read more than 2 stories, christ maybe if u could hack it read 5. and if its not to much trouble can u then go ahead and shut ur bitching faces thankyou

**Comment from:** Jeff Thomas

Not really a Munson, because he never had it in the first place. This man has no talent of any kind, and exists in the public eye only by dint of his astonishing arrogance, and the blinkered devotion of his small but fervent fan base. Unfortunately for Mr Max, even if he manages to further defer adulthood, his minions won't, and his bubble will surely burst. Beyond his initial shock value - which fades very quickly - he has nothing to offer the public and is destined to be found out. The real shame is that he has family money to fall back on and so will not end up destroyed and destitute as - were there any justice in the World - he should. Ignore him - he WILL go away eventually.

**Comment from:** Latasha Harris

First and foremost, anyone who would admire a man like Tucker must be truly pathetic himself. Everyone needs a hero I suppose, and someone whose hero is Tucker Max must be one pathetic loser who's trapped by his own insecurities, and has probably never been laid. Any real man would realize that Tucker Max is without. Tucker runs around like a lost child or puppy. It's not Tucker I feel bad for but Tuckers mother, Tucker by no means is an idiot. He writing alone, although crass and tasteless, indicate a certain intellect. It's very apparent to me that he has been given the right education, or at least the definite opportunity for the right education and to be successful. I once heard that people who are book smart tend to be lacking common sense. Tucker Max is most definitely a prime example and argument for this theory. It must really suck

to be that smart and that stupid all at the same time. So, yes, why wouldn't EVERY guy want to be like Tucker he's awesome? This makes me laugh because when watched him on MTV the only girls I saw giving him the time of day were ugly as hell. The one girl at the bar wouldn't even go home with him and she was pretty rough looking herself. In conclusion how old is Tucker? Anyone know? I surely don't he never says how old he is… hmm wonder why? I think he is soon to be an old man, a has-been or even worse a never-was. The true light of Tucker Max is shown at the last bit of the show when he was puking in the ally. Maybe not of what he is, but of what he has chosen to show the world. I'm not a Tucker fan but I do wish him luck, for his mother's sake if nothing else. Of course this is just one 18 year-olds opinion.

Comment from: Joe American
Loser. He should be in a 12-step program and not whoring his personal abuse out to the public. It's really sad. This guy had a good chance at contributing something useful to society and just kills himself with alcohol now.

Comment from: Lisa Brennan
Latasha (who deserves special attention only because she spent so much time on her post you just know she'll come back to see if anyone said amen): Take a basic writing course. You try much too hard to come across as intelligent in a tragically misguided attempt to convince readers to accept your thoughts as relevant. If/when you finish that, try a logic course so you can learn basic arguments. Then come back and re-post, but this time use MS Word so you'll know which sentences require improvement in structure. Everybody else: You act as though you know the guy. You're the kind of people who still get mad when you see the chick who played Nellie Olson on the street. I bet you feel it's your civic duty to demand that she stop picking on Laura. The guy got your attention, which appears to be his only objective. Mission accomplished. He didn't get it by killing his pregnant wife or slashing his ex and her suspected lover. He didn't shoot his parents in their living room while they ate ice cream and watched tv. He didn't even let baby Jessica toddle into a well while trying to see through the scramble of the Spice channel on cable tv. He wrote some stories and posted a date app, and you came. Somewhere in the world a customer wants his super-sized fries and a small kitten needs a home. Get back to your reality. Not everyone can put themselves out there for the scathing judgement of the munson board. But be sure to let us all know if you did anything worth knowing about, and we'll be ready with our eggs. (Of course I made an exception for Latasha, who already had an egg coming.) The one thing all of you posters have in common is an attitude of superiority balanced p

Comment from: M S
Its evident that Tucker's purpose is the collection of attention. Negative or positive he thrives when people think, talk and read about Tucker. So Tucker Max is a genius and a wild flaming success if you ask me. Also he seems lonely and sad. It also sad that MTV, the new role model for our preteens in USA is using his example to provide a fresh new Jackass (tv show) for our kids to emulate. At least watching kids push each other into the to display at Acme was fun...

---

## Rate Tucker Max as a munson:

| Don't Rate | Rate It<br>Not Munsoned < > Totally<br>Munsoned | | | | | Save Rating |
|:---:|:---:|:---:|:---:|:---:|:---:|:---:|
| O | O | O | ◉ | O | O | Save |
| NA | 1 | 2 | 3 | 4 | 5 | |

Copyright © David Mozealous 2002.  All rights reserved.

IHT: Free speech or privacy?                                                Page 1 of 2

Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 130 of 148

**INTERNATIONAL**
**Herald Tribune**
**THE IHT ONLINE**

## ◈ Free speech or privacy?

**Adam Liptak/NYT** The New York Times                    Monday, June 2, 2003

### Changing rights in the age of the Internet

The beauty queen and the cad both have Web sites.

Katy Johnson, who was Miss Vermont in 1999 and again in 2001, uses her site to promote what she calls her "platform of character education."

"She is founder of Say Nay Today and the Sobriety Society," the site says, "and her article, 'ABC's of Abstinence,' was featured in Teen Magazine."

Tucker Max's site promotes something like the opposite of character education. It contains a form with which women can apply for a date with him, pictures of his former girlfriends and reports on what Max calls his "belligerence and debauchery."

Until a Florida judge issued an unusual order last month, Max's site also contained a long account of his relationship with Johnson, whom he portrayed, according to court papers, as vapid, promiscuous and an unlikely candidate for membership in the Sobriety Society.

The order, entered by Diana Lewis, a circuit court judge in West Palm Beach, forbids Max to write about Johnson. It has alarmed experts in First Amendment law, who say that such orders prohibiting future publication or prior restraints are essentially unknown in American law.

Moreover, they say, claims like Johnson's, for invasion of privacy, have almost never been considered enough to justify prior restraints.

Johnson's lawsuit also highlights some shifting legal distinctions in the Internet era, between private matters and public ones and between speech and property.

Lewis ruled on May 6, before Max was notified of the suit and without holding a hearing. She told Max that he could not use "Katy" on his site. Nor could he use Johnson's last name, full name or the word "Vermont."

The judge also prohibited Max from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual acts engaged in by" Johnson.

That prohibition is not limited to his Web site. Finally, Lewis ordered Max to sever the virtual remains of his relationship with Johnson. He is no longer allowed to link to her Web site.

The page of Max's site that used to contain his rambling memoir now has only a reference to the court order.

Johnson did not respond to telephone and e-mail messages seeking comment. In her lawsuit, Johnson maintained that Max had invaded her privacy by publishing accurate information about her and had used her name and picture for commercial purposes.

Her lawyer, Michael Santucci of Fort Lauderdale, declined to be interviewed. He has asked Lewis to seal the court file in the case, a request on which she has not yet

Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 131 of 148



**BOSTON.COM**   A&E | BOSTON GLOBE | CARS | JOBS | REAL ESTATE | SPORTS | TECH | TRAVEL .

boston.com
◁Home

Unlimited local and long distance
calling $59.99/month CLICK HERE     BUSINESS COMPLETE from MCI.

▽ LATEST NEWS
NORTHEAST

**MONDAY, JUNE 2, 2003**

[ Send this story to a friend | Most e-mailed articles | Easy-print version ]

**Regional news**
All Northeast
Massachusetts
New Hampshire
Rhode Island
Maine
Vermont
Connecticut
New York

**More wires**
Sports
Business
Technology
Washington
Nation
World

SPONSORED LINKS


ORBITZ

Low Airfares.
More Choices.
Cars & Hotels.
All at Orbitz!

# Judge orders beauty queen's name off Web site

**By Jill Barton, Associated Press, 6/2/2003 15:08**

WEST PALM BEACH, Fla. (AP) A judge has ordered a Chicago man to stop telling stories, regardless of their truth, about his alleged relationship with a former Vermont beauty queen.

The temporary order forbids Tucker Max, 27, from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual act" involving Katy Johnson, a two-time Miss Vermont.

Johnson sued Max last month arguing that he was using her name and photograph on his web site to promote his "career as an authority on 'picking up' women." Johnson, 24, who promoted sexual abstinence as a teenager, denies the story.

Max's attorney, John C. Carey, called the order "inconsistent with the freedom of speech guaranteed by the Constitution." He said it was "even more unusual" because the order was issued before Max knew of the lawsuit.

"Tucker Max has the right to tell his autobiographical account of their relationship," Carey said in an e-mail to The Associated Press. He said they would ask for the order to be dismissed.

The order bars Max from using any photos or references to Katy Johnson's first or last names, or her title, "Miss Vermont," on his web site or in any books or periodicals. It also excludes him from providing a link to Johnson's web site. Judge Diana Lewis granted the injunction on May 6, a day after the lawsuit was filed in Palm Beach County circuit court.

Max, who did not respond to an e-mail seeking comment, no longer mentions Johnson on his Web site. But he does provide a link to "this ridiculous lawsuit against me" that takes viewers to a list of news stories about the case. The judge's order stops short of prohibiting Max from making any statements about the suit.

Johnson's attorney, Michael Santucci, declined to comment Monday. He has asked for the lawsuit to be sealed to protect his client's privacy.

The suit also alleges that Johnson, who lives in Delray Beach, suffered a "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille, a Boca Raton restaurant owned by Max's family.

Max's Web site previously contained a section that talks about an alleged




Boston
Career



Tuesc
Johns
MIT, (
10 am

Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 132 of 148

relationship he had with Johnson after they met at a Boca Raton gym, and details a visit to the restaurant.

Johnson was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001. She entered those pageants when she was attending college in Vermont.

On the Net:

Katy Johnson's site: www.katyjohnson.com

Tucker Max's site: www.tuckermax.com

[ Send this story to a friend | Most e-mailed articles | Easy-print version ]

**Search the Globe:** |                                    Go|
(•) Today (Free)    ( ) Yesterday (Free)    ( ) Past month    ( ) Past year    Advanced search

**Get Boston Globe home delivery at 50% off
and receive up to 4 tickets to Loews Theatres!**

© Copyright 2003 The New York Times Company

| Advertise | Contact us | Privacy policy |

BOSTON.COM  ▶  A&E | BOSTON GLOBE | CARS | JOBS | REAL ESTATE | SPORTS | TECH | TRAVEL



Unlimited local and long distance
calling $59.99/month CLICK HERE    BUSINESS COMPLETE from  MCI.

▽ LATEST NEWS

# NORTHEAST

**MONDAY, JUNE 2, 2003**

[ Send this story to a friend | Most e-mailed articles | Easy-print version ]

**Regional news**
All Northeast
Massachusetts
New Hampshire
Rhode Island
Maine
Vermont
Connecticut
New York

**More wires**
Sports
Business
Technology
Washington
Nation
World

SPONSORED LINKS


ORBITZ
Low Airfares
More Choices
Cars & Hotels
All at Orbitz!

# Judge orders beauty queen's name off Web site

**By Jill Barton, Associated Press, 6/2/2003 15:08**

WEST PALM BEACH, Fla. (AP) A judge has ordered a Chicago man to stop telling stories, regardless of their truth, about his alleged relationship with a former Vermont beauty queen.

The temporary order forbids Tucker Max, 27, from "disclosing any stories, facts or information, notwithstanding its truth, about any intimate or sexual act" involving Katy Johnson, a two-time Miss Vermont.

Johnson sued Max last month arguing that he was using her name and photograph on his web site to promote his "career as an authority on 'picking up' women." Johnson, 24, who promoted sexual abstinence as a teenager, denies the story.

Max's attorney, John C. Carey, called the order "inconsistent with the freedom of speech guaranteed by the Constitution." He said it was "even more unusual" because the order was issued before Max knew of the lawsuit.

"Tucker Max has the right to tell his autobiographical account of their relationship," Carey said in an e-mail to The Associated Press. He said they would ask for the order to be dismissed.

The order bars Max from using any photos or references to Katy Johnson's first or last names, or her title, "Miss Vermont," on his web site or in any books or periodicals. It also excludes him from providing a link to Johnson's web site. Judge Diana Lewis granted the injunction on May 6, a day after the lawsuit was filed in Palm Beach County circuit court.

Max, who did not respond to an e-mail seeking comment, no longer mentions Johnson on his Web site. But he does provide a link to "this ridiculous lawsuit against me" that takes viewers to a list of news stories about the case. The judge's order stops short of prohibiting Max from making any statements about the suit.

Johnson's attorney, Michael Santucci, declined to comment Monday. He has asked for the lawsuit to be sealed to protect his client's privacy.

The suit also alleges that Johnson, who lives in Delray Beach, suffered a "harmful and offensive bodily contact" from Max in August 2001 in front of Max's Grille, a Boca Raton restaurant owned by Max's family.

Max's Web site previously contained a section that talks about an alleged






Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 134 of 148

relationship he had with Johnson after they met at a Boca Raton gym, and details a visit to the restaurant.

Johnson was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001. She entered those pageants when she was attending college in Vermont.

On the Net:

Katy Johnson's site: www.katyjohnson.com

Tucker Max's site: www.tuckermax.com

[ Send this story to a friend | Most e-mailed articles | Easy-print version ]

**Search the Globe:** [    ]    Go

◉ Today (Free)  ○ Yesterday (Free)  ○ Past month  ○ Past year   Advanced search

**Get Boston Globe home delivery at 50% off
and receive up to 4 tickets to Loews Theatres!**

© Copyright 2003 The New York Times Company

| Advertise | Contact us | Privacy policy |

# EXHIBIT D

Copyright (C) 2003 by Florida Legal Periodicals, Inc.

TITLE:                    ROBERT WAGNER vs. SUN INTERNATIONAL HOTELS, LIMITED; SUN
INTERNATIONAL BAHAMAS, LIMITED; and SUN INTERNATIONAL REPRESENTATION, INC.

DOCKET-NUMBER:            95-19988 CA 30

VENUE:
  Court:                  Florida Circuit Courts

COUNTY:                   Dade

STATE:                    Florida

YEAR.                     February 26, 1999 (Verdict/Settlement Date)

TOPIC:                    Unauthorized Publication of Photographs.

SUMMARY:
  Nature of Injury: Monetary loss.

  Verdict: $264,000 for Plaintiff on February 26, 1999 ($14,000 - total damages
sustained by Plaintiff for public use of his image without his consent; $250,000 -
punitive damages).

  Plaintiff Information:
    Age:                  40
    Sex:                  M
    Occupation:           Professional Model

RANGE AMOUNT:             $200,000-$499,999
ATTORNEY(S):
  Plaintiff's:            John B. Ostrow, Miami
  Defendant's:            Donald Fucik of Luks, Koleos & Santaniello, Ft. Lauderdale

JUDGE:                    Murray Goldman

EXPERT-WITNESSES:         n/a

TEXT:
  Cause of Injury: Plaintiff is a model who appeared in marketing brochures used to
promote the Sun Entities Hotel in the Bahamas. His photograph was used to promote
the hotel beyond the permitted contractual usage period without his consent.
Plaintiff filed suit, alleging violation of F.S.§ 540.08 (unauthorized publication
of name or likeness).


NOTES:

  Editor's Note: A notice of appeal was filed April 24, 1999.


Fla.Cir.


Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

00 FJVR 2-33

00 FJVR 2-33

END OF DOCUMENT

Copyright (C) 2003 by Florida Legal Periodicals, Inc.

TITLE:                KEVIN M. MCCARTY vs. BANKERS INSURANCE CO., INC.; ROBERT
M. MENKE, individually, and in his corporate capacity; DAVID K. MEEHAN,
individually, and in his corporate capacity; GEORGE K. DELANO, individually, and in
his corporate capacity; PETER RAYNER, individually, and in his corporate capacity;
PETER RAYNER INVESTIGATOR; EDWIN F. BLANTON, individually, and d/b/a OFFICE OF
EDWIN F. BLANTON, ATTORNEY; ROBERT ARCEAUXNEAU; and LOCATION & DISCOVERY SERVICES

DOCKET-NUMBER:        4:96 CV 420 SPM

VENUE:
  Court:             U.S. District Court, Northern District of Florida,
Tallahassee Division

COUNTY:              Leon

STATE:               Florida

YEAR:                June 15, 2000 (Verdict/Settlement Date)

TOPIC:               Invasion of Privacy/Intentional Infliction of Emotional
Distress/Public Disclosure of Private Facts.

SUMMARY:
  Nature of Injury: During the course of Defendants' investigation of Plaintiff, it
was noted that he was a homosexual. Plaintiff's sexual orientation, although known
to his immediate family, friends, and co-workers, became public knowledge through a
series of newspaper articles that were published in the Wall Street Journal as well
as in other newspapers in Florida. As a result of the publication of Plaintiff's
personal information obtained from the investigation initiated by Defendants, he
suffered physical, emotional, and monetary injuries. Plaintiff received extensive
medical and psychiatric treatment for his injuries, for which he lost time from
work and had to take a leave of absence.

  Settlement $2,550,000 for Plaintiff on June 15, 2000.

  Plaintiff Information:
    Age:             36
    Sex:             M
    Occupation:      Bureau Chief of Industry Coordination for the Florida
Department of Insurance

RANGE AMOUNT:        $2,000,000-$4,999,999
ATTORNEY(S):
  Plaintiff's:       Richard Lee Barrett and Victor Lee Chapman of Barrett,
Chapman & Ruta, P.A., Orlando
  Defendant's:       Robert E. O'Quinn, Jr. of Webb, O'Quinn & Murphree,
Jacksonville;
       Douglas A. Mang and Wendy R. Wiener of Mang Law Firm, Tallahassee;
       John C. Cooper and Henry J. Graham of Cooper, Coppins & Monroe, Tallahassee;
       William R. Mabile, III of Fuller, Johnson & Farrell, Tallahassee

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

JUDGE:                    Stephen P. Mickle

EXPERT-WITNESSES:

   Plaintiff's:          Frederick Raffa, Ph.D., Economist, Orlando

        Linda Miles, Ph.D., Psychology, Tallahassee

        Stan Smith, Ph.D., Economist, Chicago, IL

   Defendant's:          Michael Herkov, M.D., Gainesville

TEXT:
   Cause of Injury: Plaintiff was employed by the Florida Department of Insurance in
the position of Bureau Chief of Industry Coordination, a position that served as
the liaison between the Department and the Florida Residential Property and
Casualty Joint Underwriting Association (JUA). Defendant Bankers had a Servicing
Carrier Agreement with the JUA. Bankers felt that Plaintiff was not treating them
fairly and initiated an investigation. Utilizing a Tallahassee attorney, Bankers
retained a private investigator to investigate Plaintiff and place him under
surveillance. The investigation and surveillance began around April 26, 1995, and
continued until August 7, 1995, and included: a background check; search of public
records, driving records, property ownership, and personal financial information;
and background checks on individuals whom the investigator observed visiting
Plaintiff's home. Defendant Rayner, without the knowledge or consent of the other
Defendants, placed an illegal wiretap on Plaintiff's personal home telephone.

   Plaintiff sued Defendants for civil damages under 18 U.S.C.§ 2520,  F.S.§ 934.10,
15 U.S.C.§ 1681, as well as other common law causes of action for willful and
negligent violation of the Fair Credit Reporting Act, conspiracy to violate the
Fair Credit Reporting Act, tortious interference with employment relationship,
conspiracy to commit tortious interference with employment relationship, conspiracy
to commit slander, intentional infliction of emotional distress, invasion of
privacy, negligence, negligent hiring, negligent supervision, negligent retention,
negligent entrustment, and tortious conspiracy.

   00:10-38 (Continued)

   00:10-38 (Continued)

D.Fla.

00 FJVR 10-38

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Copyright (C) 2003 by Florida Legal Periodicals, Inc.

TITLE:                 BARBARA BUGGS SIMMONS, individually and as guardian and
next friend of JONATHAN SIMMONS and BRIAN SIMMONS, her minor children vs. ROBERT E.
VARNER, ROBERT E. VARNER, JR., d/b/a AA BAIL BONDS, and ROBERT J. EASTER

DOCKET-NUMBER:         90-20638-CA-T

VENUE:
  Court:               Florida Circuit Courts

COUNTY:                Brevard

STATE:                 Florida

YEAR:                  February 16, 1994 (Verdict/Settlement Date)

TOPIC:                 Invasion of Privacy/Intrusion into Home by Bail Bondsmen.

SUMMARY:
  Nature of Injury: Emotional distress; no permanent injuries.

  Verdict: $751,000 for Plaintiffs on February 16, 1994 (Compensatory Damages:
$100,000 for Barbara; $75,000 for Jonathan; $75,000 for Brian; $1,000 for property
damage; Punitive Damages: $300,000 for Barbara; $100,000 for Jonathan; $100,000 for
Brian).

  Plaintiff Information:
    Age:                 Barbara· 30
    Sex:                 F
    Occupation:          Part-time Secretary/Student

RANGE AMOUNT:          $500,000 $999,999
ATTORNEY(S):
  Plaintiff's:         Daniel B. Fowler of Reinman, Harrell, et al., Merritt
Island
  Defendant's:         Robert E. Varner and Robert E. Varner, Jr. - pro se;
      Lawrence J. Nixon of Nixon & Quarles, Daytona Beach for Easter

JUDGE:                 Kerry I. Evander

EXPERT-WITNESSES:      N/A

TEXT:
  Cause of Injury: On September 18, 1990, the Plaintiffs were residing at their
home in Melbourne when in the early morning hours the Defendants Robert E. Varner,
Jr. and Robert J. Easter, acting within the scope of their employment as agents for
AA Bail Bonds, owned by Robert E. Varner, attempted to retrieve/apprehend an
individual thought to be staying at the Plaintiff's residence. As a result of this
incident, Plaintiff and her two minor children filed a five count complaint against
the Defendants alleging trespass, assault and battery, intentional infliction of
emotional distress, invasion of privacy, and for property damage. The court entered
default judgments against both Defendants and the trial proceeded on the issue of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

damages only. Neither Defendant was present at trial.


NOTES:

   Editor's Note: Defendant Robert J. Easter was released from the case prior to trial.


Fla.Cir.

94 FJVR 3-3

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Copyright (C) 2003 by Florida Legal Periodicals, Inc.

TITLE:                PHILLIP FLEMING vs. GADSDEN COUNTY TIMES, TIMOTHY O.
MATTHEW, COLLINS CONNER AND CRESTON NELSON-MORRILL

DOCKET-NUMBER:        83-320-CA

VENUE:
  Court:              Florida Circuit Courts

COUNTY:               GADSDEN

STATE:                Florida

YEAR.                 January 1988 (Publication Month/Year)

TOPIC:                Libel/Invasion of Privacy/Newspaper Article.

SUMMARY:
  Nature of Injury: Damage to reputation.

  Verdict: $1,627,500 for the Plaintiff.
  $868,500 compensatory damages -- against Gadsden County Times
  $750,000 punitive damages -- against all Defendants
  $1,000 punitive damages -- against Conner
  $8,000 punitive damages -- against Matthew

  Plaintiff Information:
    Age:              N/A
    Sex:              N/A
    Occupation:       N/A

RANGE AMOUNT:         $1,000,000-1,999,999
ATTORNEY(S):
  Plaintiff's:        Bill Friedlander, Tallahassee
  Defendant's:        Joseph P. Averill, Miami

JUDGE:                Gwinn Parker

EXPERT-WITNESSES:

  Plaintiff's:        Walter Afield, M.D., Psychiatry, Tampa

        Robert Hawkins, Journalism, Florida A & M University, Tallahassee

TEXT:
  Cause of Injury: The Gadsden County Times published an article on June 21, 1979,
linking Plaintiff Fleming and his company, American Financial Life Insurance
Company, as subjects of a federal criminal investigation.

  The Defendants argued that Plaintiff never denied that there actually was a
federal investigation and that the Defendants were only reporting what was already
in the public record.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 9:03-cv-80515-DTKH   Document 1   Entered on FLSD Docket 06/09/2003   Page 143 of 148

88 FJVR 1-29                                                                    Page 2

Defendant Matthew is the publisher of the Times, Defendant Conner is a former editor and Defendant Nelson-Morrill is a former reporter.

NOTES:

Editor's Note: The trial lasted two weeks. The jury took 2 1/2 hours to reach its verdict. The case was settled for an undisclosed amount several weeks after the verdict.

Fla.Cir.

88 FJVR 1-29

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Copyright (C) 2003 by Florida Legal Periodicals, Inc.

TITLE:              DAVID BEILINSON vs. NICOLAS ELIAS

DOCKET-NUMBER:      00-28436 CA 04

VENUE:
  Court:            Florida Circuit Courts

COUNTY:             Miami-Dade

STATE:              Florida

YEAR:               March 13, 2002 (Verdict/Settlement Date)

TOPIC:              Assault & Battery/Altercation During Basketball Game.

SUMMARY:
  Nature of Injury: Comminuted left zygomatic-maxillary complex fracture; fracture
of left orbital floor. Plaintiff required a titanium plate and a bone graft.

  Verdict: $156,590.25 for Plaintiff on March 13, 2002 ($11,590.25 - past medical
expenses; $50,000 - past pain and suffering; $25,000 - future pain and suffering;
$70,000 - punitive damages).

    Plaintiff Information:
    Age:            18
    Sex:            M
    Occupation:     n/a

RANGE AMOUNT:       $100,000-$199,999
ATTORNEY(S):
  Plaintiff's:      Paul Steinberg and Anthony Falzon of Steinberg &
Associates, Miami Beach
  Defendant's:      Sanford Reinstein of Levine, Busch, et al., Miami

JUDGE:              Fredericka Smith

EXPERT-WITNESSES:

  Plaintiff's:      Jeffrey Blum, D.D.S., Oral Surgery, Miami Beach  (video
depo)

TEXT:
  Cause of Injury: On January 8, 1997, Plaintiff and Defendant were playing a pick-
up basketball game. They collided a couple times during the game. Plaintiff alleged
that the collisions were unintentional and Defendant alleged they were intentional.
Plaintiff alleged that Defendant pushed Plaintiff and intentionally struck
Plaintiff in the eye. Defendant alleged that they fell to the floor and were pulled
apart and someone else must have struck Plaintiff. Defendant claimed that Plaintiff
struck him and Defendant struck Plaintiff back. Defendant contended that he used
self-defense to defend himself.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NOTES:

    Editor's Note: The jury found that Defendant committed a battery on Plaintiff by
punching him in the eye. The jury also found that there was clear and convincing
evidence that punitive damages are warranted against Defendant. The jury further
found that Plaintiff did not commit a battery on Defendant by hitting him in the
face. Defendant offered $2,500; Plaintiff demanded $5,000 for medical expenses not
covered by insurance.


Fla.Cir.

02 FJVR 8-51

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

Law Offices of

# MICHAEL I. SANTUCCI, P.A.
## ATTORNEYS AT LAW

CORRESPONDING
OFFICE
500 North Maitland Avenue
Suite 304
Maitland, Florida 32751

Attorneys:

Michael I. Santucci
Philip A. Duvalsaint
Joseph V. Priore
David A. Hoffman

Of Counsel:

Melvin K. Silverman*
Registered Patent Attorney

Aaron Cohen+

S. Tracy Dreger**

Staff:

Joanna Luberanska
Paralegal/Broward Office
Administrator

Dana Pepper
Paralegal

Juli Santiago
Palm Beach Office
Administrator

Maly Paluske
Cristina Amorim
Reception

MAIN OFFICE
500 West Cypress Creek Road, Suite 500
Fort Lauderdale, FL 33309
Phone: 954.938.0007
Fax: 954.351.7475

PALM BEACH OFFICE
LIFELONG LEGAL CENTER
885 SE 6th Avenue, Suite C
Delray Beach, FL 33483
Tel: 561.272.4550/Fax: 561.278.5042

CORRESPONDING
OFFICE
One Gateway Center
Suite 2600
Newark, New Jersey 07102

## FOR IMMEDIATE RELEASE:

### Contact: Joe Priore (954)938-0007 - mis@lifelonglegal.com

## COURT GRANTS BEAUTY QUEEN'S REQUEST FOR INJUNCTION

The Court in the case of Katy Johnson v. Tucker Max granted the former Miss America contestant's request for an injunction on Tuesday. Circuit Judge Diana Lewis's order requires Max to remove all references to Johnson, from his website as well as the link to her children's website.

Fort Lauderdale intellectual property attorney Michael I. Santucci stated that Katy Johnson emphatically denies the story contained on Tucker Max's website.

"This victory should send a clear message to all parasitic smut peddlers who live off of the good names of others," says Santucci.

The suit was brought under a Florida statute that prohibits the use of a person's name, image, photograph or other likeness for advertising or other commercial purpose without consent. The statute also provides for an award of money damages and attorneys' fees to the plaintiff, if successful.

"Many of the customary defenses to defamation and similar claims will not be available to the Defendant in this case because of specific statute under which she sued," said lead counsel Santucci.

Katy Johnson was crowned Miss Vermont in 1999 and Miss Vermont USA in 2001. She competed in the Miss America Pageant in 1999 and the Miss USA Pageant in 2001. Her lead counsel, Michael I. Santucci is an intellectual property and entertainment attorney who represents such clients as basketball legend, Larry Bird. In August of 2000, he obtained a judgment for a client against the Walt Disney Company for $240,000,000 with his co-counsel Johnny L. Cochran and Willie E. Gary.

*Admitted in NJ and the
U.S. Patent and Trademark
Office only

+Also admitted in NY, NJ
and DC

**Also admitted in PA

(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

KATY JOHNSON

## DEFENDANTS

TUCKER MAX

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Palm Beach, FL_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
MICHAEL I. SANTUCCI, ESQ. (954) 351-7474
500 W. CYPRESS CREEK ROAD, SUITE 500
FT. LAUDERDALE, FL 33309

ATTORNEYS (IF KNOWN) JOHN C. CAREY, ESQ. (305) 789-7338
STRUCK & STRUCK & LAVAN LLP
200 S. BISCAYNE BLVD., SUITE 3160
MIAMI, FL 33131

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  BROWARD,  (PALM BEACH),  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | A☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | A☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

First Amendment, U.S. Const.; 17 USC §301 (Copyright Act);
28 USC §§ 1332, 1441 (Diversity) (Fla. Stat. §540.08)

LENGTH OF TRIAL via __3__ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  6/6/03

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 718422    AMOUNT 150.00    APPLYING IFP _____    JUDGE Hurley    MAG. JUDGE Lynch