FILED by WC D.C.
ELECTRONIC
Jun 30 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 03-Civ-80515-Hurley/Lynch

KATY JOHNSON,

    Plaintiff,

vs.

TUCKER MAX,

    Defendant.

_____/

### DECLARATION OF RICHARD J. MOCKLER

RICHARD J. MOCKLER declares as follows:

1. I am an attorney licensed to practice law in the state of Florida. I am an associate at the law firm of Stroock & Stroock & Lavan LLP and am one of the attorneys representing the defendant in this action.

2. I have personal knowledge of the below facts and could testify thereto if I am called as a witness. I am familiar with the Internet and the World Wide Web, which I have used to follow the news and press relating to this action.

3. Based on the content of Plaintiff's website at http://www.katyjohnson.com, her potential damages resulting from the publication of the Miss Vermont Story could be considerable. Using my personal computer, I accessed Plaintiff's website on June 4, 2003. I printed certain pages relating to her resume, true and correct copies of which were attached as Exhibit B to Defendant's Notice of Removal.

4. According to the resume posted on her website, Plaintiff has also appeared in both the Miss USA Pageant and Miss America Pageant. Plaintiff has earned the following titles as a beauty pageant contestant: Miss Vermont USA 2001; 1st Inductee in Who's Who in Pageants 2000; Miss Vermont 1999; Miss Oktoberfest 1998; Miss Florida USA 1st Runner Up 1998; Miss United States Teen 1997; Florida Homecoming Queen 1996; Miss Teenage America Finalist 1995; Miss Florida Teen USA Photogenic Winner 1995; Miss Florida Teen USA 1st Runner Up 1995; and Florida Cinderella Teen 1994. Plaintiff also writes as a columnist for a several periodicals, including Pageantry Magazine. *See* Exhibit B to Defendant's Notice of Removal.

5. Plaintiff, in conjunction with her mother, Kathleen Johnson, operates a general partnership designed to capitalize on the name and reputation Plaintiff has created. *See* Composite Exhibit A to Defendant's Notice of Removal, Affidavit of Katheleen Johnson.

6. Plaintiff's personal and professional resume claims that she has appeared in at least nine (9) motion pictures, twelve (12) television programs, and six (6) theatrical performances, including lead roles in *Little Red Riding Hood, Oliver* and *Alice in Wonderland*. Additionally, Plaintiff claims to have appeared in televesion commercials promoting Scope® mouthwash, Crest® toothpaste, MCI® telephone services, and the World Wrestling Federation® ("WWF"). The WWF commercial was aired during the Superbowl® and rated in February 2000 as the "#1 Commercial" by USA Today. *See* Exhibit B to Defendant's Notice of Removal.

7. On her website, Plaintiff also claims that she is a YMCA Advocate for Values and the author of a character education comic strip, Starlettes, which she claims through her website

2

promotes the following: Selfesteem, Truth, Abstinence, Respect, Responsibility, Love, Encouragement, Temperance, Tolerance, Excellence, and Steadfastness.[1]

8. Plaintiff Katy Johnson sued Defendant Tucker Max for unlawful commercial use of her name, invasion of her privacy, and battery.

9. The state court issued on May 6, 2003 its *ex parte* injunction against Defendant, and, notwithstaning her privacy concerns, Plaintiff issued the very next day a press release touting her *ex parte* victory and casting Defendant as a "parasitic smut peddler." I first received a copy of this press release from Adam Liptak of the New York Times. A copy is Exhibit E to Defendant's Notice of Removal.

10. A month later, on June 6, 2003, Plaintiff issued a second press release describing Defendant's web site as "reprehensible," "depraved" and "immoral" and specifically pointing out that Fla. Stat. § 540.08 could provide "swift justice" in the form of "injunctive relief" as well "punitive damages" and "royalties" for the commercial use of her name. A copy is Exhibit A hereto.

11. Since Plaintiff's first press release, literally thousands of stories, news articles, message board discussions, and references to this litigation have appeared on the Internet. A June 30, 2003 search of the Internet using the popular Google™ search engine showed 71 news stories regarding this litigation and more than 1,870 other references. I accessed many of these articles on the Internet and printed them using my personal computer. A representative sample of the news articles, including true and correct copies, is Exhibit C to Defendant's Notice of Removal.

---

[1] These claims appear on her site through a flash media display that I could not print and provide to this Court in paper form.

12. Based predominantly on Plaintiff's own press releases, this controversy has already received widespread attention in the media, including: *The New York Times, Associated Press, Aberdeen American News, Atlanta Journal-Constitution, Austin American Statesman, Barre-Montpelier Times, Bedford Times, Belleville News-Democrat, Billings Gazette, Biloxi Sun-Herald, Boston Globe, Calgary Sun, Canada.com, Canoe News, Canton Repository, Centre Daily Times, Chicago Sun-Times, Columbus Ledger-Enquirer, Concord Monitor, Dayton Daily News, Duluth News Tribune, Fort Wayne Journal-Gazette, Fort Wayne News-Sentinel, Grand Forks Herald, International Herald Tribune, Kansas City Star, Lakeland Ledger, Macon Telegraph, Naples Daily News, News Journal, Newsday, Newsweek, Palm Beach Post, Penn Live, Raleigh News, Richmond Times-Dispatch, Rocky Mount Telegram, Sarasota Herald-Tribune, South Florida Sun-Sentinel, St. Petersburg Times, The Tallahassee Democrat, Times Daily, New Orleans Times-Picayune, Toronto Sun, Tuscaloosa News, United Press International, Washington Times, Wilmington Morning Star, WKMG, WPBF,* and *WTEV*.

13. Notwithstanding the fact that much of the media attention surrounding this case has been created by Plaintiff, the coverage is evidence of her damages. The widespread exposure increases exponentially both the potential value of damages for royalties from Defendant's use of Plaintiff's name and the number of people who are aware of the Miss Vermont Story.

14. With respect to Plaintiff's potential damages, I performed a search on Westlaw to ascertain the size of jury verdicts in similar cases. In the Florida Jury Verdict Reporter, I found five reports relating to the claims asserted by Plaintiff.

15. In a Miami-Dade County, Florida case under Fla. Stat. § 540.08, a Miami-Dade County jury awarded $264,000 in compensatory and punitive damages. In that case, the plaintiff

4

was a model whose photograph appeared in marketing brochures used to promote a hotel in the Bahamas. The damages award was based on the use of his photograph by the hotel beyond the time period permitted in a contract between the parties. A true and correct copy of the report from the Florida Jury Verdict Reporter, *Robert Wagner v. Sun Int'l Hotels, Ltd.*, 00 FJVR 2-33 (February 26, 1999), is attached as Exhibit D to Defendant's Notice of Removal.

16. In a Brevard County, Florida case alleging trespass, battery, intentional infliction of emotional distress, property damage, and invasion of privacy, the jury returned a verdict of $751,000. The verdict included $500,000 in punitive damages. A true and correct copy of the report from the Florida Jury Verdict Reporter, *Simmons v. Varner*, 94 FJVR 3-3 (February 16, 1994), is attached as Exhibit D to Defendant's Notice of Removal.

17. In a Gadsden County, Florida case where the plaintiff asserted claims claims for libel and invasion of privacy, the jury returned a verdict of $1,627,500 in favor of the plaintiff. The verdict included $759,000 in punitive damages. In that case, the defendants reported that plaintiff and his company were subject of a federal criminal investigation. A true and correct copy of the report from the Florida Jury Verdict Reporter, *Fleming v. Gadsden County Times et al.*, 88 FJVR 1-29 (January 1988), is attached as Exhibit D to Defendant's Notice of Removal.

18. In a Miami-Dade County, Florida case whether the plaintiff asserted a claim for battery, the jury returned a verdict of $156,590.25 for the plaintiff. The verdict included $70,000 in punitive damages. In that case, the jury found that the defendant committed a battery on plaintiff by punching plaintiff in the eye. A true and correct copy of the report from the Florida Jury Verdict Reporter, *Beilinson v. Elias*, 02 FJVR 8-51 (March 13, 2002), is attached as Exhibit D to Defendant's Notice of Removal.

19. In an analogous Florida case involving the publication of private facts, the defendants settled with Plaintiff for $2,550,000. In that case, the defendants revealed publicly that Plaintiff was a homosexual, and Plaintiff's homosexuality was published in the Wall Street Journal. A true and correct copy of the report from the Florida Jury Verdict Reporter, *McCarty v. Bankers Insurance Co.*, 00 FJVR 10-38 (June 15, 2000), is attached as Exhibit D to Defendant's Notice of Removal.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 30th day of June, 2003.

_____
Richard J. Mockler

6

# Today's News

## Former Miss Vermont, Katy Johnson, Breaks Silence On Injunction Against 'Depraved Web Site'



BOCA RATON, Fla., June 5 /PRNewswire/ -- The former Miss Vermont and Miss Vermont USA, Katy Johnson, who won a preliminary injunction against a web site that demeans women and promotes character assassination, is speaking out.

According to Ms. Johnson, Tucker Max exploited her image and published scurrilous lies about her on his web site just to sell T-shirts and other merchandise. Last month, a Florida judge ordered a temporary injunction against Max forcing him to take down all references to "Katy Johnson" and "Miss Vermont" on his web site. "I feel vindicated by the judge's decision, and I hope this suit will put an end to the ugly untruths he parades on this reprehensible web site. Since the lawsuit began, I have been contacted by other victims of his lies who have offered their support," said Ms. Johnson.

Ms. Johnson says Max's assertions published on his web site that she is a "whore" and a "prostitute" are malicious, false and hurtful. She vehemently denies the story about her on the web site.

"I never intended to be a champion of privacy rights or become involved in First Amendment issues; to me this is about Right vs. Wrong, and he was wrong to attack my reputation on the Internet for no other reason than his own commercial gain."

Ms. Johnson says that she did not file the lawsuit out of vengeance but to stop further damage to her reputation and others. Her biggest concern was that little girls trying to visit her web site to see the Starrlettes or Miss Vermont web sites for pageant information were being diverted by search engines to Max's depraved web site.

She filed the lawsuit under FL Statutes 540.08, which prevents unauthorized use of name or likeness and provides for punitive damages and royalties, in order to get swift justice through an injunction and conclude the lawsuit quickly. Ms. Johnson says that Max has willfully violated the injunction since it was issued, and she intends to go back to court to find him in contempt. "This person is greatly harming me by the way he is associating my name with his immoral web site and the disgusting products he promotes."

Ms. Johnson, a member of MENSA, is a columnist for Pageantry Magazine and author of "True Beauty: A Sunny Face Means A Happy Heart." She will be appearing on the MTV documentary "MADE" on June 28, as a coach who has one month to turn a tomboy into a beauty queen. Katy's cartoon web site **http://www.katyjohnson.com** promotes character for 8 to 12-year-old girls through her Starrlettes comic strip.

Contact: Glen Calder at (561) 750-9800 ext. 16
gcalder@transmediagroup.com

SOURCE Katy Johnson
Web Site: http://www.katyjohnson.com



EXHIBIT A

Issuers of news releases and not PR Newswire are solely responsible for the accuracy of the content.

**More news from PR Newswire...**
Copyright © 1996-2002 PR Newswire Association LLC. All Rights Reserved.
A United Business Media company.